# Exhibit 2: HPIL Articles of Continuance from Nevada to Wyoming

001

**WY Secretary of State**
**FILED: 03/22/2019 11:44 AM**
**ID: 2019-000847503**

**APPLICATION FOR PROFIT CORPORATION**

**ARTICLES OF CONTINUANCE**

**OF**

**HPIL Holding**

Pursuant to W.S. 17-16-1810 of the Wyoming Business Corporation Act, the undersigned hereby submits the following Articles of Continuance.

**FIRST**         The name of the corporation is HPIL Holding

**SECOND**     The laws in which it was incorporated under:  Nevada

**THIRD**        The date of its incorporation is: May 5, 2009

**FOURTH**     The Corporation is to have perpetual existence.

**FIFTH**         The mailing address where correspondence and annual reports can be sent

    1712 Pioneer Ave. Ste. 500 Cheyenne, WY 82001

**SIXTH**        The address of its principal office is:

    1712 Pioneer Ave. Ste. 500 Cheyenne, WY 82001

**SEVENTH**   The registered agent for this corporation shall be:

    Capital Administrations, LLC

The address of said agent, and, the registered or statutory address of this corporation in the state of Wyoming, shall be:

    1712 Pioneer Ave. Suite 115
    Cheyenne, WY 82001

**EIGHTH**      The purpose or purposes of the corporation which it proposes to pursue in the transaction of business in this state:

HPIL HOLDING is a worldwide diversified holding company. HPIL HOLDING is focused on investing in both private and public companies in differing business sectors. HPIL HOLDING does not restrict its potential candidate target companies to any specific business, industry or geographical location and, thus,

001

acquires various types of business. Also HPIL HOLDING evaluates the acquisition of intellectual properties and technologies.

**NINTH**     The names and respective addresses of its officers and directors are:

President: Nitin Amersey - 1712 Pioneer Ave. Ste. 500 Cheyenne, WY 82001
Secretary: Nitin Amersey - 1712 Pioneer Ave. Ste. 500 Cheyenne, WY 82001
Treasurer: David Langle - 1712 Pioneer Ave. Ste. 500 Cheyenne, WY 82001
Director: John Mitchell - 1712 Pioneer Ave. Ste. 500 Cheyenne, WY 82001

**TENTH**     The aggregate number of shares or other ownership units which it has the authority to issue, itemized by classes, par value of shares, shares without par value and series, if any, within a class is:

Is set forth on Exhibit I attached hereto:

**ELEVENTH**     The aggregate number of issued shares or other ownership units itemized by classes, par value of shares, shares without par value and series, if any, within a class is:

Total Outstanding Common     1,970,816,088
Series A Preferred     10
Series B Preferred     3,000,000

**TWELFTH**     The Corporation accepts the Constitution of this state in compliance with the requirements of Article 10, Section 5 of the Wyoming Constitution.

Dated this 28th day of February, 2019

_Therese H_

Therese Hoard, on behalf of Capital Administrations, LLC
Authorized Agent for **HPIL Holding**

State of Wyoming

       Ss

County of Laramie


I, DeAnna Montemayor, Notary Public, do hereby certify that on this 28th day of February, 2019, personally appeared before me Therese Hoard,


In witness whereof, I have hereunto set my hand and seal this 28th day of February, 2019.

(Notarial Seal)

/Notary

My Commission Expires: _____April 30, 2022_____

## CONSENT TO
## APPOINTMENT BY REGISTERED AGENT

I.    Capital Administrations, LLC, located at 1712 Pioneer Ave. Ste. 115, Cheyenne, WY, 82001, voluntarily consents to serve as the registered agent for HPIL Holding, on the date shown below;

II.    The undersigned by and on behalf of Capital Administrations, LLC, hereby certify that it is in compliance with the requirements of W.S. 17-28-101 through W.S. 17-28-111.

Dated this 28th day of February, 2019.

Therese Hoard, on behalf of
Capital Administrations, LLC, Registered Agent

**STATE OF NEVADA**



*BARBARA K. CEGAVSKE*
*Secretary of State*

*KIMBERLEY PERONDI*
*Deputy Secretary*
*for Commercial Recordings*

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701-4201*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

**OFFICE OF THE**
**SECRETARY OF STATE**

DEANNA MONTEMAYOR

NV

**Job:**C20190227-2126
February 28, 2019

**Special Handling Instructions:**
24HR COPIES ORDER A&A EMAILED BACK R TUIN 2-28-2019
Job#c20190227-2126
deanna@wyomingcompany.com

**Charges**

| Description | Document Number | Filing Date/Time | Qty | Price | Amount |
|---|---|---|---|---|---|
| Entity Copies | 00011252487-30 | | 53 | $2.00 | $106.00 |
| Copies - Certification of Document | 00011252487-30 | | 1 | $30.00 | $30.00 |
| 24 Hour Expedite Service | | | 1 | $125.00 | $125.00 |
| Total | | | | | $261.00 |

**Payments**

| Type | Description | Amount |
|---|---|---|
| Credit | 5513727038086134204049 | $261.00 |
| Total | | $261.00 |

Credit Balance:  $0.00

**Job Contents:**

NV Corp Certified Copy Request       1
Cover Letter

DEANNA MONTEMAYOR

NV

005

**STATE OF NEVADA**



*BARBARA K. CEGAVSKE*
*Secretary of State*

*KIMBERLEY PERONDI*
*Deputy Secretary*
*for Commercial Recordings*

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701-4201*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

**OFFICE OF THE**
**SECRETARY OF STATE**

## Certified Copy

February 28, 2019

| | |
|---|---|
| **Job Number:** | C20190227-2126 |
| **Reference Number:** | 00011252487-30 |
| **Expedite:** | |
| **Through Date:** | |

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number(s) | Description | Number of Pages |
|---|---|---|
| 20090390060-79 | Articles of Incorporation | 1 Pages/1 Copies |
| 20090409599-87 | Amendment | 1 Pages/1 Copies |
| 20090738730-69 | Merge In | 12 Pages/1 Copies |
| 20120356711-08 | Amendment | 8 Pages/1 Copies |
| 20140534422-27 | Certificate of Correction | 1 Pages/1 Copies |
| 00004637193-53 | Merge In | 13 Pages/1 Copies |
| 20160174662-25 | Amendment | 3 Pages/1 Copies |
| 20170349505-56 | Amendment | 3 Pages/1 Copies |
| 20170349506-67 | Certificate of Designation | 5 Pages/1 Copies |
| 20170349507-78 | Certificate of Designation | 6 Pages/1 Copies |



Respectfully,

Barbara K. Cegavske
Secretary of State

Certified By: Rhonda Tuin
Certificate Number: C20190227-2126

**Commercial Recording Division**
202 N. Carson Street
Carson City, Nevada 89701-4201
Telephone (775) 684-5708
Fax (775) 684-7138



**ROSS MILLER**
Secretary of State
206 North Carson Street
Carson City, Nevada 89701-4299
(775) 684 5708
Website: www.nvsos.gov

| Filed in the office of | Document Number |
|---|---|
| *[signature]*<br>Ross Miller<br>Secretary of State<br>State of Nevada | **20090390060-79** |
| | Filing Date and Time |
| | **05/05/2009 11:10 AM** |
| | Entity Number |
| | **E0240252009-2** |

# Articles of Incorporation
### (PURSUANT TO NRS CHAPTER 78)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

| 1. Name of Corporation: | Trim Nevada, Inc. | | |
|---|---|---|---|
| **2. Registered Agent for Service of Process:** (check only one box) | ☒ Commercial Registered Agent: National Registered Agents, Inc. of NV<br>Name<br>☐ Noncommercial Registered Agent (name and address below) **OR** ☐ Office or Position with Entity (name and address below) | | |
| | Name of Noncommercial Registered Agent OR Name of Title of Office or Other Position with Entity | | |
| | Street Address _____ City _____ Nevada Zip Code | | |
| | Mailing Address (If different from street address) City Nevada Zip Code | | |
| **3. Authorized Stock:** (number of shares corporation is authorized to issue) | Number of shares with par value: **200** | Par value per share: $ **0.01** | Number of shares without par value: |
| **4. Names and Addresses of the Board of Directors/Trustees:** (each Director/Trustee must be a natural person at least 18 years of age; attach additional page if more than two directors/trustees) | 1) Louis Bertoli<br>Name<br>300 Center Avenue, Suite 202B — Bay City — MI — 48708<br>Street Address / City / State / Zip Code<br>2) Nitin Amersey<br>Name<br>300 Center Avenue, Suite 202B — Bay City — MI — 48708<br>Street Address / City / State / Zip Code | | |
| **5. Purpose:** (optional; see instructions) | *The purpose of the corporation shall be:* | | |
| **6. Name, Address and Signature of Incorporator:** (attach additional page if more than one incorporator) | Fred Larison<br>Name — Incorporator Signature X *[signature]*<br>307 Hamilton Street — Albany — NY — 12210<br>Address / City / State / Zip Code | | |
| **7. Certificate of Acceptance of Appointment of Registered Agent:** | *I hereby accept appointment as Registered Agent for the above named Entity.*<br>X *[signature]*, Asst. Secretary — May 4, 2009<br>Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity — Date | | |

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State NRS 78 Articles
Revised on 7-1-09



**DEAN HELLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4299
(775) 684 5708
Website: secretaryofstate.biz



| Filed in the office of | Document Number |
|---|---|
| *Ross Miller* | 20090409599-87 |
| Ross Miller | Filing Date and Time |
| Secretary of State | 05/13/2009 12:06 PM |
| State of Nevada | Entity Number |
| | E0240252009-2 |

*Important: Read attached instructions before completing form.*   ABOVE SPACE IS FOR OFFICE USE ONLY

## Certificate of Amendment to Articles of Incorporation
### For Nevada Profit Corporations
#### (Pursuant to NRS 78.380 - Before Issuance of Stock)

**1.** Name of corporation: Trim Nevada, Inc.

**2. The articles have been amended as follows (provide article numbers, if available):**

Paragraph 3, which sets forth the authorized stock, is hereby amended to change the number of shares with par value

from 200 to 30,000,000 and to change the par value per share from $0.01 to $0.001, and shall read as follows:

Number of Shares with par value    30,000,000    Par Value per share: $0.001

Paragraph 4, which sets forth the names and addresses of the Board of Directors, is hereby amended to change the

Suite number set forth for the Directors from 202B to 202, and shall read as follows:

Louis Bertoli, 300 Center Avenue, Suite 202, Bay City, MI 48708

Nitin Amersey, 300 Center Avenue, Suite 202, Bay City, MI 48708

**3.** The undersigned declare that they constitute **at least two-thirds** of the **incorporators** ☐, or of
the **board of directors** ☒. (check one box only)

**4.** Effective date of filing (optional): _____
(must not be later than 90 days after the certificate is filed)

**5.** The undersigned affirmatively declare that to the date of this certificate, no stock of the
corporation has been issued.

**6.** Signatures*:

*[signature]*                              *[signature]*
**Signature**                              **Signature**
Louis Bertoli, Director                    Nitin Amersey, Director

* If more than two signatures, attach an 8 ½ x 11 plain sheet with the additional signatures.

**IMPORTANT:** Failure to include any of the above information and submit the proper fees may
cause this filing to be rejected.

*SUBMIT IN DUPLICATE*

This form must be accompanied by appropriate fees. See attached fee schedule.    Nevada Secretary of State Amend 78.380 2003
                                                                                  Revised on: 10/30/03

From: unknown      Page: 3/15      Date: 10/14/2009 5:47:08 AM



**ROSS MILLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4520
(775) 684 5708
Website: www.nvsos.gov

| Filed in the office of | Document Number |
|---|---|
| *signature* | **20090738730-69** |
| | Filing Date and Time |
| Ross Miller | **10/14/2009 8:00 AM** |
| Secretary of State | Entity Number |
| State of Nevada | **E0240252009-2** |

## Articles of Merger
### (PURSUANT TO NRS 92A.200)
### Page 1

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

### Articles of Merger
### (Pursuant to NRS Chapter 92A - excluding 92A.200(4b))

1) Name and jurisdiction of organization of each constituent entity (NRS 92A.200). If there are more than four merging entities, check box ☐ and attach an 8 1/2" x 11" blank sheet containing the required information for each additional entity.

Trim Nevada, Inc.
**Name of merging entity**

| Nevada | | Corporation |
|---|---|---|
| Jurisdiction | | Entity type * |

TNT Designs, Inc.
**Name of merging entity**

| Delaware | | Corporation |
|---|---|---|
| Jurisdiction | | Entity type * |

**Name of merging entity**

| | | |
|---|---|---|
| Jurisdiction | | Entity type * |

**Name of merging entity**

| | | |
|---|---|---|
| Jurisdiction | | Entity type * |

and,

Trim Nevada, Inc.
**Name of surviving entity**

| Nevada | | Corporation |
|---|---|---|
| Jurisdiction | | Entity type * |

\* Corporation, non-profit corporation, limited partnership, limited-liability company or business trust.

