# Exhibit 3: Agreement and Plan of Reorganization, dated April 7, 2021

## AGREEMENT AND PLAN OF REORGANIZATION

THIS AGREEMENT AND PLAN OF REORGANIZATION (the "Agreement") made and entered into as of April 7th, 2021 by and among,.., a Wyoming Corporation (hereinafter referred to as the "HPIL" or "the Company"), and Cybernetic Technologies Ltd a British Columbia Corporation (hereinafter referred to as "CYBT").

### RECITALS

WHEREAS HPIL is a public company trades on OTC Markets and desires to acquire all the issued and outstanding common stock of CYBT, an entity in the development of the technology business.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in reliance upon the representations and warranties hereinafter set forth, the parties agree as follows:

1. **EXCHANGE OF SHARES FOR CONSIDERATION**

    1.1 <u>Shares Being Exchanged.</u> Subject to the terms and conditions of this Agreement, at the closing provided for in Section 2 hereof (the "Closing"), CYBT shareholders shall sell, assign, transfer and deliver to the Company the number of shares of common stock of CYBT;

    1.2 <u>Consideration.</u>

    b) Subject to the terms and conditions of this Agreement and in consideration of the sale, assignment, transfer and delivery of CYBT to the Company, at the Closing the Company delivers 94% of all outstanding shares to CYBT shareholders for 100% the ownership in CYBT.

2. **THE CLOSING**

    2.1 <u>Time and Place.</u> The closing of the transactions contemplated by this Agreement shall be held on or before April 8th, 2021 or on such other date and at such other time and place as the parties may agree upon in writing (the "Closing").

    2.2 <u>Deliveries by CYBT Stockholders</u> At the Closing, CYBT shall deliver to the Company the following: stock certificates representing 100% of CYBT shares, duly endorsed or accompanied by stock powers duly executed in blank and otherwise in form acceptable for transfer on the books of CYBT.

    2.3 <u>Deliveries by the Company.</u> At the Closing, the Company shall deliver Ninety-Two percent (92%) of all outstanding shares of HPIL with the non-affiliated shareholders retaining Two (2%) percent in the surviving entity. The remaining Six Percent will be issued as exchange for services rendered pertaining to this Agreement follows: Haining Zhang Four (4%) Percent and Angela Collette Two (2%) Percent. These shares will be issued under the terms that they split

proportionally between Haining Zhang and Angela Collette on July 15th, 2021. The expected shares to be issued and outstanding in the surviving entity CYBT will be approximately 356 Billion.

## 3. INDIVIDUAL REPRESENTATIONS AND WARRANTIES OF CYBT STOCKHOLDERS

CYBT Shareholders represent and warrant to the Company as follows:

3.1  Title.  Stephen Brown owns 100% of the Shares prior to Closing and shall transfer to the Company at the Closing good and valid title to said number of CYBT shares, free and clear of all restrictions on transfer (other than any restrictions under federal and state securities laws), liens, claims, options, charges, pledges, security interests, and encumbrances of every kind, character or description. are not a party to any CYBT trust, proxy, or other agreement or understanding with respect to the CYBT of any capital stock of CYBT.

3.2  Valid and Binding Agreement.  have the full and unrestricted right, power and authority and capacity to execute and deliver this Agreement and consummate the transactions contemplated herein. This Agreement has been duly executed and delivered by and constitutes the valid and binding obligation of such, enforceable in accordance with its terms.

3.3  Noncontravention. The execution and delivery of this Agreement and consummation of the transactions contemplated hereby do not violate or conflict with or constitute a default under any contract, commitment, agreement, understanding, arrangement or restriction of any kind to which is a party or by which or his property is bound, or to the knowledge of any existing applicable law, rule, regulation, judgment, or court order.

## 4. CYBT REPRESENTATIONS AND WARRANTIES

4.1  Authority. CYBT has all requisite corporate power and authority to enter into this Agreement and to consummate the transactions contemplated herein. The execution and delivery of this Agreement and the consummation of the transactions contemplated herein have been duly authorized and approved by all necessary corporate action on the part of CYBT. This Agreement has been duly executed and delivered by CYBT and constitutes the valid and binding obligation of CYBT enforceable in accordance with its terms.

