**Exhibit 10: Amended Settlement Agreement and and Stipulation, <u>Roots Properties v. HPIL Holding</u>, Sarasota County Circuit Court File No. 2022-CA-000580-NC, dated March 30, 2022**

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR
SARASOTA COUNTY, FLORIDA

ROOTS PROPERTIES INC, a British Columbia
Company,

        Plaintiff,                       GENERAL JURISDICTION

v.                                  CASE NO.:   2022-CA-000580-NC

HPIL HOLDING,  a Wyoming corporation
        Defendant.

_____/

## AMENDED
## SETTLEMENT AGREEMENT AND STIPULATION

THIS SETTLEMENT AGREEMENT and Stipulation (the "Settlement Agreement") dated as of March 30, 2022, by and between ROOTS PROPERTIES INC, a British Columbia company (ROOTS), and HPIL HOLIDNG, a Wyoming corporation (HPIL), (together, the "Parties").

WITNESSETH:

WHEREAS there remain convertible debts which arose between May 2021 and February 2022 by and among HPIL fully sold, transferred, and/or assigned to ROOTS, which debts are collectively resolved through the Bridge Loan Agreement (executed January 31, 2022) between the Parties;

WHEREAS , ROOTS has claimed, *inter alia,* that HPIL is in material breach of the Bridge Loan Agreement by, among other matters having failed to pay the principal amounts of convertible notes in the amounts of $44,000 and $20,000, together with interest thereon, and that such claims constitute a bona fide liability of HPIL (the "Claims");

WHEREAS , HPIL has hereinbefore failed to pay ROOTS the amount promised by the Bridge Loan Agreement;

WHEREAS, on or about February 5, 2022, ROOTS filed an action against the HPIL in the Circuit Court for the 12th Judicial Circuit, Sarasota County, Florida case no. 2022-CA-000580-NC, whereby ROOTS has asserted the Claims against HPIL and has alleged, *inter alia,* that HPIL has failed to perform as required under the Bridge Loan Agreement (the "Litigation");

WHEREAS, HPIL has denied any and all liability arising from the Claims.

WHEREAS HPIL denies that it is liable for the amount sought under the Complaint, but acknowledges that it does not have sufficient cash to satisfy the claim made in the Litigation or to defend against the Litigation and HPIL seeks to resolve this cause and, therefore,

1

has agreed to deliver to ROOTS, as provided herein, Two Billion and Six Hundred & Sixty Six Million and Two Hundred & Fifty Thousand (2,666,250,000) free trading shares, or as many freely tradable shares as are available within the authorized share count, of its common stock which shall have $.0001 par value per share in satisfaction of his Claims in the Litigation (the "Settlement Shares");

WHEREAS, HPIL currently only has the means to satisfy the payment of ROOTS's bona fide Claims in the Litigation through the issuance of the authorized shares to ROOTS pursuant to Section 3(a)(10) of the Securities Act of 1933, as amended (hereinafter, the "Securities Act"); and

WHEREAS, HPIL and ROOTS desire to resolve, settle and compromise ROOTS bona fide Claims that it has asserted against HPIL in the Litigation, which arise out of or relate to the Bridge Loan Agreement, for the amount of Two Billion and Eight Hundred Million (2,800,000,000) freely tradable shares, or as many freely tradable shares as are available within the authorized share count, of its common stock which shall have $.0001 par value per share, due and owing.

NOW , THEREFORE, the Parties hereto agree as follows:

1.      Defined Terms. As used in this Settlement Agreement, the following terms shall have the following meanings specified or indicated (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"COMMON STOCK" shall mean HPIL's common stock, $0.001 par value per share, and any shares of any other class of common stock whether now or hereafter authorized, having the right to participate in the distribution of dividends (as and when declared) and assets (upon liquidation of the HPIL).

"COURT" shall mean State Court within Sarasota County, Florida.

"PRINCIPAL MARKET" shall mean the Nasdaq National Market, the Nasdaq SmallCap Market, the Over the Counter QB marketplace, Over the Counter Pink Sheets the New York Stock Exchange, or any major national stock exchange - whichever is at the time the principal trading exchange or market for the Common Stock.

