UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HPIL HOLDING, INC.,

                    Plaintiff,

v.                                                              Case No. 1:23-cv-12050

HAINING ZHANG, et al.,                                          Honorable Thomas L. Ludington
                                                                United States District Judge

                    Defendants.
_____/

**OPINION AND ORDER (1) GRANTING DEFENDANTS BADGER, OSBORNE, AND CHRISTOPHERSON'S JOINT MOTION TO DISMISS; (2) DENYING DEFENDANT COLLETTE'S MOTION TO DISMISS; (3) DENYING DEFENDANT ZHANG'S MOTION TO DISMISS IN PART; (4) GRANTING DEFENDANT ZHANG'S MOTION TO DISMISS IN PART; (4) DENYING DEFENDANT ZHANG'S MOTION TO CLARIFY THE RECORD; (5) DIRECTING PLAINTIFF TO FILE CORPORATE DISCLOSURE; AND (6) DIRECTING PLAINTIFF TO FILE SUPPLEMENTAL BREIFING ON CORPORATE CAPACITY**

        Who was responsible for Plaintiff HPIL Holding, Inc.'s (HPIL) corporate conduct from April 2020 through 2021? And who is responsible for HPIL's corporate conduct today? The answer to the first question is central to the resolution of this case. The answer to the second question is central to the initiation of this case on HPIL's behalf. Yet both questions remain unanswered.

        At its core, this case concerns a power struggle between Christopher Philbrick and Stephen Brown. The Brown camp contends that Brown was duly appointed to serve as HPIL's President and CEO by Angela Collette after the 42nd Circuit Court in Midland, Michigan appointed Collette to act as HPIL's receiver. The Philbrick camp contends that Philbrick was appointed to serve as HPIL's sole officer *before* the state receivership proceedings and that these proceedings (1) were fraudulent; and (2) allowed Brown and his colleagues to perpetrate a "pump and dump" scheme at HPIL's expense. The Philbrick camp is at the helm here because Philbrick is the individual who

authorized the instant suit in HPIL's name. Yet he has not verified the corporate Complaint and his authority to do so remains unclear.

In August 2023, HPIL filed a 15-Count Complaint against ten Defendants, asserting causes of action ranging from state torts to federal RICO claims. However, five Defendants—including Brown and several of his Canadian colleagues and companies—have already been dismissed because HPIL was unable to serve process on them. The remaining Defendants are (1) Haining Zhang; (2) Angela Collette; (3) Andrew Badger; (4) Mark Osborne; and (5) Darcy Christopherson. Plaintiff alleges Zhang and Collette fraudulently initiated and influenced Midland County receivership proceedings and alleges Badger, Osborne, and Christopherson financed and participated in Brown's "pump and dump" scheme after Collette was appointed to serve as HPIL's receiver and Brown was appointed to serve as HPIL's CEO.

Badger, Osborne, and Christopherson—through Counsel—filed a joint motion to dismiss HPIL's Complaint in October 2023. Collette filed a *pro se* motion to dismiss in November 2023, and Zhang filed a *pro se* motion to dismiss in December 2023. For reasons explained below, (1) Defendants Badger, Osborne, and Christopherson's joint Motion to Dismiss will be granted; (2) Defendant Collette's Motion to Dismiss will be denied; and (3) Defendant Zhang's Motion to Dismiss will be granted in part, only to the extent it seeks dismissal of counts seeking declaratory relief, injunctive relief, and disgorgement. Further, HPIL will be directed to comply with Local Rule 83.4 and file a corporate disclosure statement. Lastly, because its capacity and authority to initiate this case remain unclear, HPIL will be directed to file supplemental briefing.

## I. Background Facts

In August 2023, Plaintiff HPIL Holding, Inc. (HPIL)—a holding company incorporated in Wyoming—filed a 15-Count Complaint in the above-captioned case against ten Defendants. ECF

No. 1. Five Defendants have already been dismissed because they reside in Canada and Plaintiff was unable to serve them. ECF No. 24. The remaining Defendants are (1) Haining Zhang, (2) Angela Collette, (3) Andrew Badger, (4) Mark Osborne, and (5) Darcy Christopherson. Plaintiff's claims are best considered in two parts. Part one concerns state proceedings in the 42nd Circuit Court in Midland, Michigan which Plaintiff alleges Zhang and Collette conspired to initiate in 2020 and fraudulently influenced throughout 2023, resulting in Collette being appointed to serve as HPIL's receiver. Part two concerns an alleged "pump and dump" scheme which Plaintiff claims—without further detail—deprived HPIL shareholders of nearly three million dollars. Although largely perpetrated by the dismissed Canadian Defendants, Plaintiff alleges Defendants Badger, Osborne, and Christopherson financed and participated in this scheme. Both parts of this complex factual background will be explained in detail below, after a brief introduction to HPIL and its formation.

Notably, with some exceptions, the pleadings in the above-captioned case are not models of clarity. Instead of  clearly outlining decades of factual legal developments and corporate conduct, Plaintiff includes nearly 400 pages of disorganized exhibits and apparently presumes this Court will put the pieces together. Defendants Zhang and Collette do not provide any greater clarity in their *pro se* motions to dismiss. The following background, although likely incomplete, presents the relevant factual record as provided by the Parties.

### A. HPIL Formation

Plaintiff HPIL was incorporated in Nevada on May 5, 2009. ECF No. 4-2 at PageID.777, 784. At the time of Plaintiff's incorporation, its directors were Louis Bertoli and Nitin Amersey, who both resided in Bay City, Michigan. *Id.* at PageID.784. Much remains unknown about HPIL's business. Plaintiff describes itself, broadly, as a "worldwide diversified holding company"

"focused on investing in both private and public companies in differing business sectors" and "evaluat[ing] the acquisition of intellectual properties and technologies." *Id.* at PageID.777–78. HPIL's public website is largely barren and does not provide any additional details. *See* HPIL HOLDING, https://www.hpilholding.ca/ (last visited Apr. 24, 2024) [https://www.hpilholding.ca/]. Plaintiff's Counsel noted that, at some point in time, HPIL owned a computer software company and a "drilling parts company." ECF No. 27 at PageID.1611.

On October 14, 2009, HPIL merged with Trim Nevada, Inc. and TNT Designs, Inc. to form "Trim Holding Group." ECF No. 4 at PageID.786–791. According to the Articles of Merger, Louis Bertoli and Nitin Amersey served as the only two directors of the newly created Trim Holding Group. *Id.* at PageID.796. Less than three years later, the name of the new entity was amended back to HPIL Holding. *Id.* at PageID.798–800. The May 2012 Amendment reflects that Bertoli would serve as Chairman of the Board, President, and CEO; whereas Amersey would serve as the CFO, Secretary, and Treasurer. *Id.* at PageID.803.

On June 1, 2015, HPIL Holding "absorbed" (1) HPIL Healthcare, Inc.; (2) HPIL Energytech, Inc.; (3) HPIL Worldfood, Inc.; (4) HPIL Real Estate, Inc.; (5) HPIL Globalcom, Inc.; and (6) HPIL Art & Culture, Inc. *Id.* at PageID.807–16. Nothing else is known about these entities.

On February 28, 2019, HPIL's authorized agent—Capital Administrations, LLC—filed Articles of Continuance in Wyoming for "convenience."[1] *See* ECF Nos. 4-2 at PageID.778; 27 at PageID.1610. At the time Articles of Continuance were filed, Nitin Amersey served as HPIL's President and Secretary; David Langle served as HPIL's Treasurer; and John Mitchell served as

---

[1] Defendants Zhang and Collette maintain—without explaining—that HPIL is not a Wyoming corporation and was "improperly continued" there. ECF No. 27 at PageID.1618, 1620–21.

an HPIL Director. *Id.* at PageID.778. Although newly incorporated in Wyoming, HPIL's principal

place of business at the time was in Midland, Michigan. ECF No. 4 at PageID.727.

### B. The Midland Receivership Proceedings

Enter stage left Defendants Haining Zhang and Angella Collette. On April 13, 2020,

Zhang—a Pennsylvania resident and a minor HPIL shareholder—filed a *pro se* complaint in

Michigan's 42nd Circuit Court for the County of Midland, seeking to appoint Angella Collette—

an attorney authorized to practice in New York, Michigan, and Kentucky—as HPIL's receiver.

ECF No. 4-1; *see also* ECF No. 27 at PageID.1608, 1612–13. As aptly described by Circuit Judge

Stephen Carras, the proceedings, detailed below, were "a bit of a mess." ECF No. 10-5 at

PageID.1429.

Generally, Zhang's receivership complaint alleged the following:

(1) HPIL was defunct and in need of rehabilitation;
(2) HPIL was delinquent in its filings required by the Michigan Secretary of State and the SEC;
(3) Nevada revoked HPIL's corporate charter in May 2019 because HPIL did not provide annual lists of its officers and directors and did not pay annual franchise tax;
(4) Zhang attempted to contact HPIL directors and officers but received no response;
(5) Zhang could not locate any of HPIL's directors, officers, or representatives;
(6) HPIL directors "abandoned the company" and did not hold annual meetings;
(7) HPIL's assets were being "misapplied or wasted causing material injury" to its shareholders;
(8) HPIL's agents "made false representations" in press releases, SEC filings, and "various other corporate literature," knowing these representations were false or with reckless disregard to their truth value; and
(9) HPIL's officers and directors breached their fiduciary duties.

ECF No. 4 at PageID.769–73. Although Zhang additionally alleged HPIL had not made any filing

with the Nevada Secretary of State since February 2019, Zhang's receivership complaint

conspicuously did *not* mention that HPIL filed Articles of Continuance in Wyoming that same

month. *See* ECF No. 4-1 at PageID.770.

Zhang also alleged that Collette was "well suited" to serve as HPIL's receiver because she had "over 20 years of experience" in criminal and corporate matters, and had significant "capability and corporate exposure." *Id.* at PageID.769, 771. On this point, Collette noted she and Zhang "ha[d] a mutual acquaintance who introduced [them] several years ago." ECF No. 27 at PageID.1620. And Zhang said he initiated the Midland receivership proceedings because, in his view, HPIL was "dormant" and Defendant Stephen Brown—discussed in more detail below—had "promising . . . plan[s]." *Id.* at PageID.1622.

Plaintiff sees things differently, and alleges Zhang and Collette had no genuine intention to rehabilitate HPIL and, instead, are serial filers who seek to exploit corporations through fraudulent receivership proceedings. *See* ECF No. 4 at PageID.732 (alleging (1) "Zhang has filed at least twenty complaints seeking to have a receiver . . . appointed over a corporation for the purpose of gaining control over these corporations to exploit the[m] for legally prohibited purposes[;]" and (2) "Collette has been appointed receiver or custodian, or has orchestrated the appointment of a receiver or custodian, on at least twenty occasions for the purpose of gaining control over these corporations to exploit the[m] for legally prohibited purposes").

After Zhang and Collette initiated the Midland receivership action, the Wyoming Secretary of State administratively dissolved HPIL on May 9, 2020. ECF No. 4-21 at PageID.1014; *see also* WYO. STAT. ANN. §§ 17-16-1420, 17-16-1421 (2022). On September 11, 2020, after a clerk's entry of default was issued, Judge Stephen Carras issued a default judgment in Zhang's favor and appointed Collette as HPIL's receiver. ECF No. 4-22. Collette filed for HPIL's reinstatement as a Wyoming corporation one week later. ECF No. 4-21 at PageID.1014. And HPIL was reinstated as a Wyoming corporation on October 14, 2020. *Id.* at PageID.1015.

After HPIL was reinstated, Plaintiff alleges that she and Zhang diluted HPIL's shares to

present it as a reverse-merger target. ECF No. 4 at PageID.731 (alleging Collette "increased HPIL's authorized shares from approximately eight billion shares to two hundred billions shares"). A reverse merger, generally, is "a way for private companies to go public," and often involves a private company acquiring the majority shares of a public company—like HPIL—which then serves as the private company's shell. *See* Marvin Dumont, *Reverse Mergers: Advantages and Disadvantages*, INVESTOPEDIA, (May 18, 2022), https://www.investop edia.com/articles/stocks/09/introduction-reverse-mergers.asp [https://perma.cc/U2RW-67AE]. Reverse mergers are often attractive for private companies that want to publicly trade without raising start-up capital and going through the initial public offering process. *Id.*

Enter stage right Stephen Brown—a Canadian resident who was initially named as a defendant in this case but was later dismissed for improper service. *See* ECF Nos. 4; 24. On April 7, 2021, Zhang and Collette entered an "Agreement and Plan of Reorganization" on HPIL's behalf with Cybernetic Technologies, Ltd.—a Canadian company wholly owned by Stephen Brown. ECF No. 4-3. Although Collette maintains she does not know Brown and the Agreement did not involve Brown personally, ECF No. 27 at PageID.1617–18, the Agreement was signed by Collette and Brown, and it appears that both initialed each page of the Agreement simultaneously. *See* ECF No. 4-3. That said, no Party has yet explained how Zhang and Collette knew Brown or how these individuals entered into agreement.