**Filing Fee: $350.00**

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State 92A Merger Page 1
Revised: 3-26-09

010

011

From: unknown        Page: 4/15      Date: 10/14/2009 5:47:09 AM



**ROSS MILLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4520
(775) 684 5708
Website: www.nvsos.gov

## Articles of Merger
(PURSUANT TO NRS 92A.200)
### Page 2

USE BLACK INK ONLY - DO NOT HIGHLIGHT                          ABOVE SPACE IS FOR OFFICE USE ONLY

2) Forwarding address where copies of process may be sent by the Secretary of State of
   Nevada (if a foreign entity is the survivor in the merger - NRS 92A.190):

   Attn: Billie Cnudde

   c/o: Amersey Investments LLC
        300 Center Ave. Ste. 202
        Bay City, MI 48708

3) (Choose one)

   ☒ The undersigned declares that a plan of merger has been adopted by each constituent
     entity (NRS 92A.200).

   ☐ The undersigned declares that a plan of merger has been adopted by the parent domestic
     entity (NRS 92A.180).

4) Owner's approval (NRS 92A.200) (options a, b, or c must be used, as applicable, for each entity) (if
   there are more than four merging entities, check box ☐ and attach an 8 1/2" x 11" blank sheet
   containing the required information for each additional entity):

   (a) Owner's approval was not required from

   _____
   Name of merging entity, if applicable

   _____
   Name of merging entity, if applicable

   _____
   Name of merging entity, if applicable

   _____
   Name of merging entity, if applicable

   and, or;

   _____
   Name of surviving entity, if applicable

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State 92A Merger Page 2
Revised: 3-26-09

From: unknown     Page: 5/15     Date: 10/14/2009 5:47:09 AM



**ROSS MILLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4520
(775) 684 5708
Website: www.nvsos.gov

## Articles of Merger
### (PURSUANT TO NRS 92A.200)
### Page 3

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

(b) The plan was approved by the required consent of the owners of *:

Trim Nevada, Inc.
Name of merging entity, if applicable

TNT Designs, Inc.
Name of merging entity, if applicable

Name of merging entity, if applicable

Name of merging entity, if applicable

and, or;

Trim Nevada, Inc.
Name of surviving entity, if applicable

* Unless otherwise provided in the certificate of trust or governing instrument of a business trust, a merger must be approved by all the trustees and beneficial owners of each business trust that is a constituent entity in the merger.

This form must be accompanied by appropriate fees.                    Nevada Secretary of State 92A Merger Page 3
                                                                                    Revised: 3-26-09



**ROSS MILLER**
**Secretary of State**
**204 North Carson Street, Suite 1**
**Carson City, Nevada 89701-4520**
**(775) 684 5708**
**Website: www.nvsos.gov**

# Articles of Merger
### (PURSUANT TO NRS 92A.200)
## Page 4

USE BLACK INK ONLY - DO NOT HIGHLIGHT                              ABOVE SPACE IS FOR OFFICE USE ONLY

(c) Approval of plan of merger for Nevada non-profit corporation (NRS 92A.160):

The plan of merger has been approved by the directors of the corporation and by each public officer or other person whose approval of the plan of merger is required by the articles of incorporation of the domestic corporation.

_____
**Name of merging entity, if applicable**

_____
**Name of merging entity, if applicable**

_____
**Name of merging entity, if applicable**

_____
**Name of merging entity, if applicable**

and, or;

_____
**Name of surviving entity, if applicable**

*This form must be accompanied by appropriate fees.*                Nevada Secretary of State 92A Merger Page 4
                                                                      Revised: 3-25-09



**ROSS MILLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4520
(775) 684 5708
Website: www.nvsos.gov

# Articles of Merger
## (PURSUANT TO NRS 92A.200)
## Page 5

USE BLACK INK ONLY - DO NOT HIGHLIGHT                ABOVE SPACE IS FOR OFFICE USE ONLY

5) Amendments, if any, to the articles or certificate of the surviving entity. Provide article numbers, if available. (NRS 92A.200):

The name of the Corporation shall be: TRIM HOLDING GROUP    The total number of shares of stock which the Corporation shall have authority to issue is Five Hundred Million (500,000,000) which shall consist of (i) Four Hundred Million (400,000,000) shares of common stock, par value $0.0001 per share (the "Common Stock"), and (ii) One Hundred Million (100,000,000) shares preferred stock (the "Preferred Stock"). Series 1, Class P-1 Shares. A total of 25,000,000 shares of the Corporation's Preferred Stock shall be authorized as a series known as Series 1, Class P-1 Preferred Stock, par value $8.75 per share (the"P1 Stock"). Series 1, Class P-2 Shares. A total of 75,000,000 shares of the Corporation's Preferred Stock shall be authorized as a series known as Series 1, Class P-2 Preferred Stock, par value $7.00 per share (the "P2 Stock."). The foregoing is a summary only of the changes to the Company's Articles of Incorporation. The Amended and Restated articles shall govern the Company

6) Location of Plan of Merger (check a or b):

☐ (a) The entire plan of merger is attached;

or,

☒ (b) The entire plan of merger is on file at the registered office of the surviving corporation, limited-liability company or business trust, or at the records office address if a limited partnership, or other place of business of the surviving entity (NRS 92A.200).

7) Effective date (optional)**:    October 7, 2009

\* Amended and restated articles may be attached as an exhibit or integrated into the articles of merger. Please entitle them "Restated" or "Amended and Restated," accordingly. The form to accompany restated articles prescribed by the secretary of state must accompany the amended and/or restated articles. Pursuant to NRS 92A.180 (merger of subsidiary into parent - Nevada parent owning 90% or more of subsidiary), the articles of merger may not contain amendments to the constituent documents of the surviving entity except that the name of the surviving entity may be changed.

\*\* A merger takes effect upon filing the articles of merger or upon a later date as specified in the articles, which must not be more than 90 days after the articles are filed (NRS 92A.240).

This form must be accompanied by appropriate fees.

Nevada Secretary of State 92A Merger Page 5
Revised: 3-26-09

From: unknown     Page: 8/15     Date: 10/14/2009 5:47:10 AM



**ROSS MILLER**
**Secretary of State**
**204 North Carson Street, Suite 1**
**Carson City, Nevada 89701-4520**
**(775) 684 5708**
**Website: www.nvsos.gov**

---

## Articles of Merger
### (PURSUANT TO NRS 92A.200)
### Page 6

---

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

**8) Signatures - Must be signed by:** An officer of each Nevada corporation; All general partners of each Nevada limited partnership; All general partners of each Nevada limited-liability limited partnership; A manager of each Nevada limited-liability company with managers or one member if there are no managers; A trustee of each Nevada business trust (NRS 92A.230)*

(If there are more than four merging entities, check box [ ] and attach an 8 1/2" x 11" blank sheet containing the required information for each additional entity.):

Trim Nevada, Inc.
**Name of merging entity**

X *Louis Berfol*
**Signature**                     | Director **Title** | 10-7-09 **Date**

TNT Designs, Inc.
**Name of merging entity**

X *Louis Berfol*
**Signature**                     | Director **Title** | 10-7-09 **Date**

**Name of merging entity**

X
**Signature**                     | **Title** | **Date**

**Name of merging entity**

X
**Signature**                     | **Title** | **Date**

Trim Nevada, Inc.
**Name of surviving entity**

X *Louis Berfol*
**Signature**                     | Director **Title** | 10-7-09 **Date**

* The articles of merger must be signed by each foreign constituent entity in the manner provided by the law governing it (NRS 92A.230). Additional signature blocks may be added to this page or as an attachment, as needed.

**IMPORTANT:** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*

                                                              Nevada Secretary of State 92A Merger Page 6
                                                              Revised: 3-26-09

AMENDED AND RESTATED ARTICLES OF INCORPORATION

OF

TRIM NEVADA, INC.

TRIM NEVADA, INC. (hereinafter the "Corporation"), a Nevada corporation organized and existing under and by virtue of the State of Nevada, does hereby certify that:

1.     The original Articles of Incorporation of the Corporation was filed with the Secretary of State of the State of Nevada on May 5, 2009.

2.     This Amended and Restated Articles of Incorporation has been duly adopted in accordance with the provisions of the laws of the State of Nevada ("Nevada Law") by the Board of Directors and sole shareholder of the Corporation.

3.     The Articles of Incorporation are hereby amended and restated to read as herein set forth in full:

### ARTICLE I
### NAME

The name of the Corporation shall be: TRIM HOLDING GROUP

### ARTICLE II
### PERIOD OF DURATION

The Corporation shall exist in perpetuity, from and after the date of filing these Articles of Incorporation with the Secretary of State of the State of Nevada unless dissolved according to law.

### ARTICLE III
### PURPOSES AND POWERS

1.     Purposes. Except as restricted by these Articles of Incorporation, the Corporation is organized for the purpose of transacting all lawful business for which corporations may be incorporated pursuant to the Nevada Business Corporation Act.

2.     General Powers. Except as restricted by these Articles of Incorporation, the Corporation shall have and may exercise all powers and rights which a corporation may exercise legally pursuant to the Nevada Business Corporation Act.

3.     Issuance of Shares. The board of directors of the Corporation may divide and issue any class of stock of the Corporation in series pursuant to a resolution properly filed with the Secretary of State of the State of Nevada.

### ARTICLE IV
### CAPITAL STOCK

The total number of shares of stock which the Corporation shall have authority to issue is Five Hundred Million (500,000,000) which shall consist of (i) Four Hundred Million (400,000,000) shares of common stock, par value $0.0001 per share (the "Common Stock"), and (ii) One Hundred Million (100,000,000) shares preferred stock (the "Preferred Stock").

Page 1 of 6

The voting powers, designations, preferences, privileges and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions of each class or series of capital stock of the Corporation, shall be as provided in this Article IV. Unless otherwise indicated, all Section references in this Article IV shall refer to the corresponding Sections in said Article.

## A. PREFERRED STOCK

1.    Designation.

(a)    Series 1, Class P-1 Shares.  A total of 25,000,000 shares of the Corporation's Preferred Stock shall be authorized as a series known as Series 1, Class P-1 Preferred Stock, par value $8.75 per share (the "P1 Stock").

(b)    Series 1, Class P-2 Shares.  A total of 75,000,000 shares of the Corporation's Preferred Stock shall be authorized as a series known as Series 1, Class P-2 Preferred Stock, par value $7.00 per share (the "P2 Stock").

2.    Voting.

(a)    P1 Stock.  Each share of P1 Stock shall entitle the holder thereof to 100 votes.  The holders of P1 Stock shall be entitled to notice of any stockholders' meeting in accordance with the Bylaws of the Corporation and shall vote with holders of Common Stock and P2 Stock, voting together as a single class upon all matters submitted to a vote of stockholders, excluding those matters required to be submitted to a class or series vote pursuant to the terms hereof or by law.

(a)    P2 Stock.  Each share of P2 Stock shall entitle the holder thereof to one vote.  The holders of P2 Stock shall be entitled to notice of any stockholders' meeting in accordance with the Bylaws of the Corporation and shall vote with holders of the Common Stock and P1 Stock, voting together as a single class upon all matters submitted to a vote of stockholders, excluding those matters required to be submitted to a class or series vote pursuant to the terms hereof or by law.

3.    Dividends.  The holders of shares of P1 Stock and P2 Stock shall be entitled to receive, out of funds legally available therefor, any dividends (other than dividends payable solely in shares of Common Stock) declared on the Common Stock.  Such dividends shall be payable to the holders of shares of Common Stock and P1 Stock and P2 Stock on a pari passu, pro rata basis (treating each holder of one or more shares Preferred Stock as being the holder of a number of shares of Common Stock into which such holder's share or shares of Preferred Stock would be converted if such share or shares were converted pursuant to the provisions of Section A.4 hereof, with such number determined as of the record date for the determination of holders of Common Stock entitled to receive such dividend) when, as, and if declared by the Board of Directors and shall be non-cumulative.

4.    Conversion.  The holders of the shares of Preferred Stock shall have the following conversion rights:

(a)    P1 Stock.  A holder of shares of P1 Stock shall be entitled at any time, upon written election to the Corporation, without payment of any additional consideration, to cause any or all of its shares of P1 Stock to be converted into a number of shares of Common Stock computed by multiplying the number of shares P1 Stock to be converted by 1.25.

(b)    P2 Stock.  A holder of shares of P1 Stock shall be entitled at any time, upon written election to the Corporation, without payment of any additional consideration, to cause any or all of its shares of P1 Stock to be converted on a 1 for 1 basis into Common Stock.

(c)    Method of Conversion.  Upon the election by a holder of shares of Preferred Stock to effect a conversion, such holder shall surrender the certificate or certificates representing the shares of Preferred Stock being converted, duly assigned or endorsed for transfer to the Corporation (or accompanied

Page 2 of 6

018

by duly executed stock powers relating thereto), at the principal executive office of the Corporation or the offices of the transfer agent for the Preferred Stock or such office or offices in the continental United States of an agent for conversion as may from time to time be designated by notice to the holders of the Preferred Stock by the Corporation, or in the event the certificate or certificates are lost, stolen or missing, shall deliver an Affidavit of Loss with respect to such certificates. The issuance by the Corporation of shares of Common Stock upon such a conversion shall be effective as of the surrender of the certificate or certificates for the shares of Preferred Stock to be converted, duly assigned or endorsed for transfer to the Corporation (or accompanied by duly executed stock powers relating thereto), or as of the delivery of an Affidavit of Loss.