4.2  Organization.

(a) CYBT is a corporation duly organized, validly existing and in good standing under the laws of British Columbia, Canada. CYBT has the corporate power and authority to carry on its business as presently conducted, possesses all licenses, franchises, rights and privileges material to the conduct of its business and is qualified to do business in all jurisdictions where the failure to be so qualified would have a material adverse effect on its business or financial condition.

(b) The copies of the Certificate of Incorporation of CYBT and all amendments thereto, as certified by related authority, and the Bylaws of CYBT and all amendments thereto, as certified by the Secretary of CYBT, which have heretofore been delivered to the Company, are complete and

correct copies of the Articles of Incorporation and Bylaws of CYBT as amended and in effect on the date hereof.

    4.3    Capitalization.

The authorized capital stock of CYBT consists 100,000 shares of Common Stock in par value $0.01 per share. All of the issued and outstanding shares of Common Stock of CYBT are duly authorized, validly issued, fully paid and nonassessable, and are not subject to preemptive rights created by statute, CYBT's charter documents or bylaws or any agreement to which CYBT is a party or by which it is bound. There are no other classes or series of capital stock outstanding.

    4.4    Financial Statements. CYBT has delivered to the Company copies of its unaudited balance sheet as of April 7th, 2021 and the related statements of operations for the period then ended together with appropriate notes to such financial statements (the "CYBT Financial Statements"). The CYBT Financial Statements have been prepared in accordance with generally accepted accounting principle consistently applied, and present fairly the financial condition and results of operations of CYBT at the dates and for the periods covered by the CYBT Financial Statements.

4.5 Litigation. There is no claim, action suit or proceeding, at law or in equity, pending or threatened against CYBT affecting any of its assets or properties, (nor, to the knowledge of CYBT is there any basis therefor) that might result, either in any case or in the aggregate, in any material adverse change in the business, operations, affairs, financial condition or prospects of CYBT or any of its properties or assets, nor is there any judgment, decree, injunction, rule or order of any court, governmental department, commission, agency, instrumentality or arbitrator outstanding against CYBT having, or which insofar as can be reasonably foreseen, in the future may have, any such effect. There is no claim, action, suit or proceeding by CYBT currently pending or which CYBT intends to initiate.

4.6 Intellectual Property. CYBT owns or has the right to use pursuant to license, sublicense, agreement or permission all patents, patent applications, trademarks, service marks, trade names, copyrights, computer software (including data and related documentation), trade secrets, Internet Websites, domain names and other proprietary rights and processes necessary for its business, including all IP's and any other operations related to Virtual Reality currently operated by Crank Media Inc. as now conducted and as proposed to be conducted. To the best of CYBT's knowledge, the business as conducted and as proposed to be conducted by CYBT does not and will not cause CYBT to infringe or violate any of the patents, trademarks, service marks, trade names, copyrights, computer software, licenses, trade secrets, domain names or other proprietary rights of any other Person. CYBT is not aware that any of its employees is obligated under any contract (including any license, covenant, or commitment of any nature), or subject to any judgment, decree or order of any court or administrative agency, that would interfere with the use of such employee's best efforts to promote the interests of CYBT or would conflict with the business of CYBT as conducted.

4.7 No Conflict. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby do not and will not conflict with, or result in a breach of any term or provision of, or constitute a default under or result in a violation of, the Certificate of

Incorporation or Bylaws of CYBT, any agreement, contract, lease, license or instrument to which CYBT is a party or by which it or any of its properties or assets are bound, or any judgment, decree, order, or writ by which CYBT is bound or to which it or any of its properties or assets are subject.

  4.8  Consent. No consent, approval, order or authorization of, or registration, declaration or filing with, any court, administrative agency or commission or other governmental authority or instrumentality is required by or with respect to CYBT in connection with the execution and delivery of this Agreement or the consummation by CYBT of the transactions contemplated herein.

### 5. CONDITIONS PRECEDENT

  5.1  Conditions to Obligations of the Company. The obligations of the Company to consummate the transactions contemplated by this Agreement are subject to the satisfaction on or before the date of Closing of the following conditions, unless waived by the Company:

    (a) Minimum Number of CYBT Shares. All the CYBT Stockholders shall have executed and delivered a copy of this Agreement and shall have delivered to the Company the stock certificates and investment letters referred to in Section 2.2 above.