"TRANSFER AGENT" shall mean the transfer agent for the Common Stock (and to any substitute or replacement transfer agent for the Common Stock upon HPIL's appointment of any such substitute or replacement transfer agent).

2.      Fairness Hearing. Upon the execution hereof, HPIL and ROOTS agree, pursuant to Section 3(a)(l0) of the Securities Act of 1933 (the "Act"), to immediately submit the terms and conditions of this Settlement Agreement to the Court presiding over the Litigation for a hearing on the fairness of such terms and conditions, and the issuance exempt from registration of the Settlement Shares. This Settlement Agreement shall become binding upon the parties only upon entry of an order by the Court substantially in the form annexed hereto as Exhibit A (the "Order").

3.      Settlement Shares. Following entry of an Order by the Court in accordance with Paragraph 2 herein and the delivery by ROOTS and HPIL of the Stipulation of Dismissal (as

defined below), HPIL shall issue and deliver to ROOTS, and its successors and assigns, shares of HPIL's Common Stock (the "Settlement Shares") as follows:

a. In settlement of the Claims and Litigation, HPIL shall issue and deliver to ROOTS the Settlement Shares in tranches at a minimum of 500,000 each which shall be made every two weeks; and prior approval of the Chief Executive Officer of HPIL shall be required for any tranche made less than two weeks after a prior tranche and for any tranche of more than 500,000 shares and to 9.9% of the outstanding share count; At no time shall HPIL issue, or be required to issue, that number of Settlement Shares which, when issued, would combine with those Settlement Shares already issued to ROOTS, to which it retains title, where the aggregate ownership by ROOTS would exceed 9.5% percent of the then-issued and outstanding common stock of HPIL; and ROOTS warranties and guaranties that it will never hold more than 9.9% of the outstanding shares;

b. No later than the third business day following the date that the Court enters the Order, time being of the essence, HPIL shall: (i) cause its legal counsel to issue an opinion to HPIL's Transfer Agent, in form and substance reasonably acceptable to ROOTS and such Transfer Agent, that the Settlement Shares are legally issued, fully paid and non-assessable, are exempt from registration under the Securities Act, may be issued without restrictive legend, and may be resold by ROOTS at any time and without restriction; (ii) transmit via email, facsimile and overnight delivery an irrevocable and unconditional instruction to HPIL's stock Transfer Agent regarding the Settlement Shares to ROOTS in accordance with the terms herein relating to said Settlement Shares; and (iii) issue the Initial Issuance without any legends or restriction on transfer. The date upon which the first tranche of the Initial Issuance shares has been received into ROOTS's account and are available for sale by ROOTS shall be referred to as the "Issuance Date";

c. In the event that additional shares of HPIL Common Stock are necessary to be authorized in order to fulfill the issuance and delivery and the Settlement Shares to ROOTS, HPIL shall do so immediately so as to avoid any delays in the performance of its duties contained within the agreement.

4. Necessary Action. At all times after the execution of this Settlement Agreement and entry of the Order by the Court, each party hereto agrees to take or cause to be taken all such necessary action including, without limitation, the execution and delivery of such further instruments and documents, as may be reasonably requested by any party for such purposes or otherwise necessary to effect and complete the transactions contemplated hereby.

5. Releases. Upon receipt of all of the Settlement Shares for and in consideration of the terms and conditions of this Settlement Agreement, and except for the obligations, representation s and covenants arising or made hereunder or a breach hereof, the parties hereby release, acquit and forever discharge the other and each, every and all of their current officers, directors, shareholders, affiliated corporations, subsidiaries, agents, employees, representative s, attorneys, predecessors , successors and assigns (the "Released Parties"), of and from any and all claims, damages, cause of action, suits and costs, of whatever nature, character or description, whether known or unknown , anticipated or unanticipated , which the parties may now have or may hereafter have or claim to have against each other with respect to the claims and allegations

3

made in the Litigation. Nothing contained herein shall be deemed to negate or affect ROOTS's right and title to any securities heretofore issued to it by HPIL or any subsidiary of HPIL.