Regardless, the April 2021 Agreement transferred 92% of HPIL's shares to Cybernetic. *Id.* at PageID.841; *see also* ECF No. 4 at PageID.731. Zhang retained 4% of HPIL's shares, Collette retained 2% of HPIL's shares, and the remaining 2% of HPIL shares were left for "non-affiliated shareholders." ECF No. 4-3 at PageID.840. The Agreement also provided that Brown would be HPIL's new President and CEO, *id.* at PageID.844, and that Collette and Zhang would each receive

$25,000. *Id.* at PageID.840.[2]

On May 17, 2021, Collette filed a final report and account with the Midland County court under MCR 2.622(D)(7). ECF No. 4-4. In this report, Collette confirmed Brown's appointment as HPIL's president and requested to resign as receiver because "a suitable board ha[d] been appointed and HPIL ha[d] been fully rehabilitated." *Id.* at PageID.849. Yet, curiously, Collette concedes she has "never seen a financial statement or a tax return for HPIL[.]" ECF No. 27 at PageID.1620. At some point after Collette resigned as receiver, Plaintiff alleges Brown appointed David Postula to serve as HPIL's President, but that Brown remained HPIL's sole director and CEO. ECF No. 732.

In July 2021, Plaintiff's Counsel, Attorney Daniel Lehman, sent a letter to Brown which recognized him as HPIL's CEO and asked him to issue shares to Christopher Philbrick, Ray Wong, and Frank Dougherty according to purchase agreements. ECF No. 10-4 at PageID.1380, 1392. But two months later, on September 1, 2021, Christopher Philbrick, Ray Wong, and Frank Dougherty—represented by Lehman—intervened in the Midland receivership proceedings and sought to set aside the default judgment and vacate Collette's subsequent receivership. *See* ECF No. 4 at PageID.728; *see also* ECF No. 4-27 at PageID.1112.

Less than two weeks later, Judge Carras set aside the default judgment and re-opened the Midland County receivership proceedings. *See Zhang v. HPIL Holding*, 2020-6979-CB (42nd Circuit Court, Midland County, MI, Sep. 13, 2021). On November 9, 2021, for reasons the Parties have not adequately explained, Judge Carras dismissed Zhang's receivership Complaint and

---

[2] Zhang and Collette classify the Agreement as a mere "letter of intent." ECF No. 27 at PageID.1617, 1621–22. Not so. Plaintiff provided a copy of the Agreement. Its terms are binding. *See generally* ECF No. 4-3. Collette argues the Agreement was "pretty much the equivalent of a letter of intent" because she and Zhang were never paid by Brown. ECF No. 27 at PageID.1617. But, even if true, Brown's *breach* of the Agreement does not make it a nonbinding agreement.

granted Philbrick, Wong, and Dougherty leave to file a shareholder derivative counterclaim on HPIL's behalf against Zhang and Collette.[3] ECF No. 4-27. Although no Party has provided a copy of the counterclaim, it generally alleged that Zhang, Collette, and Brown engaged "in a scheme to fraudulently increase the value of HPIL's shares and sell them at an inflated price." ECF No. 5 at PageID.1129.

Although Judge Carras set aside the default judgment and eventually dismissed Zhang's original receivership complaint, he notably did *not* vacate any of Collette's actions during the year she served as HPIL's appointed receiver—including her appointment of Stephen Brown as HPIL's President and CEO—because the intervenors did not seek this relief. *See* ECF No. 10-4 at PageID.1404 ("I think it was two years ago . . . when you filed a motion to set aside the default, which was granted [be]cause service was improper. Right? And you submitted the order as a result of that, but you didn't at that time ask for Mr. Brown or anybody else to be removed as" HPIL Directors. "[S]o, the issue is, at the time, there was no change. Right? There was . . . nothing in your order requesting a change in who was in charge of HPIL. . . . So, at that point, the business has been operating under Mr. Brown's apparent authority for now two years."). But Plaintiff maintains that Brown did not and does not control HPIL, and alleges that, on October 17, 2022— after the receivership complaint was dismissed—Amersey appointed *Philbrick* as HPIL's sole director and sole board member. *See* ECF Nos. 4 at PageID.730–31, 747; 27 at PageID.1627.

At some point after the Midland County Court dismissed Zhang's receivership complaint, Brown intervened in the Midland receivership proceedings and sought to reinstate Zhang's dismissed Complaint and the default judgment appointing Collette as HPIL's receiver. ECF No. 4

---

[3] In her motion for summary disposition in state court, Collette suggested the set-aside was granted "primarily [because HPIL's] Wyoming registered agent (who had resigned) . . . should have been served[.]" ECF No. 10-1 at PageID.1197.

at PageID.744; *see also Zhang v. HPIL Holding*, 2020-6979-CB (42nd Circuit Court, Midland County, MI, Feb. 22, 2023). Plaintiff alleges that Brown's intervention in the Midland County proceedings was financed by Defendants Andrew Badger and Mark Osborne. ECF No. 4 at PageID.744. And Plaintiff alleges Defendant Darcy Christopherson "attempted to influence the Midland County proceedings" by texting Collette and Zhang suggested statements. *See* ECF No. 4 at PageID.725; *see also* ECF No. 4-18 at PageID.970.

Ultimately, on April 28, 2023, Judge Carras dismissed Philbrick, Wong, and Dougherty's intervening derivative counterclaim against Zhang and Collette with prejudice because there was no proof the intervenors were shareholders at the time of the alleged wrongdoing and because they never filed a written demand on HPIL before commencing their derivative counterclaim,. ECF No. 10-4 at PageID.1396 (citing Mɪᴄʜ. Cᴏᴍᴘ. Lᴀᴡs § 450.1493a), PageID.1398–99 ("[I]t's a harsh reality, but that's it. You cannot maintain the derivative action without having complied with the statutes that are precedent to it. So, for those reasons, [Collette and Zhang's] motion is granted for [summary disposition]."); *see also* ECF No. 10-5 at PageID.1422. And, two months later, for the same reasons, Judge Carras granted summary disposition in favor of Brown and dismissed the derivative counterclaim against him, too. ECF No. 10-5 at PageID.1416 (noting Philbrick, Wong, and Dougherty "d[id]n't have standing" and, accordingly, were "precluded from brining the derivative action").

### C. Alleged "Pump and Dump" Scheme

The second part of Plaintiff's allegations involve a "pump and dump" scheme orchestrated by Brown *after* Collette appointed him to serve as HPIL's President and CEO, which Plaintiff alleges deprived HPIL shareholders of nearly $3,000,000. *See* ECF No. 4 at PageID.729. Although most of the alleged "pump and dump" scheme involves Brown and his Canadian companies—who

have been dismissed as defendants—the scheme is still relevant to the remaining Defendants, who Plaintiff broadly alleges caused, participated, or financed the scheme.

Throughout April and May 2021, Brown, as HPIL's newly appointed President and CEO, executed three convertible promissory notes with GPL Ventures, LLC ("GPL") totaling $120,000, in exchange for capital. ECF Nos. 4-5; 4-6; 4-7. Plaintiff alleges GPL is a "toxic lender that specializes in loaning money to companies desperate for capital funding which lack the collateral and resources to obtain funding through conventional means,"[4] and further alleges that, once matured, these promissory notes allowed GPL to purchase significant amounts of HPIL shares at a drastically discounted rate. ECF No. 4 at PageID.733.

Around the same time, Brown caused HPIL to enter into a loan agreement with Roots Properties, Inc.—a Canadian company. *See* ECF No. 4-8 at PageID.891. But HPIL defaulted on this loan, and, in January 2022, Brown entered HPIL into a "Bridge Loan Agreement" with Roots to satisfy HPIL's $400,000 debt. *See id.* at PageID.894–97. Under the terms of the Bridge Loan Agreement, HPIL satisfied this debt by giving 1.4 million of its shares to Roots and giving 1.4 million of its shares to another company called "Zombie Productions Ltd." *Id.* at PageID.895.

In addition to these alleged "toxic" investments, Plaintiff alleges Brown "pumped" the

---

[4] Plaintiff is not the only entity to allege GPL's misconduct. In 2023, GPL entered into a $39,000,000 settlement to voluntarily dismiss the SEC's complaint in the Southern District of New York which alleged GPL officers "acted as unregistered securities dealers by privately acquiring numerous . . . stocks at a discount and subsequently publicly selling the securities to the investing public" and further alleged GPL "orchestrat[ed] a fraudulent scheme" to acquire shares in another company and "secretly arranged" for that company to use a percentage of the stock proceeds "to fund promotions while [GPL] sold their shares into the market." *GPL Ventures LLC, GPL Management LLC, Alexander J. Dillon, and Cosmin I. Panait*, U.S. SEC. AND EXCH. COMM'N (May 3, 2023), https://www.sec.gov/litigation/litreleases/lr-25706 [https://perma.cc/C59Z-HV6Y]; *see also Sec. & Exch. Comm'n v. GPL Ventures LLC*, 2022 WL 158885, at *2 (S.D.N.Y. Jan. 18, 2022) ("[T]he GPL Defendants have been privately acquiring large blocks of discounted shares of stock in approximately 140 microcap issuers and publicly selling those blocks into the market for their own account, generating gross proceeds of at least $81 million.").

price of HPIL stock by making and disseminating numerous false statements about nonexistent HPIL partners and products. ECF No. 4 at PageID.734. Specifically, Plaintiff's Complaint alleges Brown caused or made the following false and fraudulent statements:

(1) On May 5, 2021, HPIL announced it signed a partnership agreement with Origin Protocol to mint NFTs, when no such agreement was signed. ECF No. 4 at PageID.735; *see also* Origin Protocol, *Origin Protocol Twitter Spaces AMA – July 6th 2021*, YOUTUBE, 39:51–41:03 (July 15, 2021), https://www.youtube.com/watch?v=lAek4D6EMK0&t=2385s ("We had a few people ask us if we have a partnership with a company called 'HPIL Holding.' It seems they've been putting out a lot of press releases saying that they're partnered with us. . . . We regularly get press releases coming out from them saying that there's a new partnership with Origin . . . I believe we have spoken to them but we definitely have not signed an official partnership with them or anything at the moment.").

(2) On July 22, 2021 HPIL announced it was launching a "'revolutionary new gaming platform' which w[ould] have worldwide reach [and] cash prizes," when there was no evidence such platform was in development, let alone commercially available. ECF No. 4 at PageID.735.

(3) On July 23, 2021, HPIL issued a public press release claiming that "'Medusa Intelligence,' which Brown claimed was a division of HPIL[,] would be launching new 'Meta Data Analytics' software which would use artificial intelligence to revolutionize the entertainment industry, change the internet, and even human thought process" when there was no evidence such software was in development. *Id.*

(4) On September 28, 2021, HPIL announced it sold one of its divisions to Stargaze Entertainment Group, Inc. and that HPIL shareholders would receive corresponding shares. *Id.* But, despite publicly reporting on October 18 that the sale had closed, no HPIL shareholders ever received Stargaze shares. *Id.* at PageID.735–36.

(5) Brown reported in a public press release and on a conference call with investors that he and "trusted investors" would participate in a buyback program on September 17, 2021 in which HPIL shareholders could sell their shares at market value. *Id.* at PageID.736; *see also* Senator Cicero, *HPIL Clip: Large Share Buy Back and No Reverse Split*, YOUTUBE, 0:24–1:18 (Aug. 7, 2021) https://www.youtube.com/watch?v=h-SNCXaV__g ("So the share buyback is pretty simple. It's like you and I sitting in my office and you say 'I wanna sell you my shares' and I say 'I wanna buy them' and I give you the money. So here's how

its gonna work. Ok. On August 17th,[5] I'm gonna put on the line a buyback proposal and it'll be for a certain price whether I'm buying it or whether . . . a group of investors close to me, that I trust, will buy it. . . . It's gonna be a fair price based upon the market at that time."). But Plaintiff alleges the buyback never occurred. ECF No. 4 at PageID.736.