(d)    Fractional Shares. The Corporation shall not be obligated to deliver to any holder of shares of Preferred Stock any fractional share of Common Stock issuable upon any conversion of such shares (after aggregating all shares of Common Stock into which shares of Preferred Stock held by each holder could be converted), but in lieu thereof may make a cash payment in respect thereof in any manner permitted by law.

(e)    Reservation of Stock Issuable Upon Conversion. The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Common Stock solely for the purpose of effecting the conversion of the shares of Preferred Stock such number of its shares of Common Stock as shall from time to time be sufficient to effect the conversion of all outstanding shares of Preferred Stock; and if at any time the number of authorized but unissued shares of Common Stock shall not be sufficient to effect the conversion of all then outstanding shares of Preferred Stock, the Corporation will take such corporate action as may be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purpose.

(f)    No Closing of Transfer Books. The Corporation shall not close its books against the transfer of shares of Preferred Stock in any manner which would interfere with the timely conversion of any shares of Preferred Stock.

(g)    Issuance Tax. The issuance of certificates for shares of Common Stock upon conversion of shares of the applicable series of Preferred Stock will be made without charge to the holders of such shares for any issuance tax in respect thereof or other costs incurred by the Corporation in connection with such conversion and the related issuance of such stock.

5.    Dividends and Stock Splits. If the number of shares of Common Stock outstanding is increased by a stock dividend payable in shares of Common Stock or by a subdivision or split-up of shares of Common Stock, then, on the date such payment is made or such change is effective, the conversion ratio shall be appropriately adjusted so that the number of shares of Common Stock issuable on conversion of any shares of Preferred Stock shall be increased in proportion to such increase of outstanding shares of Common Stock.

## B. COMMON STOCK

1.    Designation. A total of 400,000,000 shares of the Corporation's capital stock shall be designated as a class of Common Stock.

2.    Voting. The holder of each share of Common Stock shall be entitled to one vote for each such share as determined on the record date for the vote or consent of stockholders and, for so long as any share of P1 Stock or P2 Stock remains outstanding, shall vote together with the holders of P1 Stock and P2 Stock, as a single class, upon any items submitted to a vote of stockholders, except with respect to matters requiring a separate series or class vote.

3.    Dividends. Subject to the rights of holders of Preferred Stock, the holders of Common Stock shall be entitled to receive dividends out of funds legally available therefor at such times and in such amounts as the Board of Directors may determine in its sole discretion, with holders of P1 Stock, P2 Stock and

Common Stock sharing pari passu (on an as-converted to Common Stock basis) in such dividends as contemplated by Sections A.3 of this Article IV.

4.     Liquidation.  Upon any Liquidation Event, after the payment or provision for payment of all debts and liabilities of the Corporation and all preferential amounts to which the holders of shares of Preferred Stock are entitled with respect to the distribution of assets, the holders of Common Stock shall be entitled to share ratably in the remaining assets of the Corporation available for distribution.

5.     Fractional Shares.  The Corporation may not issue fractional shares of Common Stock or Preferred Stock.

## ARTICLE VI
## TRANSACTIONS WITH INTERESTED DIRECTORS OR OFFICERS

No contract or other transaction between the Corporation and one or more of its directors or officers, or between the Corporation and any corporation, firm or association in which one or more of its directors or officers are directors or officers or are financially interested, shall be either void or voidable solely because of such relationship or interest or solely because such director or officer is present at the meeting of the board of directors or a committee thereof which authorizes, approves, or ratifies such contract or transaction or solely because their votes are counted for such purpose, if:

(i) The fact of such relationship or interest is disclosed or known to the board of directors or committee and noted in the minutes, and the board or committee authorizes, approves, or ratifies the contract or transaction in good faith by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; or

(ii) The fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve, or ratify such contract or transaction in good faith by a majority vote or written consent. The votes of the common or interested directors or officers must be counted in any such vote of stockholders; or

(iii) The fact of such relationship or interest is not disclosed or known to the director or officer at the time the transaction is brought before the board of directors of the corporation for action; or

(iv) The contract or transaction is fair and reasonable as to the Corporation at the time it is authorized or approved.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board of directors or a committee thereof which authorizes, approves, or ratifies such contract or transaction, and if the votes of the common or interested directors are not counted at the meeting, then a majority of the disinterested directors may authorize, approve or ratify the contract or transaction.

## ARTICLE VII
## INDEMNIFICATION

The Corporation is authorized to provide indemnification of its directors, officers, employees and agents; whether by bylaw, agreement, vote of shareholders or disinterested directors or otherwise, in excess of the indemnification expressly permitted by Section 78.751 of the Nevada Business Corporation Act for breach of duty to the Corporation and its shareholders, subject only to the applicable limits upon such indemnification as set forth in the Nevada Business Corporation Act. Any repeal or modification of this Article VII or Article XI shall not adversely affect any right or protection of a director or officer of the Corporation existing at the time of such repeal or modification."

Page 4 of 6

## ARTICLE VIII
### ADOPTION AND AMENDMENT OF BYLAWS

The initial Bylaws of the Corporation shall be adopted by its board of directors. Subject to repeal or change by action of the shareholders, the power to alter, amend or repeal the Bylaws or adopt new Bylaws shall be vested in the board of directors. The Bylaws may contain any provisions for the regulation and management of the affairs of the Corporation not inconsistent with law or these Articles of Incorporation.

## ARTICLE IX
### RESIDENT AGENT

The name of the Corporation's resident agent and the street address in Clark County, Nevada for such resident agent where process may be served are national Registered Agents, Inc. of NV.

The resident agent may be changed in the manner permitted by law.

## ARTICLE X
### BOARD OF DIRECTORS

The number of directors of the Corporation shall be fixed by the Bylaws of the Corporation, and the number of directors of the Corporation may be changed from time to time by consent of the Corporation's directors. The initial board of directors of the Corporation shall consist of two (2) directors. The names and addresses of the people who shall serve as directors until the first annual meeting of shareholders and/or until their successors are elected and shall qualify are:

Louis Bertoli
300 Center Avenue Suite 202
Bay City, MI 48708

Nitin Amersey
300 Center Avenue Suite 202
Bay City, MI 48708

## ARTICLE XI
### LIMITATION OF LIABILITY OF
### DIRECTORS AND OFFICERS TO CORPORATION AND SHAREHOLDERS

No director or officer shall be liable to the Corporation or any shareholder for damages for breach of fiduciary duty as a director or officer, except for any matter in respect of which such director or officer (a) shall be liable under Section 78.300 of the Nevada Business Corporation Act or any amendment thereto or successor provision thereto; or (b) shall have acted or failed to act in a manner involving intentional misconduct, fraud or a knowing violation of law. Neither the amendment nor repeal of this Article, nor the adoption of any provision in the Articles of Incorporation inconsistent with this Article, shall eliminate or reduce the effect of this Article in respect of any matter occurring prior to such amendment, repeal or adoption of an inconsistent provision. This Article shall apply to the full extent now permitted by Nevada law or as may be permitted in the future by changes or enactments in Nevada law, including without limitation Section 78.300 and/or the Nevada Business Corporation Act.

The date of the adoption of the Amendments is October 7, 2009.

Page 5 of 6

From: unknown     Page: 14/15     Date: 10/14/2009 5:47:12 AM

The Amendments were duly adopted by a majority of the shareholders of record on October 7, 2009 and the vote was 88% vote in favor out of 2,262,500 total issued and outstanding.

IN WITNESS WHEREOF, Trim Nevada, Inc. has authorized this Amended and Restated Articles of Incorporation to be signed by Louis Bertoli, Chief Executive Officer, as of this 7th day of October, 2009.

/s/ Louis Bertoli

Louis Bertoli, Chief Executive Officer

Page 6 of 6

From: 00000000000      Page: 2/13      Received by: NV Secretary of State      Date: 5/21/2012 8:10:08 AM





**ROSS MILLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4520
(775) 684-5708
Website: www.nvsos.gov

*090201*

| Filed in the office of | Document Number |
| --- | --- |
| | 20120356711-08 |
| *[signature]* | Filing Date and Time |
| Ross Miller | 05/21/2012 8:30 AM |
| Secretary of State | Entity Number |
| State of Nevada | E0240252009-2 |

## Certificate of Amendment
### (PURSUANT TO NRS 78.385 AND 78.390)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

### Certificate of Amendment to Articles of Incorporation
### For Nevada Profit Corporations
### (Pursuant to NRS 78.385 and 78.390 - After Issuance of Stock)

**1. Name of corporation:**

TRIM HOLDING GROUP

**2. The articles have been amended as follows:** (provide article numbers, if available)

Article 1:  The name of the corporation is HPIL Holding.

**3. The vote by which the stockholders holding shares in the corporation entitling them to exercise a least a majority of the voting power, or such greater proportion of the voting power as may be required in the case of a vote by classes or series, or as may be required by the provisions of the articles of incorporation\* have voted in favor of the amendment is:** 4,196,100 (94%)

**4. Effective date and time of filing: (optional)    Date:**  5/22/2012    **Time:**  2:00 PM
(must not be later than 90 days after the certificate is filed)

**5. Signature: (required)**

X *[signature]*

Signature of Officer

\*If any proposed amendment would alter or change any preference or any relative or other right given to any class or series of outstanding shares, then the amendment must be approved by the vote, in addition to the affirmative vote otherwise required, of the holders of shares representing a majority of the voting power of each class or series affected by the amendment regardless to limitations or restrictions on the voting power thereof.

**IMPORTANT:**  Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*                    Nevada Secretary of State Amend Profit-After
Revised: 8-31-11

From: 00000000000          Page: 5/13          Received by: NV Secretary of State          Date: 5/21/2012 8:10:09 AM

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**SCHEDULE 14C INFORMATION**

Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934

Check the appropriate box:

[ ]  Preliminary Information Statement
[ ]  Confidential, for use of the Commission only (as permitted by Rule 14c-5(d)(2))
[X]  Definitive Information Statement

# TRIM HOLDING GROUP
(Name of Registrant as Specified In Its Charter)

Payment of Filing Fee (Check the appropriate box):

☒   No fee required

☐   Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11.

      (1) Title of each class of securities to which transaction applies:
      (2) Aggregate number of securities to which transaction applies:
      (3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing is calculated and state how it was determined.):
      (4) Proposed maximum aggregate value of transaction:
      (5) Total Fee Paid:

☐   Fee paid previously with preliminary materials.

☐   Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

      (1) Amount Previously Paid:
      (2) Form, Schedule or Registration Statement No.:
      (3) Filing Party:
      (4) Dated Filed:

1

From: 00000000000          Page: 6/13          Received by: NV Secretary of State          Date: 5/21/2012 8:10:09 AM

**TRIM HOLDING GROUP**

7075 Gratiot Road, Suite One
Saginaw, MI 48609

**NOTICE OF STOCKHOLDER ACTION TAKEN
PURSUANT TO THE WRITTEN CONSENT OF STOCKHOLDERS**

**WE ARE NOT ASKING YOU FOR A PROXY AND
YOU ARE REQUESTED NOT TO SEND US A PROXY.**

April 30, 2012

Dear Stockholders:

This Information Statement is furnished to provide notice to stockholders of Trim Holding Group, a Nevada corporation (the " Company ") that our Board of Directors (the " Board ") and the holders of a majority of our outstanding voting stock, by written consent, have approved the following action (the " Corporate Action "):

Amending the Company's Articles of Incorporation (the " Articles ") filed with the Secretary of State of Nevada to change the name of the Company to HPIL Holding.

Stockholders of record at the close of business on April 17, 2012 are entitled to notice of the Corporate Action. Since the Corporate Action has been approved by the holders of a majority of our outstanding voting stock, no proxies are being solicited.

Please read this Information Statement carefully. It describes the effect of the Corporate Action.

Pursuant to Rule 14c-2(b) under the Securities Exchange Act of 1934, as amended, the Corporate Action cannot be taken until at least twenty (20) days after the date this Information Statement is mailed to the Company's stockholders. Therefore, we anticipate that the Certificate of Amendment to the Articles will be filed with the Secretary of State of Nevada on or after May 21, 2012.

By order of the Board of Directors

/s/ Louis Bertoli
By: Louis Bertoli
Its: CEO, President and Chairman of the Board of Directors

2

## TRIM HOLDING GROUP

### INFORMATION STATEMENT
### PURSUANT TO SECTION 14 OF THE
### SECURITIES AND EXCHANGE ACT OF 1934 AND
### REGULATION 14C AND SCHEDULE 14C THEREUNDER

This Information Statement is being sent to advise the stockholders of an action taken without a meeting upon the written consent of the holders of a majority of the outstanding voting stock of the Company.

### WE ARE NOT ASKING YOU FOR A PROXY AND
### YOU ARE REQUESTED NOT TO SEND US A PROXY.

### GENERAL

This Information Statement is being furnished to the holders of the outstanding shares of voting stock of the Company. The purpose of this Information Statement is to provide notice that the holders of a majority of our outstanding voting stock, have, by written consent, approved the Corporate Action.

This Information Statement is being mailed on or about April 30, 2012 to those persons who were stockholders of the Company as of the close of business on April 17, 2012 (the " Record Date "). The Corporate Action is expected to become effective on or after May 21, 2012. The Company will pay all costs associated with the distribution of this Information Statement, including the costs of printing and mailing, estimated at $1200.