    (b) Representations and Warranties of the CYBT Stockholders. The representations and warranties of the CYBT Stockholders set forth in Section 3 of this Agreement shall be true and correct in all material respects as of the date of this Agreement and on the date of the Closing.

    (c) Representations and Warranties of CYBT. The representations and warranties of CYBT set forth in Article 4 of this Agreement shall be true and correct in all material respects as of the date of this Agreement and on the date of Closing, and the Company shall have received a certificate or certificates to such effect signed by the CYBT chief executive officer.

    (d) List of CYBT Stockholders. CYBT shall have delivered to the Company for attachment as Exhibit A to this Agreement a true and correct copy of a list of the CYBT Stockholders who are parties to this Agreement and the number of CYBT Shares owned by each such Stockholder, and the total number of CYBT Shares set forth opposite the names of all of the Stockholders listed on Exhibit A shall constitute 100% of the issued and outstanding common stock of CYBT.

  5.2  Conditions to Obligations of CYBT and the CYBT Stockholders. The obligations of CYBT and the CYBT Stockholders to consummate the transactions contemplated by this Agreement are subject to the satisfaction on or before the date of Closing of the following conditions unless waived by CYBT and the CYBT Stockholders:

    (a) Representations and Warranties of the Company. The representations and warranties of the Company shall be true and correct in all material respects as of the date of this Agreement and on the date of Closing, and CYBT and the CYBT Stockholders shall have received a certificate signed by the chief executive officer of the Company to such effect.

(b)  Resignations. The Company shall have received and accepted the written resignations of the Company's officers and directors as determined by CYBT and the Company as of the date of Closing and shall have delivered such resignations to CYBT.

(c)  Election of Directors and Officers. The Board of Directors of the Company shall have elected persons designated by CYBT to serve as directors and officers of the Company effective as of the date of Closing. The new duly elected President and CEO of the Company will effective immediately be the current President and CEO of CYBT, Stephen Brown.

## 6.  SURVIVAL OF REPRESENTATIONS AND WARRANTIES

The representations and warranties contained herein shall survive the Closing, but shall expire on the first anniversary date following the date of Closing, unless a specific claim in writing with respect to these matters shall have been made, or any action at law or in equity shall have been commenced or filed before such anniversary date. Any investigations made by or on behalf of any of the parties prior to the date of Closing shall not affect any of the parties' obligations hereunder. Completion of the transactions contemplated herein shall not be deemed or construed to be a waiver of any right or remedy of any of the parties.

## 7.  INDEMNIFICATION

7.1  CYBT shall indemnify, defend and hold harmless the Company and each of its officers, directors, agents, attorneys, employees, consultants, and their respective heirs, legal representatives, successors and assigns (the "Company Indemnified Parties") against all losses, claims, damages, costs, expenses (including attorney's fees), liabilities or judgments or amounts that are paid in settlement of or in connection with any threatened or actual claim, action, suit, proceeding or investigation based in whole or in part on or arising in whole or in part out of (i) any breach of this Agreement by CYBT, including but not limited to failure of any representation or warranty to be true and correct at or before the Closing, or (ii) any act, omission or conduct of the CYBT prior to the Closing, whether asserted or claimed prior to, or at or after, the Closing, or (iii) relating to the consummation of the transactions contemplated herein, and any action taken in connection therewith ("Company Indemnified Liabilities"). Any Company Indemnified Party wishing to claim indemnification under this Section 7.1, upon learning of any such claim, action, suit, proceeding or investigation, shall CYBT fail to so, CYBT shall not relieve a party from any liability that it may have, except to the extent such failure materially prejudices such party.