6. <u>Representations</u>. HPIL hereby represents, warrants and covenants to ROOTS as follows:

a. There are Sixty Billion (60,000,000,000) shares of Common Stock of HPIL authorized, of which approximately Seventeen Billion and Six Hundred & Eighteen Million and Three Hundred & Forty-Three Thousand and Six Hundred & Twenty-Two (17,618,343,622) Shares of Common Stock are issued and outstanding;

b. The shares of Common Stock to be issued pursuant to this Settlement Agreement and the Order are duly authorized, and when issued will be duly and validly issued, fully paid and non-assessable , free and clear of all liens, encumbrances and preemptive and similar rights to subscribe for or purchase securities;

c. The shares will be exempt from registration under the Securities Act and issuable without any restrictive legend;

d. REMOVED;

e. If at any time it appears reasonably likely that there may be insufficient authorized shares to fully comply with the Order, HPIL shall make efforts to increase its authorized shares to ensure its ability to timely comply with the Order as long as any efforts are approved by the governing bodies of FINRA and the Securities Exchange Commission;

f. The execution of this Settlement Agreement and performance of the Order by HPIL and ROOTS will not ( 1) conflict with, violate or cause a breach or default under any agreements between HPIL and any creditor (or any affiliate thereof) related to the account receivables comprising the Claims, or (2) require any waiver, consent, or other action of the HPIL or any creditor, or their respective affiliates, that has not already been obtained;

g. Without limitation, HPIL hereby waives any provision in any agreement related to the account receivables comprising the claims made in the Litigation that do or might require payments to be applied in a certain order, manner or fashion, or providing for exclusive jurisdiction in any court other than this Court;

h. HPIL has all necessary power and authority to execute, deliver and perform all of its obligations under this Settlement Agreement;

i. The execution, delivery and performance of this Settlement Agreement by HPIL has been duly authorized by all requisite action on the part of HPIL (including a majority of its independent directors), and this Settlement Agreement has been duly executed and delivered by HPIL;

j. HPIL did not enter into the transaction giving rise to the Litigation in contemplation of any sale or distribution of HPIL 's common stock or other securities;

j. There has been no modification, compromise, forbearance, or waiver entered into or given with respect to the Claims in the Litigation. There is no action based on the Claims in the Litigation that is currently pending in any court or other legal venue, and no judgments based upon the Claims in the Litigation have been previously entered in any legal proceeding;

l. There are no taxes due, payable or with holdable as an incident of ROOTS 's performance under the Agreement out of which this Litigation arose, and no taxes will be due, payable or with holdable as a result of settlement of the Claims in the Litigation as described herein;

m. ROOTS was not and within the past ninety (90) days has not been directly or indirectly through one or more intermediaries in control, controlled by, or under common control with, the HPIL and is not an affiliate of the HPIL as defined in Rule 144 promulgated under the Act;

n. HPIL has not received any notice (oral or written) from the SEC or Principal Market regarding a halt, limitation or suspension of trading in the Common Stock; and

o. Other than the consideration for the settlement described herein, ROOTS will not, directly or indirectly, receive any consideration from or be compensated in any manner by, the HPIL, or any affiliate of the HPIL, in exchange for or in consideration of settling the Claims.

p. HPIL agrees for a period of twenty-four (24) months hereinafter , that it will not dilute the ROOTS Position by the issuance of additional common stock of HPIL or securities convertible into such common stock. In the event HPIL issues any common stock or securities convertible into common stock, it shall promptly issue that number of shares of common stock to maintain the ROOTS Position.

q. Neither the Board of Director(s) of HPIL nor its executive management , has any imminent intentions to propose, vote upon, ratify or otherwise consider, any transaction involving a stock split, reverse stock split, stock dividend or any other change in capitalization, reorganization, reclassification, merger or similar event affecting HPIL or its common stock.

r. HPIL is operational and is a non-shell HPIL within the meaning of Rule 405 and all applicable Securities Rules and Registration pursuant thereto.

s. None of the transactions, agreements, or proceedings described above is part of a plan or scheme to evade the registration requirements of the Securities Act and both parties are acting and have acted in an arms-length capacity.