(6) On March 24, 2022, HPIL "touted new video games, new technology, and new intellectual property," "none of which came to fruition." *Id.*

(7) On June 15, 2021, HPIL announced Apogee Dynamics, Ltd. as a new company that would manufacture self-charging electric automobiles, and subsequently announced ten partners who would help manufacture the "Apogee Automobile." *Id.* at PageID.736–37. But Plaintiff alleges HPIL lacked access to this technology and never produced evidence of the Apogee Automobile's development. *Id.* at PageID.737, 739–40.

(8) On September 27, 2021, Brown noted on a Form 8-K filed with the SEC that HPIL secured a $10,000,000 line of credit to build an Auto Robotics center in Kent, Washington despite "no evidence . . . that this line of credit was secured" and no evidence that this center was ever "in the works." *Id.* at PageID.737.

(9) "Brown made consistently false statements to shareholders and investors" that HPIL retained various accounting firms to perform compliance audits when no firms were ever retained. *Id.*

(10) "Brown, on numerous occasions, falsely claimed in shareholder . . . conferences and in other media that the only money that was ever put into HPIL came from his personal funds and that there were no outside sources of funding obtained" despite records reflecting the contrary—that HPIL received loans and funding from numerous other businesses. *Id.* at PageID.738 ("Brown entered into two agreements with Actus Fund, LLC, another toxic lender, to loan HPIL $1,300,000.00 via two . . . convertible loan agreements."); *see also* ECF Nos. 4-5; 4-6; 4-7; 4-8.

Plaintiff's Complaint is heavy on the "pump" but light on the "dump." Despite alleging these specific fraudulent statements artificially inflated the value of HPIL stock and induced investments, it is unclear from Plaintiff's Complaint *how* Brown or the other Defendants profited

---

[5] Plaintiff alleges the buyback was scheduled on September 17, 2021 but, in the YouTube video cited by Plaintiff, Brown states the buyback was scheduled for August 17, 2021. *Compare* ECF No. 4 at PageID.736 *with* Senator Cicero, *HPIL Clip: Large Share Buy Back and No Reverse Split*, YOUTUBE, 0:24–1:18 (Aug. 7, 2021) https://www.youtube.com/watch?v=h-SNCXaV__g.

from this alleged fraudulent scheme or otherwise "dumped" their inflated shares. Instead, Plaintiff broadly alleges that "Brown, with the assistance of Postula," distributed HPIL funds to themselves and Brown's other private Canadian companies—Crank, BFI, and Criteria. ECF No. 4 at PageID.729, 740–41. And Plaintiff alleges, specifically, that Brown caused HPIL to loan Crank $808,500 on November 1, 2021. *Id.* at PageID.741.

As to the remaining Defendants, Plaintiff broadly alleges that Osborne and Badger "ha[ve] been assisting Brown in schemes to raise funds to replace HPIL with another shell company to raid" and that Christopherson "is actively participating in fraudulent activities." ECF No. 4 at PageID.725. Plaintiff alleges that Badger, Osborne, and Christopherson (1) "have received shares in HPIL, Crank, and Criteria . . . for the assistance that they provided Brown[;]" (2) "would pass out shares of HPIL, Crank, and Criteria to individuals in exchange for investments and assistance in pumping up Brown's business ideas and monitoring online activities which would negatively affect their schemes[;]" and (3) "have been touting Criteria as the next part of Brown's plans[.]" *Id.* at PageID.745. Plaintiff also alleges Badger and Osborne "hired a Michigan attorney to send . . . 'cease and desist' letters threatening various individuals whom they accused of publishing 'defamatory and disparaging' statements [about] Brown, themselves, and" other affiliated companies. *Id.*

### D. Procedural Posture

On these facts, Plaintiff sued (1) Haining Zhang; (2) Stephen Brown; (3) Angela Collette; (4) Andrew Badger; (5) Mark Osborne; (6) David Postula; (7) Darcy Christopherson; (8) Crank Media, Inc. ("Crank"); (9) Brown Family Investments, LTD ("BFI"); and (10) Criteria Management, LTD ("Criteria") in August 2023. ECF No. 1. But, on January 29, 2024, this Court dismissed Defendants Brown, Postula, Crank, BFI, and Criteria because Plaintiff did not serve

them.[6] ECF No. 24. Thus, the only remaining Defendants are (1) Zhang; (2) Collette; (3) Badger;

(4) Osborne; and (5) Christopherson. Plaintiff's Complaint[7] alleges the following:

| Count | Allegation | Defendants |
|---|---|---|
| I | Malicious Prosecution, MICH. COMP. LAWS § 600.2907 | Zhang and Collette |
| II | Abuse of Process (Michigan Law) | Zhang and Collette |
| III | Abuse of Process (Nevada Law) | Zhang and Collette |
| IV | Breach of Corporate Duties, MICH. COMP. LAWS § 450.1541a | Zhang and Collette |
| V | Conversion / Embezzlement, MICH. COMP. LAWS § 600.2919a | Zhang and Collette |
| VI | Breach of Fiduciary Duties / Self-Dealing | Zhang and Collette |
| VII | Civil Conspiracy | Zhang and Collette |
| IX | Civil Conspiracy | Badger, Osborne, Christopherson |
| X | RICO, 18 U.S.C. § 1962(c) | Zhang and Collette |
| XI | RICO, 18 U.S.C. § 1962(c) | Badger, Osborne, Christopherson |
| XIII | Declaratory Relief | Zhang, Collette, Badger, Osborne, Christopherson |
| XIV | Injunctive Relief | Zhang, Collette, Badger, Osborne, Christopherson |
| XV | Disgorgement | Zhang, Collette, Badger, Osborne, Christopherson |

*See generally* ECF No. 4.

On October 20, 2023, Defendants Badger, Darcy, and Christopherson filed a joint motion

to dismiss for failure to state a claim under Civil Rule 12(b)(6) and failure to plead fraud with

---

[6] After this Court dismissed these "Canadian Defendants," Plaintiff filed a companion case against them. *See HPIL Holding, Inc. v. Brown*, 24-cv-10479 (E.D. Mich. 2024). Plaintiff noted it will seek to consolidate the two cases once the Canadian Defendants are served in the companion case. ECF No. 27 at PageID.1624. Yet, despite representing that the Canadian Defendants in the companion case would be served on April 18, 2024, *id.* at PageID.1617, 1624, no proof of service has been filed.

[7] Notably, Plaintiff violated Civil Rule 15(a) by filing *two* amended complaints as a matter of course, without seeking Defendants' consent or leave of the court. *See* ECF Nos. 1; 3; 4; *see also* FED. R. CIV. P. 15(a) (allowing a party to amend its pleading *once* as a matter of course within 21 days after service but otherwise requiring consent of opposing counsel or leave of court). However, most pleadings reference Plaintiff's Second Amended Complaint and it largely mirrors the first, so it will not be stricken.

particularity under Civil Rule 9(b). ECF No. 5. And although Defendants Collette and Zhang filed separate *pro se* motions to dismiss, both can be considered in tandem and argue (1) Plaintiff's Complaint is barred by *res judicata* and fails to state a claim under Civil Rule 12(b)(6); and (2) Plaintiff's Complaint should be dismissed for improper service under Civil Rule 12(b)(5). *See* ECF Nos. 10; 17. Each motion will be addressed in turn.

## II. Applicable Law

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court accepts all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). If exhibits are attached to the complaint, courts may consider such exhibits when "resolving [a] Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

## III. Badger, Osborne, and Christopherson's Joint Motion to Dismiss

Defendants Badger, Osborne, and Christopherson are only named in two counts, aside from the overarching declaratory and injunctive relief counts at the end of Plaintiff's Complaint. *See*

ECF No. 4. These Defendants argue each count asserted against them should be dismissed for different reasons. *See generally* ECF No. 5.

### A. Count IX: Civil Conspiracy

Beginning with Count IX, Plaintiff alleges Badger, Osborne, and Collette—alongside dismissed Defendants Crank, BFI, and Criteria—"acted in concert to use" the "fraudulent acts, misrepresentations, extortion, [and] embezzlement" described elsewhere in the Complaint "to procure money using HPIL for their own personal use." ECF No. 4 at PageID.758. Plaintiff further alleges "[t]his conspiracy deprived HPIL and its shareholders of property, equity, business opportunities, and creditworthiness resulting in extensive financial loss to HPIL." *Id.*

Badger, Osborne, and Collette contend this Count should be dismissed for failure to state a claim because (1) Plaintiff has not pleaded a separately viable tort claim and, (2) Plaintiff's has not pleaded these Defendants entered into an "agreement" or a "preconceived plan" to act unlawfully. ECF No. 5 at PageID.1133–34. For the reasons discussed below, Count IX will be dismissed.

Under applicable Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Jackson v. Southfield Neighborhood Revitalization Initiative*, No. 361397, 2023 WL 6164992, at *21 (Mich. Ct. App. Sept. 21, 2023); *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003), *aff'd*, 693 N.W.2d 358 (Mich. 2005); *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). But civil conspiracy does not exist in a vacuum. Michigan Courts have routinely recognized that, to maintain a viable conspiracy claim, "it is it is necessary to prove a separate, actionable tort." *See, e.g.*, *Jackson*, 2023 WL 6164992, at *21; *Advoc. Org.*

*for Patients & Providers*, 670 N.W.2d at 580; *Admiral Ins. Co.*, 486 N.W.2d at 358; *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986) (noting civil conspiracy "may not exist in the air" and "since plaintiffs . . . failed to state any actionable tort theories in their . . . amended complaint, the[ir] conspiracy [claim] must also fail."); *Swain v. Morse*, 957 N.W.2d 396, 409, n. 13 (Mich. Ct. App. 2020); *Mercurio v. Huntington Nat'l Bank*, No. 361855, 2023 WL 4981374, at *10 (Mich. Ct. App. Aug. 3, 2023*); Mapson v. Farmers Ins. Exch.*, No. 361240, 2023 WL 5986140, at *6 (Mich. Ct. App. Sept. 14, 2023); *see also Courser v. Allard*, 969 F.3d 604, 620 (6th Cir. 2020); *Shecter Landscaping, Inc. v. JPMorgan Chase Bank NA*, 614 F. Supp. 3d 553, 560 (E.D. Mich. 2022) ("[U]nder Michigan law, a civil conspiracy claim must be coupled with an actionable tort.").

Here, Plaintiff has not pleaded a separate tort claim against Defendants Badger, Osborne, and Christopherson, let alone an actionable one. The *only* other claim Plaintiff pleaded against these Defendants arises under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964. ECF No. 4 at PageID.760–61. But this claim is rooted in a federal statute, not a state tort. Although Plaintiff pleaded separate torts of malicious prosecution, abuse of process, and "conversion / embezzlement," these claims were only asserted against *Zhang* and *Collette*. *Id.* at PageID.748–53, 755. And even if Plaintiff's Complaint could be stretched to plausibly plead Badger, Osborne, and Christopherson committed these torts, too,[8] such elasticity would still not cover the fatal flaw of Plaintiff's conspiracy claim: the lack of any alleged agreement or plan.

---

[8] In response to the argument that Plaintiff did not plead a separate tort against Badger, Osborne, and Christopherson, Plaintiff argues that "the pleadings are sufficient to appraise Badger, Osborne, and Christopherson of the torts underlying their conspiracy." ECF No. 7 at PageID.1153. But this "they know what they did" argument is unpersuasive and contradicts the fundamental purpose of pleading requirements. Plaintiff then latches onto the specific tort of embezzlement and argues, confusingly and without citation, "embezzlement is the misappropriation of funds or property taken from their rightful owner. If funds were raised or procured by HPIL, they become corporate

A plaintiff alleging a civil conspiracy has the burden of proving that defendants entered into an "agreement or preconceived plan[] to do the unlawful act" alleged. *Temborius v. Slatkin*, 403 N.W.2d 821, 828 (Mich. Ct. App. 1986); *see also Wrobbel v. Hydaker-Wheatlake Co*., No. 305535, 2014 WL 310198, at *5 (Mich. Ct. App. Jan. 28, 2014). Although a plaintiff need not present *direct* proof of a plan nor a *formal* agreement, "the circumstances, acts and conduct of the parties" must "establish an agreement in fact[,]" even if only through inferences or circumstantial evidence. *Temborius*, 403 N.W.2d at 828; *Wrobbel*, 2014 WL 310198, at *5 ("The burden of proof is on the plaintiff to provide evidence from which a jury could reasonable infer the concurrence or agreement of two or more individuals to jointly engage in the unlawful purpose.").