As the holders of a majority of our outstanding voting stock have already approved the Corporate Action by written consent, the Company is not seeking approval for the Corporate Action from any of the Company's other stockholders, and the Company's other stockholders will not be given an opportunity to vote on the Corporate Action. All necessary corporate approvals have been obtained, and this Information Statement is being furnished solely for the purpose of providing advance notice to the Company's stockholders of the Corporate Action as required by the Securities Exchange Act of 1934 (the " Exchange Act "). Under the Nevada Revised Statutes, stockholder actions may be taken by written consent without a meeting of stockholders. The written consent of the holders of a majority of our outstanding voting stock is sufficient to approve and adopt the Corporate Action.

### VOTE REQUIRED

As of the Record Date, there were 2,255,000 shares of Common Stock issued and outstanding and 22,000 Series 1, Class P-1 shares issued and outstanding, all of which have voting power, the aggregate amount of which is 4,455,000 votes. A detailed description of the Company's capital stock is provided in this Information Statement below. As of April 17, 2012, the stockholders who consented to the Corporate Action held an aggregate of 4,196,100 shares of the Company's outstanding voting stock equal to approximately 94% of the number of then outstanding votes that could have been given by the holders of all of the Company's voting stock.

3

## DESCRIPTION OF COMPANY'S CAPITAL STOCK

*Common Stock*

We are authorized to issue 400,000,000 shares of common stock with a par value of $0.0001, of which 2,255,000 shares are issued and outstanding as of April 17, 2012. Each holder of our shares of our common stock is entitled to one (1) vote per share on all matters to be voted upon by the stockholders, including the election of directors. The holders of shares of common stock have no preemptive, conversion, subscription or cumulative voting rights. There is no provision in our Articles of Incorporation or By-laws that would delay, defer or prevent a change in control of our Company.

*Preferred Stock*

We are authorized to issue 100,000,000 shares of preferred stock. We have designated 25,000,000 shares of our preferred stock as Series 1, Class P-1 stock with a par value of $8.75 per share ("Class 1 Shares"). We have designated 75,000,000 shares of Series 2, Class P-2 stock with a par value of $7.00 per share ("Class 2 Shares").

22,000 Class 1 Shares are issued and outstanding as of April 17, 2012.

Each Series 1, Class P-1 share has voting rights equivalent to 100 shares of common stock and is convertible into 1.25 shares of common stock at the discretion of its holder. Each Series 2, Class P-2 share has voting rights equivalent to 1 share of common stock and is convertible into one share of common stock at the discretion of its holder.

Our board of directors has the right, without shareholder approval, to issue preferred shares. As a result, these preferred shares could be issued quickly and easily, negatively affecting the rights of holders of common shares and could be issued with the intent to delay or prevent a change in control or make removal of management more difficult. Because we may issue up to 100,000,000 shares of preferred stock in order to raise capital for our operations, your investment may be diluted, resulting in your percentage of ownership in us decreasing.

## EXPECTED DATE FOR EFFECTING THE CORPORATE ACTION

Under Section 14(c) of the Exchange Act and Rule 14c-2(b) promulgated thereunder, the Corporate Action cannot be taken until at least 20 days after the date that this Information Statement is sent to the Company's stockholders.  It is anticipated that this Information Statement will be mailed on or about April 30, 2012 (the " Mailing Date ") to the stockholders of the Company.  The Company expects to file the amendment to the Articles so as to effectuate the Corporate Action with the Secretary of State of Nevada approximately 20 days after the Mailing Date, on or after May 21, 2012.

## APPROVAL OF CORPORATE ACTION

The Board and the holders of a majority of the outstanding voting stock have, by written consent, approved the Corporate Action, which will change of the name of the Company to HPIL Holding.  A copy of the amendment to the Certificate is annexed hereto as an Exhibit "A".  Additional information concerning the name change is provided below in the section entitled Change of Company Name.

## CHANGE OF COMPANY NAME

The Board believes that changing the name of the Company to HPIL Holding is in the best interest of the Company because the new name better reflects the Company's corporate identity.  Changing our name will not have any effect on our corporate status. In the future, new stock certificates will be issued bearing our new name.

4

From: 00000000000     Page: 9/13     Received by: NV Secretary of State     Date: 5/21/2012 8:10:10 AM

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT OF COMPANY

The following table lists, as of April 17, 2012 (the date of the stockholder consent action), the number of shares of our common stock that are beneficially owned by (i) each person or entity known to us to be the beneficial owner of more than 5% of the outstanding common stock; (ii) each officer and director of our Company; and (iii) all officers and directors as a group. Information relating to beneficial ownership of common stock by our principal shareholders and management is based upon information furnished by each person using "beneficial ownership" concepts under the rules of the Securities and Exchange Commission. Under these rules, a person is deemed to be a beneficial owner of a security if that person has or shares voting power, which includes the power to vote or direct the voting of the security, or investment power, which includes the power to vote or direct the voting of the security. The person is also deemed to be a beneficial owner of any security of which that person has a right to acquire beneficial ownership within 60 days. Under the Securities and Exchange Commission rules, more than one person may be deemed to be a beneficial owner of the same securities, and a person may be deemed to be a beneficial owner of securities as to which he or she may not have any pecuniary beneficial interest. Except as noted below, each person has sole voting and investment power.

The percentages below are calculated based on 2,255,000 shares of our common stock and issued and outstanding as of April 17, 2012.

| Name of Beneficial Owner | Number of Shares of Common Stock Beneficially Owned | Percent of Common Stock Beneficially Owned | Number of Shares of Series 1, Class P-1 Preferred Stock | Percent | Number of Shares of Series 1, Class P-2 Preferred Stock | Percent |
|---|---|---|---|---|---|---|
| Louis Bertoli (1)(3) | 1,990,000 | 88.20% | 22,000 | * | - | - |
| Nitin Amersey (2) | 5,100 | * | - | - | - | - |
| John B. Mitchell (4) | 500 | * | - | - | - | - |
| John Dunlap, III (5) | 500 | * | - | - | - | - |
| All directors and executive officers as a group (4 people) | 1,996,100 | 88.50% | - | - | - | - |

* Less than 1%

(1) Mr. Bertoli is our Chairman of the Board and President, Chief Executive Officer of Trim Holding Group.

(2) Mr. Amersey is a Director and Chief Financial Officer, Corporate Secretary and Treasurer of Trim Holding Group.

5

(3) On December 4, 2009, the Company issued Mr. Bertoli 22,000 shares of Series 1 Class P-1 Shares. Each share of preferred stock is convertible into 1.25 shares of common stock. These shares, if converted, would increase Mr. Bertoli's common shares held to 2,017,500 and result in his percentage ownership increasing to 88.2%.

(4) Mr. Mitchell is a Director of Trim Holding Group.

(5) Mr. Dunlap is a Director of Trim Holding Group.

### DISSENTER'S RIGHTS OF APPRAISAL

The Nevada General Corporation Law does not provide for dissenter's rights in connection with the Corporate Action.

### INTEREST OF CERTAIN PERSONS IN MATTERS TO BE ACTED UPON

No director, executive officer, nominee for election as a director, associate of any director, executive officer or nominee or any other person has any interest, direct or indirect, by security holdings or otherwise, in the Corporate Action which is not shared by all other stockholders.

### FORWARD-LOOKING STATEMENTS

This Information Statement includes forward-looking statements. You can identify our forward-looking statements by the words "expects," "projects," "believes," "anticipates," "intends," "plans," "predicts," "estimates" and similar expressions.

The forward-looking statements are based on management's current expectations, estimates and projections about us. The Company cautions you that these statements are not guarantees of future performance and involve risks, uncertainties and assumptions that we cannot predict. In addition, the Company has based many of these forward-looking statements on assumptions about future events that could prove to be inaccurate. Accordingly, actual outcomes and results may differ materially from what the Company has expressed or forecast in the forward-looking statements.

### RELIANCE ON INFORMATION

You should rely only on the information the Company has provided in this Information Statement. The Company has not authorized any person to provide information other than that provided herein. The Company has not authorized anyone to provide you with different information. You should not assume that the information in this Information Statement is accurate as of any date other than the date on the front of the document.

### WHERE YOU CAN FIND MORE INFORMATION

The Company files annual, quarterly and current reports, proxy statements and other information with the SEC. You can read and copy any materials that the Company files with the SEC at the SEC's Public Reference Room at 100 F Street, N.E., Washington, D.C. 20549. You can obtain information about the operation of the SEC's Public Reference Room by calling the SEC at 1-800-SEC-0330. The SEC also maintains a Web site that contains information we file electronically with the SEC, which you can access over the Internet at www.sec.gov

Dated: April 30, 2012

By order of the Board of Directors

*/s/ Louis Bertoli*
By: Louis Bertoli
Its: CEO, President and Chairman of the Board of Directors

6

From: 00000000000        Page: 11/13        Received by: NV Secretary of State        Date: 5/21/2012 8:10:11 AM

**EXHIBIT "A"**

ROSS MILLER
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4520
(775) 684-5708

# Certificate of Amendment
## (PURSUANT TO NRS 78.385 AND 78.390)

USE BLACK INK ONLY-DO NOT HIGHLIGHT

**Certificate of Amendment to Articles of Incorporation
For Nevada Profit Corporations**
(Pursuant to NRS 78.385 and 78.390 – After Issuance of Stock)

1. Name of corporation:

    Trim Holding Group

2. The articles have been amended as follows: (provide article numbers, if available)

    Article 1: The name of the corporation is HPIL Holding.

3. The vote by which the stockholders holding shares in the corporation entitling them to exercise at least a majority of the voting power, or such greater proportion of the voting power as may be required in the case of a vote by classes or securities, or as may be required by the provisions of the articles of incorporation* have voted in favor of the amendment is:

    The amendment was approved by written consent of the stockholders holding an aggregate of 4,196,100 shares of the corporation's outstanding voting stock equal to approximately 94% of the number of then outstanding votes that could have been given by the holders of all of the corporation's voting stock.

4. Effective date and time of filing: (optional)    Date:            Time:

5. Signature: (required)

**X /s/ Louis Bertoli**
**Signature of Officer**

*If any proposed amendment would alter or change any preference or any relative or other right given to any class or series of outstanding shares, then the amendment must be approved by a vote, in addition to the affirmative vote otherwise required, of the holders of shares representing a majority of the voting power of each class or series affected by the amendment regardless to limitations or restrictions on the voting power thereof.

**IMPORTANT :** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*

7

029





**ROSS MILLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4520
(775) 684-5708
Website: www.nvsos.gov

| Filed in the office of | Document Number |
|---|---|
| *(signature)* | 20140534422-27 |
| Ross Miller | Filing Date and Time |
| Secretary of State | 07/25/2014 12:00 PM |
| State of Nevada | Entity Number |
| | E0240252009-2 |

## Certificate of Correction

(PURSUANT TO NRS CHAPTERS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A, 89 AND 92A)

USE BLACK INK ONLY - DO NOT HIGHLIGHT      **Certificate of Correction**      ABOVE SPACE IS FOR OFFICE USE ONLY

**(Pursuant to NRS Chapters 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A, 89 and 92A)**

**1. The name of the entity for which correction is being made:**

HPIL HOLDING

**2. Description of the original document for which correction is being made:**

ARTICLES OF INCORPORATION OF HPIL HOLDING

**3. Filing date of the original document for which correction is being made:**   10/14/2009

**4. Description of the inaccuracy or defect:**

The error is in ARTICLE IV - CAPITAL STOCK; section: A. PREFERRED STOCK, sub-section: 4. Conversion.

(b)  P2 Stock. A holder of shares of P1 Stock shall be entitled at any time, upon written election to the Corporation, without payment of any additional consideration, to cause any or all of its shares of P1 Stock to be converted on a 1 for 1 basis into Common Stock.

**5. Correction of the inaccuracy or defect:**

(b)  P2 Stock. A holder of shares of P2 Stock shall be entitled at any time, upon written election to the Corporation, without payment of any additional consideration, to cause any or all of its shares of P2 Stock to be converted on a 1 for 1 basis into Common Stock.

**6. Signature:**

X *(signature)*

| **Authorized Signature** | President/CEO | 7/25/2014 |
|---|---|---|
| | **Title \*** | **Date** |

\* If entity is a corporation, it must be signed by an officer if stock has been issued, OR an incorporator or director if stock has not been issued; a limited-liability company, by a manager or managing members; a limited partnership or limited-liability limited partnership, by a general partner; a limited-liability partnership, by a managing partner; a business trust, by a trustee.

**IMPORTANT:** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State Correction
Revised: 3-26-09

030

031



*140105*



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

| Filed in the office of | Document Number |
| --- | --- |
| *Barbara K. Cegavske*<br>Barbara K. Cegavske<br>Secretary of State<br>State of Nevada | **00004637193-53** |
| | Filing Date and Time<br>**06/01/2015 8:00 AM** |
| | Entity Number<br>**E0240252009-2** |

## Articles of Merger
### (PURSUANT TO NRS 92A.200)
### Page 1

USE BLACK INK ONLY - DO NOT HIGHLIGHT          ABOVE SPACE IS FOR OFFICE USE ONLY

## Articles of Merger
### (Pursuant to NRS Chapter 92A)

1) **Name and jurisdiction of organization of each constituent entity (NRS 92A.200):**

☒ If there are more than four merging entities, check box and attach an 8 1/2" x 11" blank sheet containing the required information for each additional entity from article one.