7.2  The Company shall indemnify, defend and hold harmless CYBT and each of its officers, directors, agents, attorneys, employees, consultants, and their respective heirs, legal representatives, successors and assigns  against all losses, claims, damages, costs, expenses (including attorney's fees), liabilities or judgments or amounts that are paid in settlement of or in connection with any threatened or actual claim, action, suit, proceeding or investigation based in whole or in part on or arising in whole or in part out of (i) any breach of this Agreement by the Company, including but not limited to failure of any representation or warranty to be true and correct at or before the Closing, or (ii) any act, omission or conduct of the Company prior to the Closing, whether asserted or claimed prior to, or at or after, the Closing, or (iii) relating to the consummation

of the transactions contemplated herein, and any action taken in connection therewith ("CYBT Indemnified Liabilities"). Any CYBT Indemnified Party wishing to claim indemnification under this Section 7.2, upon learning of any such claim, action, suit, proceeding or investigation, shall CYBT the Company, but the failure so to CYBT shall not relieve a party from any liability that it may have under this Section 7.2, except to the extent such failure materially prejudices such party.

7.3  All rights to indemnification under this Section shall survive the consummation of the Transaction and the termination of this Agreement. The provisions of this Section are intended to be for the benefit of, and shall be enforceable by, each Indemnified Party, and his, her and its heirs and representatives. No party shall enter into any settlement regarding the foregoing without prior approval of the Indemnified Party.

## 8. OTHERS

8.1  No Shop. From the date of this Agreement until the earlier of (a) the Closing Date, or (b) the termination of this Agreement; neither Company nor CYBT shall cause their respective shareholders combination involving any equity interest in, or a substantial portion of the assets of itself, other than in connection with the transactions contemplated by this Agreement. Each of the parties hereto shall immediately advise the other party of the terms of any offer, proposal or indication of interest that it receives or otherwise becomes aware of.

8.2 Public Announcements. The Company and CYBT shall consult with each other before issuing any press release or making any public statement with respect to this Agreement or the transactions contemplated hereby and will not issue any such press release or make any such public statement prior to such consultation and without the written consent of the other party.

8.3 CYBT of Certain Events. In addition to any other CYBT required to be given by the terms of this Agreement, each of the parties shall promptly CYBT, officers, directors, employees and other agents to directly or indirectly, take any action to solicit, initiate or encourage any offer or proposal or indication of interest in a merger, consolidation or other business the other party hereto of:

(a)  any CYBT or other communication from any person or entity alleging that the consent of such person or entity is or may be required in connection with any of the transactions contemplated by this Agreement.

(b)  any CYBT or other communication from any governmental or regulatory agency or authority in connection with the transactions contemplated by this Agreement; and

(c) any actions, suits, claims, investigations or proceedings commenced or, to its knowledge threatened against, relating to or involving or otherwise affecting such party that, if pending on the date of this Agreement, would have been required to have been disclosed pursuant to above Sections or that relate to the consummation of the transactions contemplated by this Agreement.

8.4  Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Wyoming.

8.5     Person.  For purposes of this Agreement, the term "Person" shall mean any individual, corporation, partnership, joint venture or other business enterprise or entity and any governmental agency, federal, state or local.

8.6     CYBT  Any and all CYBT, demands or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if given by personal delivery, telex, facsimile, telegram or if deposited in the United States or Canada mail, certified or registered, postage prepaid, return receipt requested.  If such CYBT demand or other communication is given by personal delivery, telex, facsimile or telegram, service shall be conclusively deemed made at the time of receipt.  If such CYBT, demand or other communication is given by mail, such CYBT shall be conclusively deemed given Seventy Two (72) hours after the deposit thereof in the United States or Canada mail addressed to the party to whom such CYBT, demand or other communication is to be given as hereinafter set forth:

| | |
|---|---|
| If to CYBT: | 1720 650 West Georgia Street<br>Vancouver, BC, V6B 4N8, Canada |
| If to the Company: | 1507 Lampman Ct, Cheyenne, WY, 82007 USA |

8.7  Payment of Expenses.  CYBT shall bear all fees and expenses (including legal fees and all filing fees necessary to complete this transaction) including all expenses relating to OTC Markets and FINRA or filing a registration statement to the SEC and in general all incurred incident to the preparation and carrying out of the transactions contemplated herein.

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the parties hereto as of the date first above written.

HPIL HOLDING

By: Angela Collette
Authorized Signature

CYBERNETIC TECHNOLOGIES LTD

By: Stephen Brown, President/CEO