7.     Continuing Jurisdiction . Simultaneously with the execution of this Settlement Agreement , the attorneys representing the parties hereto will execute a stipulation of dismissal substantially in the form annexed hereto as Exhibit B (the "Stipulation of Dismissal "). In order to enable the Court to grant specific enforcement or other equitable relief in connection with this

Agreement, (a) the parties consent to the jurisdiction of the Court for purposes of enforcing this Settlement Agreement, and (b) each party to this Settlement Agreement expressly waives any contention that there is an adequate remedy at law or any like doctrine that might otherwise preclude injunctive relief to enforce this Settlement Agreement.

8.    <u>Default.</u> Any of the following events shall be considered an Event of Default under this Settlement Agreement:

a.   If HPIL shall default in promptly delivering the Settlement Shares to ROOTS in the form and mode of delivery as required by Paragraphs 2, 3 and 4 herein;

b.   If the Order shall not have been entered by the Court on or prior to ninety (90) days after execution of this agreement;

c.   If HPIL shall fail to comply with the Covenants set forth in Paragraph 14 hereof;

d.   If Bankruptcy, dissolution , receivership, reorganization, insolvency or liquidation proceedings or other proceedings for relief under any bankruptcy law or any law for the relief of debtors shall be instituted by or against the HPIL; or if the trading of the Common Stock shall have been halted, limited, or suspended by the SEC or on the Principal Market; or trading in securities generally on the Principal Market shall have been suspended or limited; or, minimum prices shall been established for securities traded on the Principal Market or eligible for delivery via DTC or DWAC; or the Common Stock is not eligible or unable to be deposited for trade on the Principal Market; or the Common Stock is no longer eligible for book transfer delivery via DTC or DWAC; or there shall have been any material adverse change (i) in the HPIL 's finances or operations, or (ii) in the financial markets such that, in the reasonable judgment of the ROOTS, makes it impracticable or inadvisable to trade the Settlement Shares; and such suspension, limitation or other action is not cured within ten (10) trading days; then the HPIL shall be deemed in default of the Settlement Agreement and Order;

In the event that HPIL is declared to be in default, HPIL shall remain fully obligated to comply with the terms of this Settlement Agreement and Stipulation for issuance of shares of stock to ROOTS for any amount of debt previously purchased and paid for by ROOTS pursuant to the terms of this Settlement Agreement and Stipulation as well as the Order approving the same along with all settlement shares required hereby.

9.    <u>Information</u> . HPIL and ROOTS each represent that prior to the execution of this Settlement Agreement, they have fully informed themselves of its terms, contents, conditions and effects, and that no promise or representation of any kind has been made to them except as expressly stated in this Settlement Agreement.

10.   <u>Ownership and Authority.</u> HPIL and ROOTS represent and warrant that they have not sold, assigned, transferred, conveyed or otherwise disposed of any or all of any claim, demand, right, or cause of action, relating to any matter which is covered by this Settlement Agreement, that each is the sole owner of such claim, demand, right or cause of action, and each has the power and authority and has been duly authorized to enter into and perform this Settlement

6

Agreement and that this Settlement Agreement is the binding obligation of each, enforceable in accordance with its terms.

11.     No Admission. This Settlement Agreement is contractual, and it has been entered into in order to compromise disputed claims and to avoid the uncertainty and expense of the litigation. This Settlement Agreement and each of its provisions in any orders of the Court relating to it shall not be offered or received in evidence in any action, proceeding or otherwise used as an admission or concession as to the merits of the Litigation or the liability of any nature on the part of any of the parties hereto except to enforce its terms.

12.     Binding Nature. This Settlement Agreement shall be binding on all parties executing this Settlement Agreement and their respective successors, representatives, agents, employees, assigns and heirs.

13.     Authority to Bind. Each party to this Settlement Agreement represents and warrants that the execution, delivery and performance of this Settlement Agreement and the consummation of the transactions provided in this Settlement Agreement have been duly authorized by all necessary action of the respective entity and that the person executing this Settlement Agreement on its behalf has the full capacity to bind that entity. Each party further represents and warrants that it has been represented by independent counsel of its choice in connection with the negotiation and execution of this Settlement Agreement, and that their respective counsel has reviewed this Settlement Agreement.