Here, the factual allegations within Plaintiff's Complaint, even when viewed in a light most favorable to Plaintiff, do not plausibly establish—even through inference—that Defendants Badger, Osborne, and Christopherson agreed or planned to do *anything*, let alone anything unlawful. True, in Count IX, Plaintiff broadly cites the first 173 paragraphs of its Complaint and alleges that the three Defendants "acted in concert" to use the "fraudulent acts, misrepresentations, extortion [and] embezzlement described" therein to put HPIL money to their personal use. ECF No. 4 at PageID.758. But Plaintiff's conclusory allegation is wholly unsupported.

Indeed, throughout the *entirety* of Plaintiff's 400-page Complaint, there are only ten factual allegations asserted against Badger, Osborne, and Christopherson:

---

property and not for the division to entities or individuals based upon agreement." *Id.* at PageID.1154. But Plaintiff does not plausibly allege that Badger, Osborne, or Christopherson did *anything* to misappropriate or deprive HPIL funds. *See generally* ECF No. 4. Moreover, embezzlement under Michigan law requires the alleged tortfeasor to be an "agent, servant, or employee" of the person or entity whose property is deprived. ECF No. 14 at PageID.1455 (citing MICH. COMP. LAWS § 750.174 and *People v. Couzens*, 747 N.W.2d 849, 852 (Mich. Ct. App. 2008). Plaintiff's Complaint does not allege that Badger, Osborne, or Christopherson were HPIL's agents, servants, or employees. *See generally* ECF No. 4.

(1) Badger and Osborne "funded . . . Brown's participation in the Midland County lawsuit[.]" ECF No. 4 at PageID.725, 744.

(2) Badger and Osborne "ha[ve] been assisting" Brown in fundraising to replace HPIL with another company. *Id.* at PageID.725.

(3) "Badger and Osborne hired a Michigan attorney to send out 'cease and desist' letters threatening various individuals whom they accused of publishing 'defamatory and disparaging' statements Brown, themselves, and any companies affiliated with Brown." *Id.* at PageID.745.

(4) Badger and Osborne "defended Brown" throughout phone calls and referred to themselves as Brown's "point men." *Id.* at PageID.745.

(5) Christopherson sent Zhang and Collette the following text on November 29, 2022, during the Midland County receivership proceedings:

> Good Morning Harry & Angela, [the intervening shareholders' attorney] will probably ask some trick questions tomorrow. I'm not asking you to lie, my guess is one of his questions will most likely be: 'were you paid for the HPIL shell as stated in the contract between Stephen Brown and you two?' I'm not telling you what to do but I would say 'we made a verbal agreement after the contract was signed'. [The intervening shareholders' attorney] will create a shit storm of bullshit you guys know that[.][9]

ECF No. 4-18 at PageID.970; *see also* ECF No. 4 at PageID.745–46;

(6) Badger, Osborne, and Christopherson have "used" Criteria—one of Stephen Brown's Canadian companies—for "various fundraising activities[.]" ECF No. 4 at PageID.726.

(7) Badger, Osborne, and Christopherson "worked" with Brown to "communicate with parties on his behalf" and allegedly made unidentified "false statements supporting" Brown and his businesses. *Id.* at PageID.744.

(8) Badger, Osborne, and Christopherson provided brown general "assistance" and "received HPIL shares" in return. *Id.* at PageID.745.

(9) Badger, Osborne, and Christopherson sold HPIL, Crank, and Criteria shares to unidentified individuals "in exchange for investments and assistance in [promoting] Brown's business ideas and monitoring online activities[.]" *Id.*

(10) Badger, Osborne, and Christopherson "have been touting Criteria as the next part of Brown's plan to create the next generation of millionaires by investing their money with him." *Id.*

But these ten factual allegations do not suggest that Badger, Osborne, and Christopherson

*agreed to* or *planned* the alleged "pump and dump" scheme Plaintiff alleges Brown and his

---

[9] Elsewhere in its Complaint, Plaintiff avers that this text is evidence of an "indictable felony." ECF No. 4 at PageID.761 (citing MICH. COMP. LAWS §§ 750.423, 750.425). Notably, Plaintiff's Complaint does not describe what stake Christopherson had in the Midland receivership proceedings. Why Christopherson sent this text, and whether Zhang and Collette did anything in response, remains unclear.

companies perpetrated. Plaintiff's *general* allegations that these Defendants worked with, fundraised for, or assisted Brown and his companies are insufficient, and Plaintiff's *specific* factual allegations are inapposite. How does the funding provided by Badger and Osborne for Brown's involvement in the Midland receivership proceedings demonstrate an agreement between the three that Brown would—as alleged by Plaintiff—go on to make false statements to "pump" HPIL stock and use the inflated price to benefit Brown's other companies? Plaintiff does not say. How does sending letters to unidentified third parties asking them to cease and desist from defaming Brown relate to or otherwise suggest an agreement to be a part of the alleged "pump and dump" conspiracy at issue here? Plaintiff does not say. How does speaking highly of Brown evidence that Badger, Osborne, and Christopherson agreed to his alleged unlawful conduct? Plaintiff does not say. True, it is quite clear from Plaintiff's Complaint that Badger, Osborne, and Christopherson—HPIL shareholders—worked in the same circles as Brown, HPIL's appointed CEO. But this is not enough to plausibly plead they planned the alleged "pump and dump" scheme with Brown, or otherwise agreed to it.

In sum, because Plaintiff did not plead a separate, actionable tort against Badger, Osborne, and Christopherson, its civil conspiracy claim against these Defendants cannot lie. And even if it could, Plaintiff's Complaint—even when viewed in a light most favorable to Plaintiff—does not plausibly plead that these Defendants agreed to or planned the "pump and dump" scheme Plaintiff alleges Brown and his companies—no longer Defendants in this case—perpetrated. Thus, Count IX will be dismissed.

### B. Count XI: RICO

In Count XI, Plaintiff alleges Badger, Osborne, and Christopherson engaged in unlawful racketeering activity, in violation of the RICO Act, 18 U.S.C. § 1962(c). ECF No. 4 at PageID.760–

62. Badger, Osborne, and Christopherson argue Count XI should be dismissed because Plaintiff did not sufficiently plead the requirements of a RICO claim, in part because Plaintiff did not plead the alleged predicate racketeering activity—wire fraud—with particularity as required by Civil Rule 9. ECF No. 5 at PageID.1135. Count XI will be dismissed because Plaintiff did not plausibly plead Badger, Osborne, and Christopherson formed an "enterprise" for RICO purposes and, even if they did, Plaintiff did not plead their alleged racketeering activity with particularity.

## 1.

Congress enacted RICO provisions as part of the Organized Crime Control Act of 1970. CHARLES DOYLE, CONG. RSCH. SERV., 96-950, RICO: A BRIEF SKETCH 1 (last updated Aug. 3, 2021). At its core, "RICO builds on other crimes. It enlarges the civil and criminal consequences of the patterned commission of other" predicate state or federal offenses. *Id.* Despite the Organized Crime Control Act's robust criminal liability scheme, *see* 18 U.S.C. § 1963, RICO provisions provide a civil right of action for "[a]ny person injured in his business or property by" another's unlawful racketeering activity. 18 U.S.C. § 1964(c).

To state a valid private RICO claim, a plaintiff must plead (1) a defendant's violation of 18 U.S.C. § 1962 which (2) caused (3) injury to the plaintiff's business or property. *In re M.T.G., Inc.*, 646 B.R. 1, 227 (Bankr. E.D. Mich. 2022); *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484 (6th Cir. 2013). Here, causation and injury need not be addressed because Plaintiff has not plausibly pleaded that Badger, Osborne, and Christopherson violated 18 U.S.C. § 1962.

## 2.

To plead a defendant's violation of 18 U.S.C. § 1962, "a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern . . . of racketeering activity.'" *In*

*re ClassicStar Mare Lease Litig.*, 727 F.3d at 483 (6th Cir. 2013) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir.2006))). Each element will be addressed in turn.

**a.**

"The Supreme Court has held that to 'conduct' the affairs of an enterprise under RICO means to 'lead, run, manage, or direct' those affairs." *Compound Prop. Mgmt., LLC v. Build Realty, Inc*., 462 F. Supp. 3d 839, 855 (S.D. Ohio 2020) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 177–79 (1993)). And the Sixth Circuit has clarified that "directing" includes "making decisions on behalf of the enterprise or knowingly carrying them out." *Ouwinga v. Benistar 419 Plan Servs., Inc*., 694 F.3d 783, 792 (6th Cir. 2012) (citing *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008)). At bottom, while "RICO liability is not limited to those with a *formal* position in the enterprise" or those with the "*primary* responsibility" for the enterprise's affairs, a liable individual must have at least "*some* part in directing the enterprise's affairs[.]" *Reves*, 507 U.S. at 179 (emphasis added); *see also Fowler,* 535 F.3d 408, 419 (6th Cir. 2008) (noting Congressional intent to "reach *all* who participate in the conduct of [the] enterprise, whether they are generals or foot soldiers." (quoting *United States v. Oreto*, 37 F.3d 739, 751 (1st Cir. 1994)) (emphasis added)).

Plaintiff's RICO claims against Badger, Osborne, and Christopherson survive this first step. Although unlikely primarily responsible, Plaintiff has sufficiently pleaded these Defendants played, at least, "some part" in Brown's affairs—and the affairs of his Canadian companies— Crank, Criteria, and BFI. Plaintiff alleges that Badger and Osborne publicly represented themselves as Brown's "point men." ECF No. 4 at PageID.745. Plaintiff alleges Badger, Osborne, and Christopherson "used" Criteria for "various fundraising activities" and to "mov[e] funds out of and around HPIL." ECF No. 4 at PageID.726. Plaintiff alleges Badger and Osborne funded

Brown's participation in the Midland receivership proceedings, throughout which Brown was seeking to maintain his position as HPIL CEO. ECF No. 4 at PageID.725, 744. Plaintiff alleges Badger, Osborne, and Christopherson were used by Brown "to solicit funds" from third parties and that these three Defendants "communicated with [third] parties on [Brown's] behalf[.]" *Id.* Plaintiff also alleges that these Defendants worked with Brown to "pass out shares of HPIL, Crank, and Criteria to" unidentified "individuals in exchange for investments and assistance in pumping up Brown's business ideas and monitoring online activities which could negatively affect their schemes." *Id.* at PageID.745. These factual allegations, assumed true under Rule 12(b)(6), plausibly portray Badger, Osborne, and Christopherson as Brown's "foot soldiers"—precisely the group of individuals Congress sought to hold liable for participating in an enterprise's patterns of racketeering conduct.

### b.

The next issue is whether Plaintiff has plausibly pleaded that Badger, Osborne, and Christopherson were a part of an "enterprise" for the purposes of RICO liability. ECF No. 4 at PageID.760. This Court, the Sixth Circuit, and the Supreme Court all agree that RICO "enterprises" are to be defined broadly. *See, e.g.*, *Boyle v. United States*, 556 U.S. 938, 944 (2009); *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir. 2012); *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 879 (E.D. Mich. 2019). A RICO "enterprise" is defined by statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Picking up on the latter portion of this provision, Plaintiff alleges that "Badger, Osborne, [and] Christopherson"—along with dismissed defendants—"form an association-in-fact" for RICO purposes. ECF No. 4 at PageID.760.

But a "RICO association-in-fact 'must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associations to pursue the enterprise's purpose.'" *Gamboa*, 381 F. Supp. 3d at 879 (quoting *Boyle*, 556 U.S. at 946). Similar to the flaw in Plaintiff's civil conspiracy claim, Plaintiffs Complaint does not sufficiently allege that Badger, Osborne, and Christopherson shared a common purpose with Brown and his Canadian companies. *See infra* Section III.A. Paragraph 189 of Plaintiff's Complaint broadly alleges Badger, Osborne, and Christopherson—along with Brown and his companies—form an association-in-fact "for the common and continuing purpose described herein[.]" But nothing in the first 188 paragraphs plausibly describes a common purpose. True, Plaintiff pleads facts which plausibly support its allegation that *Brown and his Canadian companies*—no longer Defendants in this lawsuit—shared a common purpose to defraud HPIL. ECF No. 4 at PageID.733–40 (describing alleged "pump and dump" scheme and listing Brown's specific false statements). But Plaintiff's Complaint does not plausibly suggest *Badger, Osborne, and Christopherson* shared this purpose. On the contrary, Plaintiff's Complaint shows only that Badger, Osborne, and Christopherson generally knew Brown and worked with him and his companies in various—vague and seemingly unrelated—capacities. *See* ECF No.4 at PageID.725–45 (broadly alleging these Defendants "assisted" Brown, helped him fundraise, "defended" him in public; and alleging that Badger and Osborne financed his intervention in the Midland receivership proceedings and sent unrelated cease and desist letters to unidentified third parties).