HPIL HEALTHCARE INC.
**Name of merging entity**

NEVADA                                         CORPORATION
**Jurisdiction**                               **Entity type ***

HPIL ENERGYTECH INC.
**Name of merging entity**

NEVADA                                         CORPORATION
**Jurisdiction**                               **Entity type ***

HPIL WORLDFOOD INC.
**Name of merging entity**

NEVADA                                         CORPORATION
**Jurisdiction**                               **Entity type ***

HPIL REAL ESTATE INC.
**Name of merging entity**

NEVADA                                         CORPORATION
**Jurisdiction**                               **Entity type ***

and,

HPIL HOLDING
**Name of surviving entity**

NEVADA                                         CORPORATION
**Jurisdiction**                               **Entity type ***

* Corporation, non-profit corporation, limited partnership, limited-liability company or business trust.

**Filing Fee: $350.00**

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State 92A Merger Page 1
Revised: 1-5-15

031

**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

---

# Articles of Merger
### (PURSUANT TO NRS 92A.200)
## Page 1
#### (continued)

---

**1) Name and jurisdiction of organization of each constituent entity (NRS 92A.200):**

| HPIL GLOBALCOM INC. | |
|---|---|
| Name of merging entity | |

| NEVADA | CORPORATION |
|---|---|
| Jurisdiction | Entity type * |

| HPIL ART&CULTURE INC. | |
|---|---|
| Name of merging entity | |

| NEVADA | CORPORATION |
|---|---|
| Jurisdiction | Entity type * |



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

---

# Articles of Merger
### (PURSUANT TO NRS 92A.200)
## Page 2

---

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

2) Forwarding address where copies of process may be sent by the Secretary of State of Nevada (if a foreign entity is the survivor in the merger - NRS 92A.190):

        Attn:

        c/o:

3) Choose one:

☐ The undersigned declares that a plan of merger has been adopted by each constituent entity (NRS 92A.200).

☒ The undersigned declares that a plan of merger has been adopted by the parent domestic entity (NRS 92A.180).

4) Owner's approval (NRS 92A.200) (options a, b or c must be used, as applicable, for each entity):

☒ If there are more than four merging entities, check box and attach an 8 1/2" x 11" blank sheet containing the required information for each additional entity from the appropriate section of article four.

(a) Owner's approval was not required from

    HPIL HEALTHCARE INC.
    Name of merging entity, if applicable

    HPIL ENERGYTECH INC.
    Name of merging entity, if applicable

    HPIL WORLDFOOD INC.
    Name of merging entity, if applicable

    HPIL REAL ESTATE INC.
    Name of merging entity, if applicable

    and, or;

    HPIL HOLDING
    Name of surviving entity, if applicable

*This form must be accompanied by appropriate fees.*                    Nevada Secretary of State 92A Merger Page 2
Revised: 1-5-15

**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

# Articles of Merger
(PURSUANT TO NRS 92A.200)
## Page 2
(continued)

4) Owner's approval (NRS 92A.200) (options a, b or c must be used, as applicable, for each entity):

(a) Owner's approval was not required from

HPIL GLOBALCOM INC.
Name of merging entity, if applicable

HPIL ART&CULTURE INC.
Name of merging entity, if applicable

035



**BARBARA K. CEGAVSKE**
**Secretary of State**
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

---

## Articles of Merger
### (PURSUANT TO NRS 92A.200)
## Page 3

---

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

(b) The plan was approved by the required consent of the owners of *:

Name of **merging entity, if applicable**

Name of **merging entity, if applicable**

Name of **merging entity, if applicable**

Name of **merging entity, if applicable**

and, or;

Name of **surviving entity, if applicable**

\* Unless otherwise provided in the certificate of trust or governing instrument of a business trust, a merger must be approved by all the trustees and beneficial owners of each business trust that is a constituent entity in the merger.

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State 92A Merger Page 3
Revised: 1-5-15



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

---

# Articles of Merger

### (PURSUANT TO NRS 92A.200)
## Page 4

---

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

(c) Approval of plan of merger for Nevada non-profit corporation (NRS 92A.160):

> The plan of merger has been approved by the directors of the corporation and by each
> public officer or other person whose approval of the plan of merger is required by the
> articles of incorporation of the domestic corporation.

Name of **merging** entity, if applicable

Name of **merging** entity, if applicable

Name of **merging** entity, if applicable

Name of **merging** entity, if applicable

and, or;

Name of **surviving** entity, if applicable

*This form must be accompanied by appropriate fees.*                    Nevada Secretary of State 92A Merger Page 4
                                                                        Revised: 1-5-15



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

## Articles of Merger
(PURSUANT TO NRS 92A.200)
### Page 5

USE BLACK INK ONLY - DO NOT HIGHLIGHT                          ABOVE SPACE IS FOR OFFICE USE ONLY

5) Amendments, if any, to the articles or certificate of the surviving entity. Provide
   article numbers, if available. (NRS 92A.200)*:

6) Location of Plan of Merger (check a or b):

   [X]   (a) The entire plan of merger is attached;

   or,

   [ ]   (b) The entire plan of merger is on file at the registered office of the surviving corporation, limited-liability
         company or business trust, or at the records office address if a limited partnership, or other place of
         business of the surviving entity (NRS 92A.200).

7) Effective date and time of filing: (optional) (must not be later than 90 days after the certificate is filed)

   Date:        5/28/2015          Time:            -

* Amended and restated articles may be attached as an exhibit or integrated into the articles of merger. Please entitle them
"Restated" or "Amended and Restated," accordingly. The form to accompany restated articles prescribed by the secretary of state
must accompany the amended and/or restated articles. Pursuant to NRS 92A.180 (merger of subsidiary into parent - Nevada
parent owning 90% or more of subsidiary), the articles of merger may not contain amendments to the constituent documents of the
surviving entity except that the name of the surviving entity may be changed.

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State 92A Merger Page 5
Revised: 1-5-15

038



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

---

## Articles of Merger
### (PURSUANT TO NRS 92A.200)
## Page 6

---

USE BLACK INK ONLY - DO NOT HIGHLIGHT                                     ABOVE SPACE IS FOR OFFICE USE ONLY

8) **Signatures - Must be signed by:** An officer of each Nevada corporation; All general partners of each Nevada limited partnership; All general partners of each Nevada limited-liability limited partnership; A manager of each Nevada limited-liability company with managers or one member if there are no managers; A trustee of each Nevada business trust (NRS 92A.230)*

☒ If there are more than four merging entities, check box and attach an 8 1/2" x 11" blank sheet containing the required information for each additional entity from article eight.

HPIL HEALTHCARE INC.
Name of merging entity
X _(signature)_                     PRESIDENT & CEO          5/28/2015
Signature                           Title                    Date

HPIL ENERGYTECH INC.
Name of merging entity
X _(signature)_                     PRESIDENT & CEO          5/28/2015
Signature                           Title                    Date

HPIL WORLDFOOD INC.
Name of merging entity
X _(signature)_                     PRESIDENT & CEO          5/28/2015
Signature                           Title                    Date

HPIL REAL ESTATE INC.
Name of merging entity
X _(signature)_                     PRESIDENT & CEO          5/28/2015
Signature                           Title                    Date

and,

HPIL HOLDING
Name of surviving entity
X _(signature)_                     PRESIDENT & CEO          5/28/2015
Signature                           Title                    Date

* The articles of merger must be signed by each foreign constituent entity in the manner provided by the law governing it (NRS 92A.230). Additional signature blocks may be added to this page or as an attachment, as needed.

**IMPORTANT:** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*                      Nevada Secretary of State 92A Merger Page 6
                                                                          Revised: 1-5-15

**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

---

## Articles of Merger
(PURSUANT TO NRS 92A.200)
# Page 6
(continued)

---

**8) Signatures - Must be signed by: An officer of each Nevada corporation; All general partners of each Nevada limited partnership; All general partners of each Nevada limited-liability limited partnership; A manager of each Nevada limited-liability company with managers or one member if there are no managers; A trustee of each Nevada business trust (NRS 92A.230)*:**

HPIL GLOBALCOM INC.
Name of merging entity

X _(signature)_     PRESIDENT & CEO     5/28/2015
Signature     Title     Date

---

HPIL ART&CULTURE INC.
Name of merging entity

X _(signature)_     PRESIDENT & CEO     5/28/2015
Signature     Title     Date

## AGREEMENT AND PLAN OF MERGER

This **AGREEMENT AND PLAN OF MERGER** (the "Agreement") is dated as of May 27, 2015, by and among HPIL Holding, a Nevada corporation (the "Parent"); HPIL HEALTHCARE Inc., a Nevada corporation ("HC"); HPIL ENERGYTECH Inc., a Nevada corporation ("ET"); HPIL WORLDFOOD Inc., a Nevada corporation ("WF"); HPIL REAL ESTATE Inc., a Nevada corporation ("RE"); HPIL GLOBALCOM Inc., a Nevada corporation ("GC"); and HPIL ART&CULTURE Inc., a Nevada corporation ("AC"; HC, ET, WF, RE, GC, and AC are collectively referred to as the "Companies" and, each individually, as a "Company"; the Parent and the Companies, collectively, the "Parties").

**WHEREAS**, the Parent owns one hundred percent (100%) of the issued and outstanding stock of each of the Companies;

**WHEREAS**, the Boards of Directors of the Parent has approved this Agreement and the transactions contemplated herein, after making a determination that this Agreement and such transactions are advisable and in the best interests of the Parent and the shareholders of the Parent;

**WHEREAS**, pursuant to the transaction contemplated by this Agreement and on the terms and subject to the conditions set forth herein, each of the Companies, in accordance with Chapter 92A of Title 7 of the Nevada Revised Statutes (the "NRS"), will merge with and into the Parent, with the Parent as the surviving corporation (the "Merger");

**WHEREAS**, for US federal income tax purposes, the Parties intend to the fullest extent applicable that the Merger qualify is a tax-free reorganization within the meaning of Section 368(a) of the Internal Revenue Code, as amended (the "Code"); and

**WHEREAS**, the Parties desire to enter into the transactions contemplated by this Agreement.

**NOW THEREFORE**, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### ARTICLE 1
### DEFINITIONS

As used in this Agreement, the following terms have the following meanings:

1.1 "Agreement" means this Agreement and Plan of Merger.

1.2 "NRS" means the Nevada Revised Statutes, as amended.

1.3 "Effective Time" means the date and time upon which the Merger contemplated by this Agreement will be effective, subject to the approval of the Parties, which shall be at the time and on the date that articles of merger are approved by the Secretary of the State of Nevada.

Any other terms defined herein shall have the meaning given to them.

## ARTICLE II
## MERGER

2.1 <u>Merger</u>. Upon the terms and subject to the conditions set forth in this Agreement, and in accordance with Chapter 92A of Title 7 of the NRS, each of the Companies shall be merged with and into the Parent at the Effective Time. Following the Effective Time, the separate respective corporate existence of each of the Companies shall cease, and the Parent shall be the surviving corporation (the "Surviving Corporation"). The effects and consequences of the Merger shall be as set forth in the Agreement and Title 7 of the NRS.

2.2 <u>Organizational Documents</u>. The bylaws of the Parent then in effect at the Effective Time shall be the bylaws of the Surviving Corporation until thereafter amended as provided therein or by Title 7 of the NRS, and the articles of incorporation of the Parent then in effect as of the Effective Time, as amended pursuant to the articles of merger, shall be the articles of incorporation of the Surviving Corporation until thereafter amended as provided therein or by Title 7 of the NRS.

2.3 <u>Board of Directors and Officers</u>. The directors and officers of the Parent immediately prior to the Effective Time shall be the directors of the Surviving Corporation from and after the Effective Time and shall hold office until the earlier of their respective death, resignation or removal or until their respective successors are duly elected or appointed and qualified in the manner provided for in the articles of incorporation and bylaws of the Surviving Corporation or as otherwise provided by Title 7 of the NRS.

## ARTICLE III
## CANCELLATION OF SHARES

3.1 <u>Cancellation of Shares</u>. At the Effective Time, by virtue of the Merger and without any action on the part of the Parent or the holders of respective shares of capital stock of each of the Companies:

(a) Each share of respective common stock of each of the Companies, each par value $0.01 per share (collectively, "Company Common Stock") that is owned by the Parent or the respective Company (as treasury stock or otherwise) will automatically be canceled and retired and will cease to exist, and no consideration will be delivered in exchange; and

(b) Each share of capital stock of the Parent issued and outstanding immediately prior to the Effective Time shall remain outstanding following the consummation of the Merger.

The Parent will take any necessary administrative actions, including, but not limited to, making any updates to its share ledger, issuing certificates, making payments, or any other actions reasonably necessary to implement the transactions contemplated by this provision and the Agreement.

3.2 <u>Effect</u>. Upon the Effective Time, (a) Parent, without further act, deed or other transfer, shall retain or succeed to, as the case may be, and possess and be vested with all the rights, privileges, immunities, powers, franchises and authority, of a public as well as of a private nature, of each respective Company; (b) all property of every description and every interest, and all debts and other obligations of or belonging to or due to each respective Company on whatever account shall be taken and deemed to be held by or transferred to, as the case may be, or invested in Parent without further act or deed; (c) title to any real estate, or any interest vested in each respective Company, shall not revert or in any way be impaired by reason of this merger; and (d) all liabilities of each respective

2

Company shall remain with Parent and may be enforced against it to the same extent as if it had incurred or contracted all such liabilities.