14.     Covenants. For a period of twenty-four (24) months hereinafter, neither HPIL nor any of its affiliates shall vote any shares of Common Stock owned or controlled by it (unless voting in favor of a proposal approved by a majority of HPIL's Board of Directors), or solicit any proxies or seek to advise or influence any person with respect to any voting securities of HPIL; in favor of (1) causing a class of securities of Defendant to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter- dealer quotation system of a registered national securities association; (2) causing a class of equity securities of HPIL to become eligible for termination of registration pursuant to Section 12(g)(4) of the Securities Exchange Act of 1934, as amended; (3) taking any action, intention, plan or arrangement similar to any of those enumerated above; (4) effectuate any split of HPIL 's equity securities; or (5) taking any action which would impede the purposes and/or objects of this Settlement Agreement. The provisions of this paragraph may not be modified or waived without further order of the Court.

15.     Legal Effect. The parties to this Settlement Agreement represent that each of them has been advised as to the terms and legal effect of this Settlement Agreement and the Order provided for herein, and that the settlement and compromise stated herein is final and conclusive forthwith, subject to the conditions stated herein, and each attorney represents that his or her client has freely consented to and authorized this Settlement Agreement after have been so advised.

16.     Waiver of Defense. Each party hereto waives a statement of decision, and the right to appeal from the Order after its entry. HPIL further waives any defense based on the rule against splitting causes of action. The prevailing party in any motion to enforce the Order or in any action for breach of or default under this Settlement Agreement shall be awarded his or its reasonable attorneys' fees and expenses in connection with such motion or action. Except as expressly set

7

forth herein, each party shall bear its own attorneys' fees, expenses and costs.

17. <u>Signatures.</u> This Settlement Agreement may be signed in counterparts and the Settlement Agreement, together with its counterpart signature pages, shall be deemed valid and binding on each party when duly executed by all parties. Signatures transmitted by fax and/or electronic mail in .pdf format shall be treated as an original ink signature for all purposes. This Settlement Agreement may be amended only by an instrument in writing signed by the party to be charged with enforcement thereof. This Settlement Agreement supersedes all prior agreements and understandings among the parties hereto with respect to the subject matter hereof.

18. <u>Choice of Law, etc</u>. Notwithstanding the location where this Settlement Agreement may be executed by either of the parties, or any other factor, all terms and provisions hereof shall be governed by and construed in accordance with the laws of the State of Florida applicable to agreements made and to be fully performed in that State and without regard to the principles of conflicts of laws thereof. Any action brought to enforce, or otherwise arising out of this Settlement Agreement or its breach shall be brought only in State Court sitting in Sarasota County, Florida.

19. <u>Inconsistency.</u> In the event of any inconsistency between the terms of this Settlement Agreement and any other document executed in connection herewith, the terms of this Settlement Agreement shall control to the extent necessary to resolve such inconsistency.

20. <u>Notices.</u> Any notice required or permitted hereunder shall be given in writing (unless otherwise specified herein) and shall be deemed effectively given on the earliest of

    a. the date delivered, if delivered by personal delivery as against written receipt therefor or by confirmed facsimile transmission;

b. the seventh business day after deposit, postage prepaid, in the United States Postal Service by registered or certified mail; or

c. the second business day after mailing by domestic or international express courier, with delivery costs and fees prepaid, in each case, addressed to each of the other parties thereunto entitled at the following addresses (or at such other addresses as such party may designate by ten (10) days' advance written notice similarly given to each of the other parties hereto):

If to ROOTS:                             If to HPIL:

                                        1720-650 West Georgia Street
                                        Vancouver, BC, V6B 4N8

        IN WITNESS WHEREOF, the parties have duly executed this Settlement Agreement and Stipulation as of the date first indicated above.

PLAINTIFF,                              DEFENDANT,
ROOTS PROPERTIES INC                   HPIL HOLDING

By: _____                    By: _____
Name                                   Name
Title                                  Title  CEO