Because Plaintiff has not pleaded sufficient facts to show that Badger, Osborne, and Christopherson, were a part of an "enterprise" for RICO purposes, it has not plausibly pleaded that these Defendants violated 18 U.S.C. § 1962. Therefore, its RICO claim against these Defendants will be dismissed.

**c.**

Even if Plaintiff had plausibly pleaded Badger, Osborne, and Christopherson participated in a RICO "enterprise," its RICO claim against these Defendants would still be subject to dismissal because Plaintiff has not plausibly alleged these Defendants participated in a pattern of racketeering activity. To show defendants engaged in a "pattern of racketeering activity" under 18 U.S.C. § 1962(c), a plaintiff must show (1) at a minimum two instances of racketeering activity within ten years of each other; (2) that the racketeering predicates are related; and (3) that the racketeering predicates pose a threat of continued criminal activity. *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 795 (6th Cir. 2012) (citing 18 U.S.C. § 1961(5) and *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989)).

Racketeering activity refers to:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . ;
(B) any act which is indictable pursuant to over fifty different sections of Chapter 18 of the United States Code;[10]

---

[10] The applicable predicates include: 18 U.S.C. § 201 (relating to bribery), 18 U.S.C. § 224 (relating to sports bribery),18 U.S.C. §§ 471, 472, and 473 (relating to counterfeiting),18 U.S.C. § 659 (relating to theft from interstate shipment), so long as the indictable act is felonious, 18 U.S.C. § 664 (relating to embezzlement from pension and welfare funds), 18 U.S.C. §§ 891–894 (relating to extortionate credit transactions),18 U.S.C. § 932 (relating to straw purchasing), 18 U.S.C. § 933 (relating to trafficking in firearms), 18 U.S.C. § 1028 (relating to fraud and related activity in connection with identification documents), 18 U.S.C. § 1029 (relating to fraud and related activity in connection with access devices), 18 U.S.C. 1084 (relating to the transmission of gambling information), 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), 18 U.S.C. § 1344 (relating to financial institution fraud), 18 U.S.C. § 1351 (relating to fraud in foreign labor contracting), 18 U.S.C. § 1425 (relating to the procurement of citizenship or nationalization unlawfully), 18 U.S.C. § 1426 (relating to the reproduction of naturalization or citizenship papers), 18 U.S.C. § 1427 (relating to the sale of naturalization or citizenship papers), 18 U.S.C. §§ 1461–1465 (relating to obscene matter), 18 U.S.C. § 1503 (relating to obstruction of justice), 18 U.S.C. § 1510 (relating to obstruction of criminal investigations), 18 U.S.C. § 1511 (relating to the obstruction of State or local law enforcement), 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant), 18 U.S.C. § 1513 (relating to retaliating against a witness, victim, or an informant), 18 U.S.C. § 1542 (relating to false statement in application and

(C) any act indictable under 29 U.S.C. § 186 (dealing with restrictions on payments and loans to labor organizations) or 29 U.S.C. § 501(c) (relating to embezzlement from union funds),

(D) any offense involving fraud connected with a case under title 11 (except a case under 11 U.S.C. § 157), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in Section 102 of the Controlled Substances Act);

(E) any act indictable under the Currency and Foreign Transactions Reporting Act,;

(F) various acts indictable under the Immigration and Nationality Act;

(G) any act indictable under any provision listed in 18 U.S.C. § 2332b(g)(5)(B) (relating to international terrorism).

*See* 18 U.S.C. § 1961(1).

Alleged racketeering predicates are sufficiently "related" when they are more than "isolated events" or have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." *H.J. Inc.*, 429 U.S. at

---

use of passport), 18 U.S.C. § 1543 (relating to forgery or false use of passport), 18 U.S.C. § 1544 (relating to misuse of passport), 18 U.S.C. § 1546 (relating to fraud and misuse of visas, permits, and other documents), 18 U.S.C. §§ 1581–1592 (relating to peonage, slavery, and trafficking in persons), 18 U.S.C. §§ 1831 and 1832 (relating to economic espionage and theft of trade secrets), 18 U.S.C. § 1951 (relating to interference with commerce, robbery, or extortion), 18 U.S.C. § 1952 (relating to racketeering), 18 U.S.C. § 1953 (relating to interstate transportation of wagering paraphernalia), 18 U.S.C. § 1954 (relating to unlawful welfare fund payments), 18 U.S.C. § 1955 (relating to the prohibition of illegal gambling businesses), 18 U.S.C. § 1956 (relating to the laundering of monetary instruments), 18 U.S.C. § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), 18 U.S.C. § 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), 18 U.S.C. § 1960 (relating to illegal money transmitters), 18 U.S.C. §§ 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), 18 U.S.C. §§ 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), 18 U.S.C. §§ 2314 and 2315 (relating to interstate transportation of stolen property), 18 U.S.C. § 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), 18 U.S.C. § 2319 (relating to criminal infringement of a copyright), 18 U.S.C. § 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), 18 U.S.C. § 2320 (relating to trafficking in goods or services bearing counterfeit marks), 18 U.S.C. § 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), 18 U.S.C. §§ 2341–2346 (relating to trafficking in contraband cigarettes), 18 U.S.C. §§ 2421–24 (relating to white slave traffic), 18 U.S.C. §§ 175–178 (relating to biological weapons), 18 U.S.C. §§ 229–229F (relating to chemical weapons), 18 U.S.C. § 831 (relating to nuclear materials). 18 U.S.C. § 1961(1)(B).

240. Notably, if an individual defendant is alleged to have participated in multiple racketeering predicates, that defendant's acts are not required to be interrelated with each other; so long as each is still related to the "affairs and operations of the criminal enterprise." *United States v. Fowler*, 535 F.3d 408, 420 (6th Cir. 2008). Racketeering predicates pose a sufficient threat of continued criminal activity when "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *H.J. Inc.*, 429 U.S. at 242–43.

Here, Plaintiff alleges Badger, Osborne, and Christopherson engaged in racketeering activity by participating in wire fraud, indictable under 18 U.S.C. § 1343. ECF No. 4 at PageID.761; *see also* 18 U.S.C. § 1961(1)(B). But Plaintiff's Complaint lacks any factual allegation to support this conclusive claim. In the criminal context, "[t]o convict a defendant of wire fraud" under 18 U.S.C. § 1343, "the government must prove '(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property.'" *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (citing *United States v. Prince*, 214 F.3d 740, 747–48 (6th Cir.2000)). Further, as part of its proof of a scheme to defraud, the government must prove that the defendant "said something *materially* false." *Id.* at 486 (emphasis in the original). But Plaintiff's Complaint does not plausibly plead any of these elements as to Badger, Osborne, or Christopherson. True, Plaintiff alleges a plethora of alleged materially false statements were made by interstate wire communications to defraud HPIL and its investors. *See* ECF No. 4 at PageID.734–37. But *none* of these statements are plausibly attributable to Badger, Osborne, or Christopherson. Instead, Plaintiff alleges *each* of these alleged false statements were "made" or "caused" by Brown, who is no longer a Defendant. *Id.*

Aside from Brown's ten specifically alleged materially false and fraudulent statements Plaintiff only alleges that Badger, Osborne, and Christopherson "defended Brown" over the phone,

"communicate[d] . . . on [Brown's] behalf" to unidentified third parties, and generally "tout[ed]" one of Brown's companies as a promising new investment opportunity. ECF No. 4 at PageID.744–45. But these allegations fall far short of Civil Rule 9(b)' requirement that fraud be pleaded with particularity.[11] *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999) (applying Rule 9's heightened

---

[11] Plaintiff argues in response to Badger, Osborne, and Christopherson's joint Motion to dismiss that it can "amend its pleadings" to add the specificity required by Rule 9:

> For example, HPIL can plead that on September 28, 2022, and other numerous and specific dates, Badger made false statements on a public forum crossing state lines touting a fake fuel cell for the purpose of obtaining property and money through false pretenses in support of a criminal enterprise. HPIL can plead that on numerous and specific dates, Christopherson made false statements on a public forum crossing state lines pertaining to funding HPIL was to receive and touting false assets for the purpose of obtaining property and money through false pretenses in support of a criminal enterprise. HPIL can plead that on November 28, 2021 and other numerous and specific dates, Osborne made false statements on a public forum crossing state lines pertaining to false technologies that HPIL had for the purpose of obtaining property and money through false pretenses in support of a criminal enterprise

ECF No. 7 at PageID.1157. But even if these additional allegations—not included in Plaintiff's initial, first amended, or second amendment complaint—were considered, Plaintiff's RICO claim against Badger, Osborne, and Christopherson would still be dismissed. These additional allegations do not cure Plaintiff's failure to plead an "enterprise"—a necessary element to make out a violation of 18 U.S.C. § 1962(c). And even if Plaintiff plausibly plead a violation of § 1962(c), Plaintiff has still not sufficiently alleged causation—the *second* element necessary for its RICO claim—because the Sixth Circuit has interpreted this element as requiring a plaintiff to prove its *reliance* on the alleged materially false statement, which is also subject to Rule 9(b)'s particularity requirement. *In re Reciprocal of Am. (ROA) Sales Pracs. Litig.*, No. CIV. A. 04-2078, 2007 WL 2900286, at \*7 (W.D. Tenn. Sept. 28, 2007) (collecting cases) ("[T]his [C]ircuit requires that a civil RICO plaintiff alleging mail or wire fraud plead reliance, that is, that a defendant made fraudulent misrepresentations to the plaintiff on which the plaintiff relied."); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987) ("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on *and* the facts showing the plaintiff's reliance on defendant's false statement of fact." (emphasis added)). How did Plaintiff rely on Badger's "fake fuel cell" statements, Christopherson's "funding" claims, or Osborne's "false technologies" claims? Plaintiff, again, does not say, let alone with the particularity required by Rule 9.

pleading requirement to plaintiff's claim that wire fraud was a defendant's predicate racketeering activity for RICO purposes); *In re Reciprocal of Am. (ROA) Sales Pracs. Litig.*, No. CIV. A. 04-2078, 2007 WL 2900286, at \*6 (W.D. Tenn. Sept. 28, 2007) (same); *Dzurka Bros., LLC v. Luckey Farmers, Inc.*, No. 1:23-CV-11038, 2024 WL 268140, at \*11 (E.D. Mich. Jan. 24, 2024) (explaining Rule 9 requires plaintiffs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" and dismissing fraud claim when Plaintiff's complaint did not identify any specific allegedly-fraudulent statement).

In sum, Plaintiff has not plausibly pleaded that Badger, Osborne, and Christopherson violated of 18 U.S.C. § 1962 because it has not shown these Defendants acted as a RICO enterprise and because it has not shown these Defendants participated in a pattern of racketeering activity. Accordingly, Plaintiff's RICO claim against these Defendants—Count XI—will be dismissed.

### C. Counts XIII–XV: Declaratory & Injunctive Relief

In Counts XIII through XV, Plaintiff seeks a declaratory judgment, injunctive relief, and disgorgement, respectively. ECF No. 4 at PageID.763–65. But all of these are equitable remedies, not distinct causes of action. *Turaani v. Sessions*, 316 F. Supp. 3d 998, 1015 (E.D. Mich. 2018) (dismissing separate counts seeking "injunctive and declaratory relief" because these "are remedies and not independent causes of action"); *Patterson v. United HealthCare Ins. Co.*, 76 F.4th 487, 497 (6th Cir. 2023) (noting "[d]isgorgement is an equitable remedy," rather than a distinct cause of action); *In re NM Holdings Co., LLC*, 405 B.R. 830, 851 (Bankr. E.D. Mich. 2008), *adopted*, 411 B.R. 542 (E.D. Mich. 2009), *aff'd*, 622 F.3d 613 (6th Cir. 2010) (dismissing stand-alone count seeking disgorgement with prejudice because "disgorgement is a remedy . . . not an independent cause of action"). Accordingly, Counts XIII, XIV, and XV will be dismissed.

In sum, Defendants Badger, Osborne, and Christopherson's joint Motion to Dismiss, ECF No. 5, will be granted in its entirety and all of Plaintiff's claims against these Defendants will be dismissed.

### IV. Zhang's Motion to Dismiss and Collette's Motion to Dismiss

Although Zhang and Collette proceeded *pro se* and filed separate motions to dismiss, both argue all claims against them should be dismissed because (1) all claims are precluded by the Midland receivership proceedings, ECF Nos. 10 at PageID.1191–94; 17 at PageID.1509; and (2) Plaintiff did not properly serve them, ECF Nos. 10 at PageID.1195; 17 at PageID.1508–09. Zhang also argues this Court lacks personal jurisdiction over him and that all counts seeking injunctive or declaratory relief should be dismissed. ECF No. 17 at PageID.1508–09. Each argument will be addressed in turn.