## ARTICLE IV
## OTHER PROVISIONS

**4.1** Entire Agreement. This Agreement together with the certificate of merger constitutes the sole and entire agreement of the Parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, representations and warranties and agreements, both written and oral, with respect to such subject matter.

**4.2** Successor and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns.

**4.3** Tax-Free Reorganization. This Merger is intended to be a tax-free plan of reorganization within the meaning of Sections 351, 355 and 368(a) of Code.

**4.4** Headings. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**4.5** Amendment and Modification; Waiver. This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**4.6** Severability. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon a determination that any term or other provision is invalid, illegal or unenforceable, the Parties hereto shall negotiate in good faith to modify this Agreement in order to accomplish the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**4.7** Governing Law. This Agreement is governed by and shall be construed in accordance with the internal laws of the State of Nevada without giving effect to any choice or conflict of law provision or rule (whether of the State of Nevada or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Nevada. The state and federal courts located in Carson City, Nevada have the exclusive jurisdiction to hear any and all disputes arising from or related to the Agreement.

**4.8** Counterparts. This Agreement may be executed in any number of original counterparts that may be faxed, emailed or otherwise transmitted electronically with the same effect as if all Parties had signed the same instrument.

3

**IN WITNESS WHEREOF,** the Parties hereto have executed this Agreement, as of the date first written above.

HPIL Holding

By: _N. M. Amersey_

Nitin Amersey, CFO and Corporate Secretary

HPIL HEALTHCARE Inc.

By: _Louis Bertoli_

Louis Bertoli, President and CEO

HPIL ENERGYTECH Inc.

By: _Louis Bertoli_

Louis Bertoli, President and CEO

HPIL WORLDFOOD Inc.

By: _Louis Bertoli_

Louis Bertoli, President and CEO

HPIL REAL ESTATE Inc.

By: _Louis Bertoli_

Louis Bertoli, President and CEO

HPIL GLOBALCOM Inc.

By: _Louis Bertoli_

Louis Bertoli, President and CEO

HPIL ART&CULTURE Inc.

By: _Louis Bertoli_

Louis Bertoli, President and CEO

4





**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

| Filed in the office of | Document Number |
| --- | --- |
| *Barbara K. Cegavske* | 20160174662-25 |
| | Filing Date and Time |
| Barbara K. Cegavske | 04/19/2016 8:11 AM |
| Secretary of State | Entity Number |
| State of Nevada | E0240252009-2 |

## Certificate of Amendment
### (PURSUANT TO NRS 78.380)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

### Certificate of Amendment to Articles of Incorporation
### For Nevada Profit Corporation
### (Pursuant to NRS 78.380 - Before Issuance of Stock)

1. Name of corporation:

HPIL HOLDING

2. The articles have been amended as follows: (provide article numbers, if available)

Amendment to ARTICLE IV - CAPITAL STOCK (see attached EX.1 for full text of amendment).

Effect of Amendment. Cancellation of 100,000,000 shares of preferred stock ("Preferred Stock"): 25,000,000 Preferred Stock par value $0.75 per share; and 75,000,000 Preferred Stock par value $7 per share. None Preferred Stock is issued. Following the amendment, the total number of authorized shares of the Corporation's stock is reduced from 500,000,000 to 400,000,000, consisting solely of 400,000,000 shares of common stock, par value $0.0001 per share.

3. The undersigned declare that they constitute at least two-thirds of the following:

(check only one box)  ☐ Incorporators    ☒ board of directors

4. Effective date and time of filing: (optional)   Date:   4/18/2016       Time:
(must not be later than 90 days after the certificate is filed)

5. The undersigned affirmatively declare that to the date of this certificate, no stock of the corporation has been issued.

6. Signatures: (If more than two signatures, attach an 8 1/2" x 11" plain sheet with the additional signatures.)

X _____          X _____
Authorized Signature              Authorized Signature

**IMPORTANT:** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.
*This form must be accompanied by appropriate fees.*
Nevada Secretary of State Amend Profit-Before
Revised: 1-5-15

044

**Certificate of Amendment to Articles of Incorporation**
**For Nevada Profit Corporation**
**(Pursuant to NRS 78.380 - Before Issuance of Stock)**

6. Signatures: (additional signatures)

X _John B Mitchell_

Authorized Signature

046

EX.1

## AMENDMENT TO THE ARTICLES OF INCORPORATION
## OF
## HPIL HOLDING

*HPIL HOLDING (hereinafter the "Corporation"), a Nevada corporation organized and existing under and by virtue of the State of Nevada, does hereby certify that:*

1. *The original Articles of Incorporation of the Corporation were filed with the Secretary of State of the State of Nevada on May 5, 2009, with amendments and restatements or amendments thereto filed with the Secretary of State of the State of Nevada on May 13, 2009, October 14, 2009, and May 21, 2012.*

2. *This Amendment to the Articles of Incorporation has been duly adopted in accordance with the provisions of the laws of the State of Nevada by the Board of Directors of the Corporation.*

3. *Article IV of the Articles of Incorporation is hereby amended to read as herein set forth in full:*

### Article IV - Capital Stock

The total number of shares of stock which the Corporation shall have authority to issue is Four Hundred Million (400,000,000) which shall consist of Four Hundred Million (400,000,000) shares of common stock, par value $0.0001 per share (the "Common Stock").

The voting powers, designations, preferences, privileges and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions of each class or series of capital stock of the Corporation, shall be as provided in this Article IV. Unless otherwise indicated, all Section references in this Article IV shall refer to the corresponding Sections in said Article.

1. **Designation.** A total of 400,000,000 shares of the Corporation's capital stock shall be designated as a class of Common Stock.

2. **Voting.** The holder of each share of Common Stock shall be entitled to one vote for each such share as determined on the record date for the vote or consent of stockholders.

3. **Dividends.** The holders of Common Stock shall be entitled to receive dividends out of funds legally available therefor at such times and in such amounts as the Board of Directors may determine in its sole discretion. Such dividends shall be payable to the holders of shares of Common Stock on a pro rata basis when, as, and if declared by the Board of Directors and shall be non-cumulative.

4. **Liquidation.** Upon any Liquidation Event, after the payment or provision for payment of all debts and liabilities of the Corporation, the holders of shares of Common Stock shall be entitled to share ratably in the remaining assets of the Corporation available for distribution.

5. **Fractional Shares.** The Corporation may not issue fractional shares of Common Stock.

*The date of the adoption of the Amendment is April 18, 2016.*

*The Amendment was duly adopted by a majority of the Board of Directors of record on April 18, 2016.*

*IN WITNESS WHEREOF, the Corporation has authorized this Amendment to the Articles of Incorporation to be signed by Louis Bertoli, Chief Executive Officer, as of this 18th day of April 2016.*

*Louis Bertoli, Chief Executive Officer*



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov


*090204*

| Filed in the office of | Document Number |
|---|---|
| *Barbara K. Cegavske* | 20170349505-56 |
| Barbara K. Cegavske | Filing Date and Time |
| Secretary of State | 08/14/2017 8:45 AM |
| State of Nevada | Entity Number |
| | E0240252009-2 |

## Certificate of Amendment
(PURSUANT TO NRS 78.385 AND 78.390)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

### Certificate of Amendment to Articles of Incorporation
### For Nevada Profit Corporations
### (Pursuant to NRS 78.385 and 78.390 - After Issuance of Stock)

1. Name of corporation:

HPIL Holding

2. The articles have been amended as follows: (provide article numbers, if available)

Article IV has been amended and restated as set forth on Exhibit 1 attached hereto.

3. The vote by which the stockholders holding shares in the corporation entitling them to exercise at least a majority of the voting power, or such greater proportion of the voting power as may be required in the case of a vote by classes or series, or as may be required by the provisions of the articles of incorporation* have voted in favor of the amendment is:     84.8%

4. Effective date and time of filing: (optional)     Date: _____     Time: _____
(must not be later than 90 days after the certificate is filed)

5. Signature: (required)

X _____
Signature of Officer

*If any proposed amendment would alter or change any preference or any relative or other right given to any class or series of outstanding shares, then the amendment must be approved by the vote, in addition to the affirmative vote otherwise required, of the holders of shares representing a majority of the voting power of each class or series affected by the amendment regardless to limitations or restrictions on the voting power thereof.

**IMPORTANT:** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*                    Nevada Secretary of State Amend Profit-After
Revised: 1-5-15

EXHIBIT 1

### ARTICLE IV - CAPITAL STOCK

The total number of shares of stock which the Corporation shall have authority to issue is ten billion, seven hundred three million (10,703,000,000) which shall consist of:

A.  Three Million Ten (3,000,010) shares of preferred stock, par value $0.0001 per share (the "Preferred Stock"); and

B.  Ten billion, six hundred ninety-nine million, nine hundred ninety-nine thousand, nine hundred ninety (10,699,999,990) shares of common stock, par value $0.0001 per share (the "Common Stock").

The voting powers, designations, preferences, privileges and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions of each class or series of capital stock of the Corporation, shall be as provided in this Article IV. Unless otherwise indicated, all Section references in this Article IV shall refer to the corresponding Sections in said Article.

**A. "PREFERRED STOCK".**

1.  **Designation.**

    (a)  **Series A Preferred.** A total of 10 shares of the Corporation's Preferred Stock shall be authorized as a series known as Series A Preferred Stock, par value $0.0001 per share (the "Series A Stock").

    (b)  **Series B Preferred.** A total of 3,000,000 shares of the Corporation's Preferred Stock shall be authorized as a series known as Series B Preferred Stock, par value $0.0001 per share (the "Series B Stock").

2.  **Voting.**

    (a)  **Series A Stock.** The holders of Series A Stock shall be entitled to notice of any stockholders' meeting in accordance with the Bylaws of the Corporation and shall vote with holders of Common Stock, voting together as a single class upon all matters submitted to a vote of stockholders, excluding those matters required to be submitted to a class or series vote pursuant to the terms hereof or by law.

    If at least one share of Series A Stock is issued and outstanding, then the total aggregate issued shares of Series A Stock at any given time, regardless of their number, shall have voting rights equal to four times the total number of shares of Common Stock which are issued and outstanding at the time of voting.

    Each individual share of Series A Stock shall have the voting rights equal to four times the sum of all shares of Common Stock issued and outstanding at the time of voting divided by the number of shares of Series A Stock issued and outstanding at the time of voting, upon any items submitted to a vote of stockholders, except with respect to matters requiring a separate series or class vote.

    (b)  **Series B Stock.** Series B Stock shall have no voting rights.

3.  **Dividends.** The holders of shares of Series A Stock and Series B Stock shall be entitled to receive, out of funds legally available therefor, at such times and in such amounts as the board of directors may determine in its sole discretion.

4.  **Conversion.** The holders of the shares of Preferred Stock shall have the following conversion rights:

    (a)  **Series A Stock.** Each individual share of Series A Preferred Stock shall be convertible into the number of shares of Common Stock equal to: [all shares of Common Stock issued and outstanding at time of conversion, plus all shares of Series B Preferred Stocks issued and outstanding at time of conversion] divided by four (4) and divided again by the total number of shares of Series A Preferred Stock issued and outstanding at the time of conversion.

    (b)  **Series B Stock.** A holder of shares of Series B Stock shall be entitled at any time, upon written election to the Corporation, without payment of any additional consideration, to cause any or all of its shares of Series B Stock to be converted on a 50 for 1 basis into Common Stock.

    (c)  **Method of Conversion.** Upon the election by a holder of shares of Preferred Stock to effect a conversion, such holder shall surrender the certificate or certificates representing the shares of Preferred Stock being converted, duly assigned

or endorsed for transfer to the Corporation (or accompanied by duly executed stock powers relating thereto), at the principal executive office of the Corporation or the offices of the transfer agent for the Preferred Stock or such office or offices in the continental United States of an agent for conversion as may from time to time be designated by notice to the holders of the Preferred Stock by the Corporation, or in the event the certificate or certificates are lost, stolen or missing, shall deliver an Affidavit of Loss with respect to such certificates. The issuance by the Corporation of shares of Common Stock upon such a conversion shall be effective as of the surrender of the certificate or certificates for the shares of Preferred Stock to be converted, duly assigned or endorsed for transfer to the Corporation (or accompanied by duly executed stock powers relating thereto), or as of the delivery of an Affidavit of Loss.

(d) **Fractional Shares.** The Corporation shall not be obligated to deliver to any holder of shares of Preferred Stock any fractional share of Common Stock issuable upon any conversion of such shares (after aggregating all shares of Common Stock into which shares of Preferred Stock held by each holder could be converted), but in lieu thereof may make a cash payment in respect thereof in any manner permitted by law.

(e) **Reservation of Stock Issuable Upon Conversion.** The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Common Stock solely for the purpose of effecting the conversion of the shares of Preferred Stock such number of its shares of Common Stock as shall from time to time be sufficient to effect the conversion of all outstanding shares of Preferred Stock; and if at any time the number of authorized but unissued shares of Common Stock shall not be sufficient to effect the conversion of all then outstanding shares of Preferred Stock, the Corporation will take such corporate action as may be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purpose.