### A. Res Judicata

Both Zhang and Collette argue that Plaintiff's claims were disposed of on the merits throughout the Midland receivership proceedings and, thus, and are barred by res judicata. ECF Nos. 10 at PageID.1191–94; 17 at PageID.1509. Not so.

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). The Midland receivership proceedings took place in Michigan, which employs a "broad view" of res judicata—also known as claim preclusion—and bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 817 (6th Cir. 2010) (citing *In re MCI Telecommunications Complaint*, 596 N.W.2d 164, 183 (Mich. 1999)). A party asserting the

defense of res judicata bears the burden of proving it applies. *Garrett v. Washington*, 886 N.W.2d 762, 766 (Mich. Ct. App. 2016). Here, Zhang and Collette have not met their burden to prove Judge Carras's dismissal of the intervenors' derivative counterclaims was a final judgment on the merits, nor have they proved this action involves the same parties.

## 1.

The first issue is whether Judge Carras's dismissal of the intervenors' derivative counterclaims was a final decision on the merits. Zhang and Collette argue that, since Judge Carras dismissed the intervening counterclaim with prejudice upon their motions for summary disposition, the dismissal was a final judgment on the merits. ECF Nos. 10 at PageID.1192–93; 17 at PageID.1509. Plaintiff argues to the contrary because in its view, the counterclaims were dismissed for lack of standing and not on the merits. ECF Nos. 18 at PageID.1526–28; 21 at PageID.1565–67. Neither Parties' characterization of the record or application of precedent is entirely accurate.

As explained *supra* Section I.B., Christopher Philbrick, Ray Wong, and Frank Dougherty intervened in the Midland receivership proceedings, asserted counter-claims against Zhang, Collette, and Brown, and sought to set aside Collette's default-judgment receivership.[12] *See* ECF No. 4 at PageID.728; *see also* ECF No. 4-27 at PageID.1112. No Party has provided a copy of the countercomplaint but Collette has characterized it as asserting the following claims: (1) fraud, (2) abuse of process, (3) conversion, (4) breach of fiduciary duty by self-dealing, and (5) civil

---

[12] After extensively describing the Midland receivership proceedings throughout its Complaint, Plaintiff argues, ironically, that this Court "must disregard" the portions of the record provided by Collette in her Motion to Dismiss. ECF No. 18 at PageID.1526. But "a court may take judicial notice of other court proceedings without converting" a motion to dismiss into one for summary judgment. *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 5, 65576 (6th Cir.2008)).

conspiracy. *See* ECF No. 10 at PageID.1189–90. On April 28, 2023, Judge Carras granted Zhang and Collette's motions for summary disposition and dismissed the counterclaim against them *with prejudice* because the intervenors were not continuous HPIL shareholders at the time of the alleged wrongdoing and, even if they were, they had not filed a written demand on HPIL before bringing a derivative action on its behalf, MICH. COMP. LAWS § 450.1493a. ECF No. 10-4 at PageID.1398; *see also* ECF No. 10-5 at PageID.1417, 1422. On June 15, 2023, Judge Carras granted Brown's motion for summary disposition on the same grounds and, *initially*, noted the dismissal was *without prejudice* because, although the intervenors "d[id]n't have standing," this issue could be "fix[ed]" and another derivative claim may be filed in the future. ECF No. 10-5 at PageID.1416. At this point, the intervening counterclaimants' counsel—Plaintiff's Counsel here—objected to Judge Carras's earlier dismissal of the counterclaims against Zhang and Collette *with prejudice* because, in counsel's view "neither [dismissal was a] judgment[] on the merits." *Id.* at PageID.1417. Judge Carras overruled this objection and explained "with respect to the motion for . . . summary disposition on behalf of Ms. Collette, and ultimately Mr. Zhang, it was not, you know, a standing issue" because "number one, there was no proof that [the intervenors] were actually shareholders at the time . . . [a]nd two, that [they] never . . . made [a] demand, which is required by law." *Id.* at PageID.1422. After Judge Carras overruled this objection, despite initially dismissing the counterclaims against Brown without prejudice, he noted the dismissal of the counterclaims against Brown was "exactly the same" as the dismissal of the counterclaims against Zhang and Collette and was "with prejudice." *Id.*

So, Zhang and Collette are correct that Judge Carras dismissed the intervenors' counterclaims with prejudice on summary disposition. ECF No. 10 at PageID.1192–93. But Plaintiff is correct that Judge Carras did not address the underlying merits of *any* of the intervenors'

counterclaims. ECF No. 18 at PageID.1526–28. Indeed, by basing the dismissal on the fact that

Philbrick, Wong, and Dougherty were not continuous HPIL shareholders, Judge Carras's dismissal

of the derivative counterclaims is properly classified as a dismissal for lack of standing.[13] *See*

*Walker v. Gen. Tel. Co.*, 25 F. App'x 332, 335 (6th Cir. 2001); *Karmanos v. Bedi*, No. 336577,

2018 WL 6252038, at *4 (Mich. Ct. App. Nov. 29, 2018) (holding that, because plaintiff "was not

---

[13] It would be a closer call if Philbrick, Wong, and Dougherty *were* HPIL shareholders, but their derivative counterclaims were dismissed solely because they failed to first file a demand with HPIL. There is little precedent addressing res judicata's applicability to shareholder derivative demand requirements. The First Circuit is the only federal appellate court which has squarely decided the issue of whether dismissals of derivative suits for failure to comply with state demand requirements have preclusive effect. In *In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47 (1st Cir. 2007), the First Circuit, applying Massachusetts law, analogized dismissing a derivative suit for failure to file a demand to dismissing a case for failure to satisfy a precondition to suit. Thus, the First Circuit held, a demand dismissal would preclude relitigation of the underlying precondition *issue*—such as whether demand was filed or would have been futile—but would not preclude other *claims*. *Id.* at 61–62. In other words, demand dismissals are final judgments on the merits for collateral estoppel, or issue preclusion, purposes but not for res judicata, or claim preclusion, purposes. *See id.* And "[a]lthough no other circuit court has examined whether a demand . . . dismissal constitutes a final decision on the merits for res judicata purposes," all federal circuit courts uniformly agree that "claim preclusion should not attach" to dismissals for failure to meet a precondition to suit. *In re JPMorgan Chase Derivative Litig.*, 263 F. Supp. 3d 920, 935 (E.D. Cal. 2017) (collecting cases). Federal district courts have reached conflicting conclusions. *See, e.g.*, *In re Bed Bath & Beyond Deriv. Litig.*, No. CIV.A. 06-5107(JAP), 2007 WL 4165389, at *7 (D.N.J. Nov. 19, 2007) (applying res judicata after declaring demand futility dismissal a "final decision on the merits" in large part because the cover page of court's dismissal decision noted the dismissal was a "Final Disposition"); *In re JPMorgan Chase Derivative Litig.*, No. 17 CIV. 5066 (JFK), 2018 WL 2305564, at *4 (S.D.N.Y. May 21, 2018) (holding dismissal of derivative complaint for failure to plead demand futility is a final decision on the merits for purposes of res judicata); *Bader v. Goldman Sachs Grp., Inc.*, No. 08-CV-255 SLT JMA, 2010 WL 3938410, at *6 (E.D.N.Y. Sept. 30, 2010), *vacated on other grounds*, 455 F. App'x 8 (2d Cir. 2011) (refusing to preclude claims applying *In re Sonus*); *Syn-Cronamics, Inc. on Behalf of Cabral Enterprises, Inc. v. Cabral*, No. CV 14-12523-GAO, 2015 WL 13694669, at *7 (D. Mass. Feb. 17, 2015) (same); *Shearer v. Adams*, No. 3:11-00099, 2012 WL 1076299, at *6 (M.D. Tenn. Mar. 29, 2012) (applying res judicata to dismissal for failure to make adequate derivative demand because state judge dismissed the action with prejudice). Neither the Sixth Circuit nor this Court have directly addressed the issue, which is not squarely presented here.

a [continuous] shareholder of the corporation at the time of most of the alleged acts occurred," plaintiff "lacked standing under MICH. COMP. LAWS § 450.1492a to bring a shareholder derivative suit against defendants.")

Zhang and Collette's res judicata arguments focus on form but ignore substance. Both Defendants collectively cite only one case to support their proposition that Michigan courts, generally, classify grants of summary disposition as final judgments on the merits for claim preclusion purposes. ECF No. 10 at PageID.1193 (citing *Sherrell v. Bugaski*, 425 N.W.2d 707, 709 (Mich. Ct. App. 1988)). But the cited case has nothing to do with dismissals for lack of standing. And dismissals for lack of standing—even when couched as a dismissal with prejudice or decided upon a defendant's motions for summary disposition—are *not* considered final judgments on the merits and do not have claim preclusive effect. *Cone v. Tessler*, No. 16-11306, 2018 WL 4090662, at *3 (E.D. Mich. Aug. 28, 2018) (rejecting defendants' argument that res judicata applies when state court dismissal on basis of standing is *with prejudice* because, at its core, a dismissal for lack of standing is jurisdictional and not an adjudication on the merits); *see also Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011) (suggesting that, in a case applying Ohio Law which, like Michigan law, "instructs that dismissals for lack of standing do not trigger res judicata, the state trial court appears to have erred in dismissing the [prior action] with prejudice [because] the state court's dismissal of the [prior action] was "purely procedural" and "[n]o court has considered the merits of [the] claims").

In sum, Judge Carras dismissed Philbrick, Wong, and Dougherty's derivative counterclaims against Zhang and Collette because these three specific counterclaimants were not continuous HPIL shareholders and lacked standing to pursue a derivative counterclaim on HPIL's behalf. Accordingly, although Judge Carras's order dismissed the intervenors' derivative claim

- 35 -

"with prejudice" and upon Zhang and Collette's motions for summary disposition, the dismissal was not a final judgment on the merits with claim preclusive effect.

**2.**

Even if Judge Carras's dismissal was a final decision on the merits, it did not involve the same parties present in this case, nor their privities.

"To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Typically, this "requires both a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the [earlier] litigation." *Id.* (internal quotations and citations omitted); *see also Zwerk v. Zehnder*, No. 294006, 2011 WL 1816511, at *8 (Mich. Ct. App. May 12, 2011).

Here, Plaintiff HPIL is not the same as or in privity with the Midland receivership intervenors—Philbrick, Wong, and Dougherty—precisely because the intervenors were *not* HPIL shareholders and did not have standing to pursue a derivative claim on HPIL's behalf. True, *proper* plaintiffs in a shareholder derivative suit are the same or in privity with the corporation they represent. *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970); *Murphy v. Inman*, 983 N.W.2d 354, 369 (2022) ("[A] derivative suit; although it may be brought by the shareholder, the action itself belongs to the corporation."). But the state court concluded Philbrick, Wong, and Dougherty were not proper derivative plaintiffs. And Zhang and Collette have presented no precedent which suggests that a corporation is the same as or in privity with individuals who did not own continuous shares in the corporation at the time of the alleged wrongdoing. Indeed, Zhang cites no precedent whatsoever and states only that this element "is satisfied," ECF No. 17 at PageID.1509, and the one case cited by Collette involves successive constitutional claims brought by the same parties

- 36 -

under 42 U.S.C. § 1983 and is wholly inapposite. ECF No. 10 at PageID.1193 (citing *Dubuc v.*

*Green Oak Township*, 312 F.3d 736, 751 (6th Cir. 2002)).

Thus, even if Judge Carras's dismissal of the derivative counterclaims was a final decision

on the merits, Zhang and Collette have not met their burden to show that Plaintiff here was the

same as or in privity with the intervening counterclaimants. Accordingly, Plaintiff's claims against

Zhang and Collette are not precluded by the Midland receivership proceedings.

**B. Improper Service**

Zhang and Collette next seek dismissal under Civil Rule 12(b)(5) and argue Plaintiff did

not properly serve them. ECF Nos. 10 at PageID.1195; 17 at PageID.1508–09. Both arguments

are unclear and conclusory. Collette argues only:

> Plaintiff has never served Defendant Collette. In the present case, Plaintiff sent by
> Priority Mail two boxes to Defendant at her business address, which the postal
> carrier left in the parking lot and was only discovered by coincidence. This
> "service" does not in any way comply with Fed. R. Civ. P. 12(b)(5). Eighty-two
> (82) days after the clerk issued the summons, this is the only notice Defendant
> received. Plaintiff made no effort to contact Defendant and ask that she waive
> service. Improper service of process in this case, with this Plaintiff, is an effrontery
> because for almost three years he has alleged that Defendant is liable for fraud for
> bad service of process, that was not only completely adequate and proper, but she
> had no part in it.