(f) **No Closing of Transfer Books.** The Corporation shall not close its books against the transfer of shares of Preferred Stock in any manner which would interfere with the timely conversion of any shares of Preferred Stock.

(g) **Issuance Tax.** The issuance of certificates for shares of Common Stock upon conversion of shares of the applicable series of Preferred Stock will be made without charge to the holders of such shares for any issuance tax in respect thereof or other costs incurred by the Corporation in connection with such conversion and the related issuance of such stock.

5. **Dividends and Stock Splits.** If the number of shares of Common Stock outstanding is increased by a stock dividend payable in shares of Common Stock or by a subdivision or split-up of shares of Common Stock, then, on the date such payment is made or such change is effective, the conversion ratio shall be appropriately adjusted so that the number of shares of Common Stock issuable on conversion of any shares of Preferred Stock shall be increased in proportion to such increase of outstanding shares of Common Stock.

B. **"Common Stock".**

1. **Designation.** A total of 10,997,999,990 shares of the Corporation's capital stock shall be designated as common stock, par value $0.0001 per share.

2. **Voting.** The holder of each share of Common Stock shall be entitled to one vote for each such share as determined on the record date for the vote or consent of stockholders and, for so long as any share of Series A Stock remains outstanding, shall vote together with the holders of Series A Stock, as a single class, upon any items submitted to a vote of stockholders, except with respect to matters requiring a separate series or class vote.

3. **Dividends.** Subject to the rights of holders of Preferred Stock, the holders of Common Stock shall be entitled to receive dividends out of funds legally available therefor at such times and in such amounts as the board of directors may determine in its sole discretion.

4. **Liquidation.** Upon any Liquidation Event, after the payment or provision for payment of all debts and liabilities of the Corporation and all preferential amounts to which the holders of shares of Preferred Stock are entitled with respect to the distribution of assets, the holders of shares of Common Stock shall be entitled to share ratably in the remaining assets of the Corporation available for distribution.

5. **Fractional Shares.** The Corporation may not issue fractional shares of Common Stock or Preferred Stock.





**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

| Filed in the office of | Document Number |
|---|---|
| *Barbara K Cegavske* | 20170349506-67 |
| Barbara K. Cegavske | Filing Date and Time |
| Secretary of State | 08/14/2017 8:45 AM |
| State of Nevada | Entity Number |
| | E0240252009-2 |

*150103*

## Certificate of Designation
### (PURSUANT TO NRS 78.1955)

USE BLACK INK ONLY - DO NOT HIGHLIGHT          ABOVE SPACE IS FOR OFFICE USE ONLY

### Certificate of Designation For
### Nevada Profit Corporations
### (Pursuant to NRS 78.1955)

**1. Name of corporation:**

HPIL Holding

**2. By resolution of the board of directors pursuant to a provision in the articles of incorporation this certificate establishes the following regarding the voting powers, designations, preferences, limitations, restrictions and relative rights of the following class or series of stock.**

Designation and Authorized Shares. The Corporation shall be authorized to issue ten (10) shares of Series A Preferred Stock, $0.0001 par value per share (the "Series A Preferred Stock"), which shall have the voting power, designations preferences, limitations, restrictions and relative rights as described in the documents attached hereto.

**3. Effective date of filing: (optional)**

(must not be later than 90 days after the certificate is filed)

**4. Signature: (required)**

X  *N. M. Armoury*
Signature of Officer

**Filing Fee: $175.00**

**IMPORTANT:** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State Stock Designation
Revised: 1-5-15

**HPIL HOLDING**
**STATEMENT OF DESIGNATION, POWERS,**
**PREFERENCES AND RIGHTS OF**
**SERIES A PREFERRED STOCK**

**Pursuant to NRS 78.1955**

The undersigned, Chief Executive Officer and President of HPIL Holding, a Nevada corporation (the "Corporation"), DOES HEREBY CERTIFY that the following resolutions were duly adopted by the Board of Directors of the Corporation on April 20, 2017:

WHEREAS, the Board of Directors is authorized within the limitations and restrictions stated in the Articles of Incorporation of the Corporation, to provide by resolution or resolutions for the issuance of 3,000,010 shares of Preferred Stock $.0001 par value per share, of the Corporation, in such series with such rights, preferences, privileges, qualifications, and restrictions thereof as the Corporation's Board of Directors shall fix by resolution or resolutions providing for the issuance thereof duly adopted by the Board of Directors; and

WHEREAS, it is the desire of the Board of Directors, pursuant to its authority as aforesaid, to authorize and fix the terms of a series of Preferred Stock and the number of shares constituting such series; and

NOW, THEREFORE, BE IT RESOLVED:

1. Designation and Authorized Shares. The Corporation shall be authorized to issue ten (10) shares of Series A Preferred Stock, $.0001 par value per share (the "Series A Preferred Stock").

2. Voting. Except as otherwise expressly required by law, each holder of Series A Preferred Stock shall be entitled to vote on all matters submitted to shareholders of the Corporation as follows:

If at least one (1) share of Series A Stock is issued and outstanding, then the total aggregate issued shares of Series A Stock at any given time, regardless of their number, shall have voting rights equal to four times the total number of shares of Common Stock which are issued and outstanding at the time of voting.

Each individual share of Series A Stock shall have the voting rights equal to four (4) times the sum of all shares of Common Stock issued and outstanding at the time of voting divided by the number of shares of Series A Stock issued and outstanding at the time of voting, upon any items submitted to a vote of stockholders, except with respect to matters requiring a separate series or class vote.

3. Liquidation.

3.1    There shall be no preference to the holders of Series A Preferred Stock upon the liquidation, dissolution or winding up of the business of the Corporation, whether voluntary or involuntary.

3.2    Any distribution in connection with the liquidation, dissolution or winding

1

up of the Corporation, or any bankruptcy or insolvency proceeding, shall be made in cash to the extent possible. Whenever any such distribution shall be paid in property other than cash, the value of such distribution shall be the fair market value of such property as determined in good faith by the Board of Directors of the Corporation. The Corporation shall, upon receipt of such determination of fair market value, give prompt written notice of the determination to each holder of shares of Series A Preferred Stock.

4.      Conversion.

4.1 *Conversions at Option of Holder.* For a period of ten years beginning on the date of issuance, each share of Series A Preferred Stock shall be convertible into shares of Common Stock (the "Conversion Shares"), at the option of the Holder, at any time from and after the Original Issue Date (as defined below) calculated as follows:

> The sum of all shares of Common Stock issued and outstanding at time of conversion, plus all shares of Series B Preferred Stocks issued and outstanding at time of conversion, divided by four (4) and divided again by the total number of shares of Series A Preferred Stock issued and outstanding at the time of conversion.

Holders shall effect conversions by providing the Corporation with the form of conversion notice attached hereto as Annex A (a "Notice of Conversion"). Each Notice of Conversion shall specify the number of shares of Series A Preferred Stock to be converted, the number of shares of Series A Preferred Stock owned prior to the conversion at issue, the number of shares of Series A Preferred Stock owned subsequent to the conversion at issue and the date on which such conversion is to be effected, which date may not be prior to the date the Holder delivers such Notice of Conversion to the Corporation by facsimile (the "Conversion Date"). If no Conversion Date is specified in a Notice of Conversion, the Conversion Date shall be the date that such Notice of Conversion to the Corporation is deemed delivered hereunder. The calculations and entries set forth in the Notice of Conversion shall control in the absence of manifest or mathematical error.

4.2      *Anti-Dilution Protection.*

(a)      Adjustment for Subdivision or Combination of Common Stock.

(i)      If the Corporation at any time subdivides (by any stock split, stock dividend, re-capitalization or otherwise) one or more classes of its outstanding shares of Common Stock into a greater number of shares, the number of shares issuable upon conversion of the Series A Preferred Stock will be proportionately increased.

(ii)      If the Corporation at any time combines (by combination, reverse stock split or otherwise) one or more classes of its outstanding shares of Common Stock into a smaller number of shares, the number of shares issuable upon conversion of the Series A Preferred Stock will be proportionately reduced.

(b)      Adjustment for Reclassification, Exchange, or Substitution. If the Common Stock issuable upon the conversion of the Series A Preferred Stock shall be changed into the same or a different number of shares of any class or classes of stock, whether by capital reorganization, reclassification, or otherwise (other than a subdivision or combination of shares or stock dividend provided for above, or a reorganization, merger, consolidation, or sale of assets provided for elsewhere in this Section 4.2), then and in each such event the holder of each share of Series A Preferred Stock

2

shall have the right thereafter to convert such share into the kind and amount of shares of stock and other securities and property receivable upon such reorganization, reclassification, or other change, by holders of the number of shares of Common Stock into which shares of Series A Preferred Stock might have been converted immediately prior to such reorganization, reclassification, or change, all subject to further adjustments as provided herein,

(c)     <u>Reorganization, Mergers, Consolidations, or Sales of Assets.</u> If at any time or from time to time there shall be a capital reorganization of the Common Stock (other than a subdivision or combination of shares or stock dividend provided for above, or a reorganization, merger, consolidation, or sale of assets provided for elsewhere in this Section 4.2) or a merger or consolidation of the Corporation with or into another corporation, or the sale of all or substantially all of the Corporations assets to any other person, them as a part of such reorganization, merger, consolidation, or sale provision shall be made so that the holders of the Series A Preferred Stock shall thereafter be entitled to receive upon conversion of the Series A Preferred Stock, the number of shares of stock or other securities or property of the Corporation, or of the successor corporation resulting from such merger or consolidation or sale, to which a holder of Common Stock deliverable upon conversion would have been entitled on such capital reorganization, merger, consolidation, or sale. In any such case, appropriate adjustment shall be made in the application of the provisions of this Section 4 with respect to the rights of the holders of the Series A Preferred Stock after reorganization, merger, consolidation, or sale to the end that the provisions of this Section 4 (including the number of shares issuable upon conversion of the Series A Preferred Stock) shall be applicable after that event as nearly equivalent as may be practicable

(d)     <u>Notices of Record Date.</u> In the event of (i) any taking by the Corporation of a record of the holders of any class or series of securities for the purpose of determining the holders thereof who are entitled to receive any dividend or other distribution or (ii) any reclassification or recapitalization of the capital stock of the Corporation, any merger or consolidation of the Corporation to any other corporation, entity, or person, or voluntary or involuntary dissolution, liquidation, or winding up of the Corporation, the Corporation shall mail to each holder Series A Preferred at least 30 days prior to the record date specified therein, a notice specifying (i) the date on which any such record is to be taken for the purpose of such dividend or distribution and a description of such dividend or distribution, (ii) the date on which any such reorganization, reclassification, transfer, consolidation, merger, dissolution, liquidation, or winding up is expected to become effective, and (iii) the time, if any is to be fixed, as to when the holders of record of Common Stock (or other securities) for securities for securities or other property deliverable upon such reorganization, reclassification, transfer, consolidation, merger, dissolution, liquidation, or winding up.

(e)     <u>Fractional Shares.</u> No fractional shares of Common Stock shall be issued upon conversion of Series A Preferred Stock. In lieu of any fractional shares to which the holder would otherwise be entitled, the Corporation shall issue a whole share.

(f)     <u>Notices.</u> Any notice required by the provisions of this Section 4 to be given to the holder of shares of the Series A Preferred Stock shall be deemed given when personally delivered to such holder or five (5) business days after the same has been deposited in the United Sates mail, certified or registered mail, return receipt requested, postage prepaid, and addressed to each holder of record at his address appearing on the books of the Corporation.

(g)     <u>Payment of Taxes.</u> The Corporation will pay all taxes and other governmental charges that may be imposed in respect of the issue or delivery of shares of Common Stock upon conversion of shares of Series A Preferred Stock.

3

(f)    No Dilution or Impairment. The corporation shall not amend its Articles of Incorporation or participate in any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, for the purpose of avoiding or seeking to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Corporation, but will at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the conversion rights of the holders of the Series A Preferred Stock against dilution or other impairment.

(g)    Reservation of Common Stock. The corporation agrees that the number of shares of Common Stock sufficient to provide for the conversion of the Series A Preferred stock upon the basis herein set forth will at all times that the shares of Series A Preferred Stock are issued and outstanding be reserved for the conversion thereof.

5.    Redemption. At the option of the Corporation, at any time prior to the tenth (10th) anniversary date of the Original Issue Date, the Corporation may redeem the Series A Preferred Stock at a purchase price equal to the Stated Value. The Corporation shall give the holders of the Series A Preferred Stock at least five (5) days prior written notice of its intention to redeem the Series A Preferred Stock. "Original Issue Date" shall mean the dates of issuance of the Series A Preferred Stock.

6.    Record Holders. The Corporation and its transfer agent, if any, for the Series A Preferred Stock may deem and treat the record holder of any shares of Series A Preferred Stock as reflected on the books and records of the Corporation as the sole true and lawful owner thereof for all purposes, and neither the Corporation nor any such transfer agent shall be affected by any notice to the contrary.

7.    Restriction and Limitations. Except as expressly provided herein or as required by law, so long as any shares of Series A Preferred Stock remain outstanding, the Corporation shall not, without the unanimous vote or written consent of the holders of the then outstanding shares of the Series A Preferred Stock, take any action which would adversely and materially affect any of the preferences, limitations or relative rights of the Series A Preferred Stock, including without limitation cancel or modify adversely and materially the voting rights as provided in Section 2 herein.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Designation, Powers, Preferences and Rights of Series A Preferred Stock this _16th_ day of August, 2017.