ECF No. 10 at PageID.1195. Zhang argues only:

> Plaintiff sent two copies of identical Second Amended Complaint via USPS priority
> mail to Defendant Zhang's residential address. No original complaint and first
> Amended Complaint attached. Most importantly, the claims against Defendant
> Zhang are barred by res judicata.

ECF No. 17 at PageID.1509. Despite their arguments to the contrary, the factual record suggests

Zhang and Collette were sufficiently served.

**1.**

Under Civil Rule 12(b)(5), a district court has broad discretion to dismiss a complaint for insufficiency of service of process. *Metro. Alloys Corp. v. State Metals Indus., Inc*., 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006); *W. Bend Mut. Ins. Co. v. Osmic, Inc*., No. 1:21-CV-00593-PAB, 2023 WL 6258796, at *5 (N.D. Ohio Sept. 26, 2023). When a defendant asserts this defense, the plaintiff bears the burden of establishing service sufficiency. *Id*; *Frederick v. Hydro-Aluminum* S.A., 153 F.R.D. 120, 123 (E.D. Mich. 1994). Importantly, "[i]n deciding a motion to dismiss under Rule 12(b)(5), the court may refer to record evidence in determining the sufficiency of service." *Metro. Alloys Corp.*, 416 F. Supp. 2d at 563.

The requirements for service of process are set forth in Rule 4 of the Federal Rules of Civil Procedure, but the federal rules expressly allow a federal district court plaintiff to effectuate service in accord with the law of the state in which the district court sits. FED. R. CIV. P. 4(e)(1). The Michigan Rules of Civil Procedure provide that individual service may be effectuated by (1) delivering a summons and a copy of the complaint to the defendant personally; or (2) sending a summons and copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Mich. Ct. R. 2.105(A). But the Michigan Rules allow courts, "[o]n a showing that service of process cannot reasonably be made as provided by this rule," to order "service of process to be made in any other manner reasonably calculated to give the defendant *actual notice* of the proceedings and an opportunity to be heard". Mich. Ct. R. 2.105(J)(1) (emphasis added). Further, the Michigan Rules clarify that "[s]ervice is made when defendant *acknowledges receipt* of the mail," Mich. Ct. R. 2.105(A)(2) (emphasis added) and instructs that actions "shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service."

Mich. Ct. R. 2.105(K)(3). In terms of timing, the Michigan Rules provide that a summons "expires 91 days after" being issued but allows courts to issue a second summons upon a "showing of due diligence." Mich. Ct. R. 2.102(D). If a court issues a second summons, it must issue the summons for a definite period not to exceed one year. *Id.* If a defendant is not served upon the expiration of summons, "the action is deemed dismissed with prejudice . . . unless the defendant has submitted to the court's jurisdiction." Mich. Ct. R. 2.102(E)(1).

On this point, Michigan courts are clear: "a party who enters a general appearance and contests a cause of action on the merits submits to the court's jurisdiction and waives service of process objections." *Penny v. ABA Pharmaceutical Co*., 511 N.W.2d 896, 897 (Mich. Ct. App. 1993), *overruled in part on other grounds Al–Shimmari v. Detroit Medical Ctr*, 731 N.W.2d 29, 35–36 (2007);[14] *Bauchan v. Cheatham & Acker, P.C.*, No. 211981, 2000 WL 33415950, at *5 (Mich. Ct. App. July 21, 2000); *Hartford Equities, Inc. v. Cnty. of Clinton*, No. 313443, 2013 WL 6182665, at *2, n. 3 (Mich. Ct. App. Nov. 26, 2013) (noting "an action on the part of a defendant that recognizes the pending proceedings, with the exception of objecting to the court's jurisdiction, will constitute a general appearance"); *Woods v. CitiMortgage, Inc*., No. 325860, 2016 WL 1040158, at *3 (Mich. Ct. App. Mar. 15, 2016). And the Sixth Circuit similarly instructs that, when a defendant has actual notice of a suit, rules governing service of process should be liberally construed. *Allstate Ins. Co. v. Utica Physical Therapy Inc*., No. 17-CV-13823, 2018 WL 3036305, at *3 (E.D. Mich. June 19, 2018) (citing *Rovinski v. Rowe*, 131 F.2d 687, 689 (6th Cir. 1942)).

---

[14] "*Al–Shimmari* overruled *Penny*'s general statement to the extent it conflicts with MCR 2.116(D)(1), which is not applicable here." *Hartford Equities, Inc. v. Cnty. of Clinton*, No. 313443, 2013 WL 6182665, at *2, n. 3 (Mich. Ct. App. Nov. 26, 2013).

**2.**

Here, Summons was issued for all Defendants, including Zhang and Collette, on August

15, 2023. ECF No. 2. In accord with Mich. Ct. R. 2.102(D), this Summons was set to expire 91

days later, on November 14, 2023. But, on November 14, 2023, Plaintiff filed an Ex Parte Motion

seeking to "extend" the Summons by 45 days to perfect service as to Zhang, and Collette, along

with the other Defendants who had not been served. ECF No. 9.

  As to Zhang, Plaintiff averred:

> Service has been made on Defendant Zhang via certified mail after several attempts
> at personal service. [Plaintiff] is awaiting return of the signature card before filing
> the proof of service, but Zhang contacted [Plaintiff's] counsel on November 9, 2023
> to alert him of his intention to file a motion to dismiss.

ECF No. 9 at PageID.1164 (internal citations omitted). And Plaintiff attached a USPS tracking slip

confirmed delivery at Zhang's residential address in Pennsylvania on November 6, 2023. ECF No.

9 at PageID.1169. Zhang does not dispute he received the Complaint that day. *See* ECF No. 17 at

PageID.1508–09.

  As to Collette, Plaintiff similarly averred:

> Service has been made on Defendant Collette via certified mail after several
> attempts at personal service in both Florida and Michigan. [Plaintiff] is awaiting
> return of the signature card before filing the proof of service, but Collette contacted
> [Plaintiff's] counsel on November 8, 2023 to alert him of her intention to file a
> motion to dismiss.

ECF No. 9 at PageID.1164 (internal citations omitted). Plaintiff attached a form executed by a

process server on November 9, 2023 which confirmed the process server returned the summons as

unexecuted. The server also noted she first attempted to personally serve Collette at her Florida

residential address on October 20, 2023, but "there was no answer," "no cars" and the "[s]ecurity

system [had been] unplugged on [the] front porch." ECF No. 9 at PageID.1172. The next day, the

process served tried to effectuate personal service at Collette's address at two different times

throughout the day and tried to call Collette on the phone. *Id.* All efforts were unsuccessful, but a neighbor told the process server that, although Collette resides at that Florida address, she frequently travels to South Carolina. *Id.* The process server tried to personally serve Collette again on October 23, 2023, and tried to call Collette again on November 3, 2023. *Id.* at PageID.1172–73. All efforts were unsuccessful. *Id.*

Yet, Collette somehow knew about these proceedings. On November 16, 2023, Collette filed her *pro se* Motion to Dismiss, arguing all claims should be dismissed for improper service *and* because all claims are barred by the Midland receivership proceedings. ECF No. 10. That same day, this Court found Plaintiff diligently attempted to serve the un-served Defendants and granted its *Ex Parte* Motion. ECF No. 11. A second summons was issued in accordance with Mich. Ct. R. 2.102(D) the next day, on November 17, 2023. ECF No. 12. As requested by Plaintiff, this second summons was set to expire on January 2, 2024. Before the second summons expired, on December 4, 2023, Zhang filed his *pro se* Motion to Dismiss—which, like Collette's Motion, raised additional arguments aside from improper service. ECF No. 17.

On January 2, 2024, the day the second summons was set to expire Plaintiff filed a *second Ex Parte* Motion to extend the summons or issue alternative process. ECF No. 22. In this second Motion, Plaintiff explained that Zhang had been served via certified mail and, although Collette had not yet been served, Plaintiff delivered copies of the operative Complaint and Summons to her business address in Michigan. ECF No. 22 at PageID.1574. USPS tracking slips confirm the material was delivered to Collette's business on November 4, 2023. ECF No. 22 at PageID.1589. Further, Plaintiff alleged Collette was intentionally avoiding service and "ha[d] stated the same to other parties" in the case. *Id.* at PageID.1574.

Ultimately, this Court denied Plaintiff's second *Ex Parte* Motion for Alternate Service and Summons Extension because Michigan law does not allow a second summons to be extended, nor does it allow a third summons to be issued. ECF No. 24 at PageID.1600 (citing *Hyslop v. Wojjusik*, 652 N.W.2d 517, 520 (Mich. App. 2002)). This Court dismissed Brown, BFI, Crank, Criteria, and Postula as Defendants in the above-captioned case because Plaintiff had not served them. *Id.* at PageID.1601. But this Court did not dismiss Zhang and Collette because, by filing motions to dismiss for reasons other than improper service—including res judicata under Rule 12(b)(6) and lack of personal jurisdiction under Rule 12(b)(2)—both Defendants had actual knowledge of the proceedings *and* submitted to this Court's jurisdiction for the purposes of Mich. Ct. R. 2.102(E)(1). ECF No. 24 at PageID.1600–01.

The same rationale is largely dispositive here. Collette appeared by "contest[ing] [this] cause of action on the merits" and, thus "submit[ed] to the court's jurisdiction and waive[d] service of process objections." *See Penny v. ABA Pharmaceutical Co.,* 511 N.W.2d 896, 897 (Mich. Ct. App. 1993), *overruled in part on other grounds Al–Shimmari v. Detroit Medical Ctr*, 731 N.W.2d 29, 35–36 (2007); Mich. Ct. R. 2.102(E)(1). And even if she did not waive her service of process objections, Plaintiff's service was sufficient. Collette filed her Motion to Dismiss, arguing in part that service was improper, *just before* this Court issued a second summons against her, which did not expire until January 2, 2024. But—before this expiration—in addition to filing an on-the-merits Motion to Dismiss, Collette admitted she received the Summons and Complaint at her Michigan business address 82 days after the original Summons was issued, the same day Plaintiff's USPS tracking slip reflects such certified mail was delivered. *Compare* ECF No. 10 at PageID.1195 *with* ECF No. 22 at PageID.1589. Thus, Plaintiff's service was not untimely. Mich. Ct. R. 2.102(D) (imposing 91-day expiration on summons). Although Collette did not sign a return receipt, she did

"acknowledge" her receipt of the Summons and Complaint. *See* ECF No. 10 at PageID.1195; *see also* Mich. Ct. R. 2.105(A)(2). Although Collette argues, without any support, that the Summons and Complaint were "discovered by coincidence" in the "parking lot" of her Michigan business address, ECF No. 10 at PageID.1195, the USPS tracking slip provided by Plaintiff suggests the opposite. ECF No. 22 at PageID.1589 (noting the Summons and Complaint were "delivered in or at the mailbox the complaint and summons were left at or in a mailbox"). And although the Complaint and Summons were mailed to Collette's "business address," this is the same address she lists at the bottom of all her *pro se* pleadings in the above-captioned case. *Compare* ECF No. 22 at PageID.1589 *with* ECF No. 20 at PageID.1584. At bottom, Collette was "inform[ed] of the action within the time provided" by Michigan Rules of Civil Procedure, so dismissal for improper service is not warranted. Mich. Ct. R. 2.105(K)(3).

The same result for Defendant Zhang. Like Collette, Zhang filed a Motion to Dismiss on the merits on December 4, 2023. ECF No. 17. Zhang received the Summons and  Complaint on November 6, 2023, over one week before the first summons expired. *See* ECF No. 9 at PageID.1169. Although Zhang argues, like Collette, that the "boxes" were left "outside the garage" of his Pennsylvania residence, ECF No. 23 at PageID.1592, the USPS tracking slip provided by Plaintiff  suggests nothing of the sort. ECF No. 9 at PageID.1169 (noting the Summons and Complaint were "delivered to an individual" and were "signed for by H ZHANG"). Zhang also argues service was insufficient because Plaintiff mailed him only Plaintiff's first *amended* Complaint rather than Plaintiff's initial complaint. ECF No. 17 at PageID.1508. But Plaintiff's initial complaint was moot upon its amendment as a matter of course. *See* FED R. CIV. P. 15(a)(1); *Klein v. Caterpillar Inc*., 581 F. Supp. 3d 912, 919 (E.D. Mich. 2022).