HPIL HOLDING

_N. M. Amersey_

Nitin Amersey
Chief Financial Officer, Secretary & Director

055



*150103*



**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website: www.nvsos.gov**

| Filed in the office of | Document Number |
|---|---|
| *Barbara K. Cegavske* | **20170349507-78** |
| Barbara K. Cegavske | Filing Date and Time |
| Secretary of State | **08/14/2017 8:45 AM** |
| State of Nevada | Entity Number |
| | **E0240252009-2** |

## Certificate of Designation
### (PURSUANT TO NRS 78.1955)

USE BLACK INK ONLY - DO NOT HIGHLIGHT          ABOVE SPACE IS FOR OFFICE USE ONLY

### Certificate of Designation For
### Nevada Profit Corporations
### (Pursuant to NRS 78.1955)

**1. Name of corporation:**

HPIL Holding

**2. By resolution of the board of directors pursuant to a provision in the articles of incorporation this certificate establishes the following regarding the voting powers, designations, preferences, limitations, restrictions and relative rights of the following class or series of stock.**

Designation and Authorized Shares. The Corporation shall be authorized to issue three million (3,000,000) shares of Series B Preferred Stock, $0.0001 par value per share (the "Series B Preferred Stock"), which shall have the voting power, designations preferences, limitations, restrictions and relative rights as described in the documents attached hereto.

**3. Effective date of filing: (optional)** _____

(must not be later than 90 days after the certificate is filed)

**4. Signature: (required)**

X _____

Signature of Officer

**Filing Fee: $175.00**

**IMPORTANT:** Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees.*          Nevada Secretary of State Stock Designation
                                                              Revised: 1-5-15

**HPIL HOLDING**
**STATEMENT OF DESIGNATION, POWERS,**
**PREFERENCES AND RIGHTS OF**
**SERIES B PREFERRED STOCK**

**Pursuant to NRS 78.1955**

The undersigned, Chief Executive Officer and President of HPIL Holding, a Nevada corporation (the "Corporation"), DOES HEREBY CERTIFY that the following resolutions were duly adopted by the Board of Directors of the Corporation on April 20, 2017:

WHEREAS, the Board of Directors is authorized within the limitations and restrictions stated in the Articles of Incorporation of the Corporation, to provide by resolution or resolutions for the issuance of 3,000,010 shares of Preferred Stock $.0001 par value per share, of the Corporation, in such series with such rights, preferences, privileges, qualifications, and restrictions thereof as the Corporation's Board of Directors shall fix by resolution or resolutions providing for the issuance thereof duly adopted by the Board of Directors; and

WHEREAS, it is the desire of the Board of Directors, pursuant to its authority as aforesaid, to authorize and fix the terms of a series of Preferred Stock and the number of shares constituting such series; and

NOW, THEREFORE, BE IT RESOLVED:

1. Designation and Authorized Shares. The Corporation shall be authorized to issue three million (3,000,000) shares of Series B Preferred Stock, $.0001 par value per share (the "Series B Preferred Stock").

2. Voting. Except as otherwise expressly required by law, no holder of Series B Preferred Stock shall be entitled to vote on all matters submitted to shareholders of the Corporation.

3. Liquidation.

3.1    There shall be no preference to the holders of Series B Preferred Stock upon the liquidation, dissolution or winding up of the business of the Corporation, whether voluntary or involuntary.

3.2    Any distribution in connection with the liquidation, dissolution or winding up of the Corporation, or any bankruptcy or insolvency proceeding, shall be made in cash to the extent possible. Whenever any such distribution shall be paid in property other than cash, the value of such distribution shall be the fair market value of such property as determined in good faith by the Board of Directors of the Corporation. The Corporation shall, upon receipt of such determination of fair market value, give prompt written notice of the determination to each holder of shares of Series B Preferred Stock.

4.    Conversion.

1

4.1     *Conversions at Option of Holder.* For a period of ten years beginning on the date of issuance, each share of Series B Preferred Stock shall be convertible into fifty (50) shares of Common Stock, at the option of the Holder, at any time from and after the Original Issue Date (as defined below).

Holders shall effect conversions by providing the Corporation with the form of conversion notice attached hereto as Annex A (a "Notice of Conversion"). Each Notice of Conversion shall specify the number of shares of Series B Preferred Stock to be converted, the number of shares of Series B Preferred Stock owned prior to the conversion at issue, the number of shares of Series B Preferred Stock owned subsequent to the conversion at issue and the date on which such conversion is to be effected, which date may not be prior to the date the Holder delivers such Notice of Conversion to the Corporation by facsimile (the "Conversion Date"). If no Conversion Date is specified in a Notice of Conversion, the Conversion Date shall be the date that such Notice of Conversion to the Corporation is deemed delivered hereunder. The calculations and entries set forth in the Notice of Conversion shall control in the absence of manifest or mathematical error.

4.2     *Anti-Dilution Protection.*

(a)     Adjustment for Subdivision or Combination of Common Stock.

(i)     If the Corporation at any time subdivides (by any stock split, stock dividend, re-capitalization or otherwise) one or more classes of its outstanding shares of Common Stock into a greater number of shares, the number of shares issuable upon conversion of the Series B Preferred Stock will be proportionately increased.

(ii)     If the Corporation at any time combines (by combination, reverse stock split or otherwise) one or more classes of its outstanding shares of Common Stock into a smaller number of shares, the number of shares issuable upon conversion of the Series B Preferred Stock will be proportionately reduced.

(b)     Adjustment for Reclassification, Exchange, or Substitution. If the Common Stock issuable upon the conversion of the Series B Preferred Stock shall be changed into the same or a different number of shares of any class or classes of stock, whether by capital reorganization, reclassification, or otherwise (other than a subdivision or combination of shares or stock dividend provided for above, or a reorganization, merger, consolidation, or sale of assets provided for elsewhere in this Section 4.2), then and in each such event the holder of each share of Series B Preferred Stock shall have the right thereafter to convert such share into the kind and amount of shares of stock and other securities and property receivable upon such reorganization, reclassification, or other change, by holders of the number of shares of Common Stock into which shares of Series B Preferred Stock might have been converted immediately prior to such reorganization, reclassification, or change, all subject to further adjustments as provided herein,

(c)     Reorganization, Mergers, Consolidations, or Sales of Assets. If at any time or from time to time there shall be a capital reorganization of the Common Stock (other than a subdivision or combination of shares or stock dividend provided for above, or a reorganization, merger, consolidation, or sale of assets provided for elsewhere in this Section 4.2) or a merger or consolidation of the Corporation with or into another corporation, or the sale of all or substantially all of the Corporations assets to any other person, them as a part of such reorganization, merger, consolidation, or sale provision shall be made so that the holders of the Series B Preferred Stock shall thereafter be entitled to receive upon conversion of the Series B Preferred Stock, the number of shares of stock or other securities or property of the Corporation, or of the successor corporation resulting from such merger or consolidation

2

or sale, to which a holder of Common Stock deliverable upon conversion would have been entitled on such capital reorganization, merger, consolidation, or sale. In any such case, appropriate adjustment shall be made in the application of the provisions of this Section 4 with respect to the rights of the holders of the Series B Preferred Stock after reorganization, merger, consolidation, or sale to the end that the provisions of this Section 4 (including the number of shares issuable upon conversion of the Series B Preferred Stock) shall be applicable after that event as nearly equivalent as may be practicable

(d)     Notices of Record Date. In the event of (i) any taking by the Corporation of a record of the holders of any class or series of securities for the purpose of determining the holders thereof who are entitled to receive any dividend or other distribution or (ii) any reclassification or recapitalization of the capital stock of the Corporation, any merger or consolidation of the Corporation to any other corporation, entity, or person, or voluntary or involuntary dissolution, liquidation, or winding up of the Corporation, the Corporation shall mail to each holder Series B Preferred at least 30 days prior to the record date specified therein, a notice specifying (i) the date on which any such record is to be taken for the purpose of such dividend or distribution and a description of such dividend or distribution, (ii) the date on which any such reorganization, reclassification, transfer, consolidation, merger, dissolution, liquidation, or winding up is expected to become effective, and (iii) the time, if any is to be fixed, as to when the holders of record of Common Stock (or other securities) for securities for securities or other property deliverable upon such reorganization, reclassification, transfer, consolidation, merger, dissolution, liquidation, or winding up.

(e)     Fractional Shares. No fractional shares of Common Stock shall be issued upon conversion of Series B Preferred Stock. In lieu of any fractional shares to which the holder would otherwise be entitled, the Corporation shall issue a whole share.

(f)     Notices. Any notice required by the provisions of this Section 4 to be given to the holder of shares of the Series B Preferred Stock shall be deemed given when personally delivered to such holder or five (5) business days after the same has been deposited in the United Sates mail, certified or registered mail, return receipt requested, postage prepaid, and addressed to each holder of record at his address appearing on the books of the Corporation.

(g)     Payment of Taxes. The Corporation will pay all taxes and other governmental charges that may be imposed in respect of the issue or delivery of shares of Common Stock upon conversion of shares of Series B Preferred Stock.

(f)     No Dilution or Impairment. The corporation shall not amend its Articles of Incorporation or participate in any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, for the purpose of avoiding or seeking to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Corporation, but will at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the conversion rights of the holders of the Series B Preferred Stock against dilution or other impairment.

(g)     Reservation of Common Stock. The corporation agrees that the number of shares of Common Stock sufficient to provide for the conversion of the Series B Preferred stock upon the basis herein set forth will at all times that the shares of Series B Preferred Stock are issued and outstanding be reserved for the conversion thereof.

3

5. <u>Redemption.</u> At the option of the Corporation, at any time prior to the tenth (10th) anniversary date of the Original Issue Date, the Corporation may redeem the Series B Preferred Stock at a purchase price equal to the Stated Value. The Corporation shall give the holders of the Series B Preferred Stock at least five (5) days prior written notice of its intention to redeem the Series B Preferred Stock. "Original Issue Date" shall mean the dates of issuance of the Series B Preferred Stock.

6. <u>Record Holders.</u> The Corporation and its transfer agent, if any, for the Series B Preferred Stock may deem and treat the record holder of any shares of Series B Preferred Stock as reflected on the books and records of the Corporation as the sole true and lawful owner thereof for all purposes, and neither the Corporation nor any such transfer agent shall be affected by any notice to the contrary.

7. <u>Restriction and Limitations.</u> Except as expressly provided herein or as required by law, so long as any shares of Series B Preferred Stock remain outstanding, the Corporation shall not, without the unanimous vote or written consent of the holders of the then outstanding shares of the Series B Preferred Stock, take any action which would adversely and materially affect any of the preferences, limitations or relative rights of the Series B Preferred Stock, including without limitation cancel or modify adversely and materially the voting rights as provided in Section 2 herein.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Designation, Powers, Preferences and Rights of Series B Preferred Stock this *15th* day of August, 2017.

HPIL HOLDING

Nitin Amersey
Chief Financial Officer, Secretary & Director

4

## ANNEX A

## NOTICE OF CONVERSION

(To be Executed by the Registered Holder in order to convert shares of the Series B Preferred Stock)

The undersigned hereby elects to convert the number of shares of the Series B Preferred Stock indicated below, into shares of common stock, $.0001 par value per share (the "Common Stock"), of HPIL Holding, a Nevada corporation (the "Corporation"), according to the conditions hereof, as of the date written below. If shares are to be issued in the name of a person other than undersigned, the undersigned will pay all transfer taxes payable with respect thereto and is delivering herewith such certificates and opinions as reasonably requested by the Corporation in accordance therewith. No fee will be charged to the Holder for any conversion, except for such transfer taxes, if any.

Conversion calculations:

Date to Effect Conversion: _____

Number of shares of Preferred Stock owned prior to Conversion: _____

Number of shares of Preferred Stock to be Converted: _____

Stated Value of shares of Preferred Stock to be Converted: _____

Number of shares of Common Stock to be Issued: _____

Applicable Set Price: _____

Number of shares of Preferred Stock subsequent to Conversion: _____

[HOLDER]

By:_____
Name:
Title:

5

## RESOLUTION
## OF
## CONTINUANCE

### HPIL Holding

We, the undersigned, constituting all of the officers/directors of the above named Company, do hereby authorize the continuance of the Company into Wyoming.


DATED _February 27, 2019_


_NITIN AMERSEY_
Print Name

_CHAIRMAN & CEO_
Print Title

_N. M. Amersey_
Signature

062

# STATE OF WYOMING
## Office of the Secretary of State

I, EDWARD A. BUCHANAN, Secretary of State of the State of Wyoming, do hereby certify that

## HPIL Holding

an entity originally organized under the laws of Nevada on May 5, 2009, did on March 22, 2019 apply for a Certificate of Registration and filed Articles of Continuance in the office of the Secretary of State of State of Wyoming.

I further certify that **HPIL Holding** renounced its jurisdiction of formation and is now formed under the laws of the State of Wyoming in accordance with Wyoming statutes.

I have affixed hereto the Great Seal of the State of Wyoming and duly executed this official certificate at Cheyenne, Wyoming on this **22nd** day of **March**, **2019**.

*Edward A. Buchanan*
Secretary of State

By: _____ Anneleisa Renner _____

Filed Date: 03/22/2019