In sum, after reviewing the factual record, this Court is satisfied that Plaintiff has met its burden to establish Zhang and Collette—who both filed on-the-merits motions to dismiss after timely receiving copies of the Complaints and Summons—were sufficiently served. To the extent Zhang and Collette's motions to dismiss argue the contrary, their motions are denied.

### C. Zhang's Additional Arguments

In addition to the arguments he shares with Collette, Zhang (1) seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction and, (2) like Defendants Badger, Osborne, and Christopherson, argues Counts XIII–XV should be dismissed because each count seeks relief rather than asserts a cause of action. ECF No. 17 at PageID.1508–09. Each argument will be addressed in turn.

### 1. Lack of Personal Jurisdiction

Zhang first argues all claims against him should be dismissed under Civil Rule 12(b)(2) for lack of personal jurisdiction because he "is a resident [of] Pennsylvania and has no business in the State of Michigan." ECF No. 17 at PageID.1508. But personal jurisdiction is not so simple. To analyze *specific* personal jurisdiction,[15] when Defendants reside in different states, "federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over the parties, subject to constitutional due process requirements." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Thus, this Court "must

---

[15] Plaintiff does not argue this Court has *general* personal jurisdiction over Zhang and its Complaint does not demonstrate a prima facie case that Zhang's contacts with Michigan are "so continuous and systematic as to render [Zhang] essentially at home" in Michigan. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (internal citations and quotations omitted); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (noting motions to dismiss for lack of personal jurisdiction involve burden shifting and the plaintiff has the initial burden of establishing, in its complaint, a prima facie case of personal jurisdiction over a specific defendant).

engage in a two-step process: (1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over [Zhang]; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process." *Id.*

**a.**

Michigan's applicable long-arm statute authorizes this Court's personal jurisdiction over Zhang. Relevantly, this statute vests Michigan courts with specific personal jurisdiction over any individual who:

> (1) transacts or conducts business within the state;
> (2) acts within the state resulting in an action for tort;
> (3) owns, uses, or possess real or tangible property in the state; or
> . . .
> (6) acts as a director, manager, trustee, or other officer of a corporation either incorporated in the state or having its principal place of business in the state. . .

MICH. COMP. LAWS § 600.705. Notably, the Michigan Supreme Court has recognized that the first criterion is satisfied when a defendant conducts "even the slightest act of business in Michigan[.]" *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (citing *Sifers v. Horen*, 188 N.W.2d 623, 624, n. 2 (Mich. 1971)).

Plaintiff has alleged that HPIL's principal place of business was in Midland, Michigan both when Zhang was an HPIL shareholder and when he served as an HPIL officer overseeing Collette's receivership. *See* ECF No. 4 at PageID.725, 727, 730–31, 750. Indeed, Zhang initiated the proceedings to appoint Collette as HPIL's receiver in Michigan state court. ECF No. 4-1 at PageID.768. And Plaintiff asserts numerous tort claims—malicious prosecution, abuse of process, conversion, civil conspiracy—which it alleges arise from Zhang's initiation of these proceedings. *See generally* ECF No. 4 at PageID.748–53, 755, 757. On these alleged facts, Michigan's applicable long-arm statute vets this Court with personal jurisdiction over Zhang.

- 45 -

**b.**

In addition to Michigan's applicable long-arm statute, this Court's personal jurisdiction over Zhang comports with the federal due process.

Contrary to Zhang's argument, the relevant inquiry is not whether Zhang resides in Michigan but whether, as an out-of-state resident, he has sufficient "minimum contacts with [Michigan] that [this Court's] exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). Three factors guide this inquiry: (1) whether Zhang purposefully availed himself of acting or doing business in Michigan; (2) whether Zhang's activities in Michigan proximately caused Plaintiff's alleged injuries; and (3) whether the consequences caused by Zhang's actions are sufficiently connected to Michigan to make this Court's jurisdiction reasonable. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 503 (6th Cir. 2020).

The first factor—purposeful availment— is "arguably the most important[.]" *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007); *see also Theunissen*, 935 F.2d at 1460. This factor "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person." *Air Prod.*, 503 F.3d at 550 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). A defendant purposefully avails him or herself of a forum "by engaging in activity that should provide fair warning that he [or she] may have to defend a lawsuit there," *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003), regardless of whether that defendant was ever *physically* present in the forum. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 479 (6th Cir. 2003). Zhang purposefully availed himself to Michigan by filing a state receivership

complaint in Michigan state court, which Plaintiff alleges was fraudulent and allowed for other defendants' "pump and dump" scheme. *See Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F. Supp. 389, 397 (N.D. Ohio 1990) ("Voluntarily filing a lawsuit . . . can be deemed . . . purposeful availment of the forum."); *Powervip, Inc. v. Static Control Components, Inc.*, No. 1:08-CV-382, 2009 WL 152106, at *8 (W.D. Mich. Jan. 21, 2009).

The second factor is similarly satisfied because Plaintiff's claims against Zhang—and the other Defendants—all allegedly arise out of and after Zhang's filing of the Midland receivership complaint in Michigan. *See Cabinets to Go, LLC v. Qingdao Haiyan Real Est. Grp. Co., LTD*, 605 F. Supp. 3d 1051, 1058–59 (M.D. Tenn. 2022), *reconsideration denied sub nom. Cabinets To Go, LLC v. Qingdao Haiyan Real Est. Grp. Co., LTD.*, No. 3:21-CV-00711, 2023 WL 5013055 (M.D. Tenn. Aug. 7, 2023) ("The law of this circuit is that the 'arising from' requirement is satisfied if the cause of action is 'related to' or 'connected with' the defendant's forum contacts." (citing *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003)).

The third factor—reasonableness—is also satisfied. This factor calls on courts to determine "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). This Court's assertion of personal jurisdiction over Zhang—who has filed state court proceedings in Michigan, appeared in Michigan multiples times throughout state proceedings, and has appeared before this Court at a status conference, *see* ECF No. 27—comports with notions of fair play and substantial justice. Indeed, "[w]hen the first two factors are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First Nat. Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). And when "a defendant who purposefully has directed his activities at

forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 554 (6th Cir. 2007). Zhang's one-sentence argument that this Court lacks personal jurisdiction presents no compelling case.

In sum, this Court's personal jurisdiction over Zhang is both authorized by Michigan's applicable long-arm statute, MICH. COMP. LAWS § 600.705, and satisfies federal due process. Zhang's Motion to Dismiss for lack of personal jurisdiction under Civil Rule 12(b)(2) will be denied. Zhang's *pro se, Ex Parte* "Motion of Clarification of Record on Zhang's Personal Jurisdiction," ECF No. 26, will be denied for the same reasons.

### 2. Declaratory Relief, Injunctive Relief, and Disgorgement

Lastly, Zhang argues that Counts XIII (seeking a declaratory judgment),[16] XIV (seeking injunctive relief), and XV (seeking disgorgement) should be dismissed because each seeks relief and does not assert a distinct cause of action. ECF No. 17 at PageID.1509. As explained *supra* Section III.A.C, each of these Counts will be dismissed as to all Defendants. So Zhang's Motion to Dismiss will be granted in part accordingly.

### V. Corporate Disclosure and Supplemental Briefing

Having addressed all motions to dismiss, this Court turns to two unresolved issues.

First, Plaintiff has not complied with Local Rule 83.4. This Rule requires Plaintiff to file a Statement of Disclosure of Corporate Affiliations and Financial Interest[17] "as part of [its] first pleading or paper filed." E.D. MICH. LR 83.4(a), (c). Plaintiff did not do so. At an April 18, 2024 status conference, this Court addressed the issue and directed Plaintiff's Counsel to file the

---

[16] Zhang erroneously labels this Count as "Count XII" in his Motion to Dismiss. ECF No. 1509.
[17] A copy of this disclosure is available at https://www.mied.uscourts.gov/PDFFIles/stmt_financi aldisclosure_pdf.pdf [https://perma.cc/2DK4-A2AB].

disclosure. ECF No. 27 at PageID.1626–29. Plaintiff's Counsel said he would file the disclosure "immediately." *Id.* at PageID.1628. Yet, no disclosure has been filed. So, Plaintiff will be formally directed to file a Statement of Disclosure of Corporate Affiliations and Financial Interest in accordance with Local Rule 83.4.

Second, as Counsel for Defendants Badger, Osborne, and Christopherson—dismissed by this Opinion and Order—note: "it is still unclear under what theory the present lawsuit has been brought by or on behalf of HPIL, Inc." ECF No. 14 at PageID.1452, n. 1. Indeed, "it seems unlikely that the present suit is a proper direct suit by the corporation[.]" *Id.* At the April 18, 2024 status conference, Plaintiff's Counsel stated that his primary contact is Christopher Philbrick and noted that Philbrick is the individual who authorized this suit by HPIL. *See* ECF No. 1627. But the record evidence at this juncture suggests Philbrick does not possess this authority. Despite Plaintiff's unsupported allegation that Philbrick was appointed HPIL's sole director and board member in 2022, *see* ECF No. 4 at PageID.730–31, the state court found that Philbrick was not a continuous HPIL shareholder and could not pursue a derivative claim involving largely the same facts as here. ECF Nos. 10-4 at PageID.1398–99; ECF No. 10-5 at PageID.1422 ("[T]here was no proof that [Philbrick, Wong, and Dougherty] were actually shareholders at the time."). Although Zhang's receivership proceedings were ultimately dismissed, Judge Carras did not undo any of Collette's actions in the year she served as HPIL's receiver—including the appointment of Brown as HPIL's CEO and President. Indeed, on April 28, 2023, after the receivership complaint was dismissed— and, importantly, *after* Plaintiff alleges Philbrick was appointed HPIL's sole director—Judge Carras denied Philbrick and the other intervenors' request for an injunction and specifically stated that HPIL "ha[d] been operating under Mr. Brown's apparent authority . . . two years." ECF No. 10-4 at PageID.1404–05.

Philbrick's ability to authorize *this* suit in HPIL's name, filed four months after the state court concluded HPIL was operating under Brown's authority, remains unclear. Accordingly, Plaintiff will be directed to file supplemental briefing on its capacity to sue, and Philbrick's capacity to authorize HPIL's legal action.

## VI. Conclusion

Accordingly, it is **ORDERED** that Defendants Andrew Badger, Darcy Christopherson, and Mark Osborne's Joint Motion to Dismiss, ECF No. 5, is **GRANTED.**

Further, it is **ORDERED** that Defendant Angela Collette's Motion to Dismiss, ECF No. 10, is **DENIED.**

Further, it is **ORDERED** that Defendant Zhang's Motion to Dismiss, ECF No. 17, is **GRANTED IN PART**, to the extent it seeks to dismiss Count XIII, Count XIV, and Count XV of Plaintiff's Complaint, ECF No. 4.

Further, it is **ORDERED** that Defendant Zhang's Motion to Dismiss, ECF No. 17, is **DENIED IN PART**, in all other respects.

Further, it is **ORDERED** that Defendant's Zhang's Motion of Clarification of Record on Zhang's Personal Jurisdiction, ECF No. 26, is **DENIED.**

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to file its Statement of Disclosure of Corporate Affiliations and Financial Interest in accordance with Local Rule 83.4 **on or before May 31, 2024.**

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to file supplemental briefing, not to exceed 20 pages excluding attachments, explaining its capacity to sue and Christopher Philbrick's capacity to authorize a lawsuit in HPIL's name **on or before June 10, 2024.**

The following table reflects the status of Plaintiff's claims.

- 50 -

| Count | Allegation | Defendants | Status |
|-------|-----------|------------|--------|
| I | Malicious Prosecution, | Zhang and Collette | Live |
| II | Abuse of Process (Michigan) | Zhang and Collette | Live |
| III | Abuse of Process (Nevada) | Zhang and Collette | Live |
| IV | Breach of Corporate Duties | Zhang and Collette | Live |
| V | Conversion / Embezzlement | Zhang and Collette | Live |
| VI | Self Dealing | Zhang and Collette | Live |
| VII | Civil Conspiracy | Zhang and Collette | Live |
| IX | Civil Conspiracy | Badger, Osborne, Christopherson | Dismissed |
| X | RICO | Zhang and Collette | Live |
| XI | RICO | Badger, Osborne, Christopherson | Dismissed |
| XIII | Declaratory Relief | Zhang, Collette, Badger, Osborne, Christopherson | Dismissed |
| XIV | Injunctive Relief | Zhang, Collette, Badger, Osborne, Christopherson | Dismissed |
| XV | Disgorgement | Zhang, Collette, Badger, Osborne, Christopherson | Dismissed |

Dated: May 21, 2024                    s/Thomas L. Ludington
                                       THOMAS L. LUDINGTON
                                       United States District Judge