UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HPIL HOLDING, INC.,

        Plaintiff,

v.                                                                                  Case No. 1:23-cv-12050

HAINING ZHANG, et al.,                                         Honorable Thomas L. Ludington
                                                                                    United States District Judge
        Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

On March 31, 2025, this Court issued an Opinion & Order *sua sponte* dismissing Plaintiff HPIL Holding, Inc.'s ("HPIL's") Complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. *HPIL Holding, Inc. v. Zhang*, No. 1:23-CV-12050, 2025 WL 975444 (E.D. Mich. Mar. 31, 2025) [hereinafter *HPIL II*]. Plaintiff now seeks reconsideration and relief from judgment. But, as explained below, such reconsideration and relief are not warranted.

**I.**

The background facts, HPIL's corporate history, and this case's complex procedural posture are detailed in this Court's March 31, 2025 Opinion & Order. *See id.* at *2–10. Only the key facts are repeated here.

**A.**

In 2004, Anju Tandon incorporated TNT Designs, Inc. ("TNT"), a fashion distribution company. TNT Designs Inc., Current Report (Form 8-K) (May 16, 2007). Although TNT engaged in no apparent business in its first five years, its shares were publicly traded on the over-the-counter (OTC) market. *See* TNT Designs Inc., Quarterly Report (Form 10-Q) (Aug. 19, 2009). In June 2009, Louis Bertoli purchased 86% of TNT's common "penny" stock shares and became its CEO

and President. TNT Designs Inc., Current Report (Form 8-K) (June 16, 2009). TNT then merged with another company and changed its corporate domicile from Delaware to Nevada. *See* TNT Designs Inc., Current Report (Form 8-K) (October 14, 2009); ECF No. 1-2 at PageID.59–70. In October 2009, the newly merged "Trim Holding Group" announced it would begin to focus its business on healthcare and environmental initiatives. Trim Holding Group, Current Report (Form 8-K) (Oct. 21, 2009). In May 2012, Trim Holding Group changed its name to HPIL Holding, Inc. HPIL Holding Inc., Current Report (Form 8-K) (May 22, 2012).

But HPIL engaged in little, sporadic business from 2012 through 2017, and seemingly only lost money. *See HPIL II* at *3–4 (noting HPIL purchased a patent portfolio for a personal massaging device and entered into a merchandising agreement with a Swiss karate federation). In March 2017, Nitin Amersey purchased control of HPIL from Bertoli and, in October 2017, became HPIL's new President and CEO. HPIL Holding Inc., Current Report (Form 8-K) (Mar. 6, 2017); HPIL Holding Inc., Current Report (Form 8-K) (Oct. 17, 2017). Yet, in early 2018, HPIL publicly reported that it still had not commenced any "substantial operations" since its inception in 2004 and reported a $1,930,902 loss in FY 2017. HPIL Holding Inc., Quarterly Report (Form 10-Q) (Apr. 2, 2018). In late 2018, under CEO Amersey, HPIL purchased a small company called "MyFlyWiFi" from Ray Wong for $35,000 and purchased a small drilling parts company called "RodDoc" from its owners Christopher Philbrick and Frank Dougherty, in exchange for HPIL shares. *See* HPIL Holding Inc., Current Report (Form 8-K) (Aug. 30, 2018); HPIL Holding Inc., Current Report (Form 8-K) (Oct. 18, 2018); HPIL Holding Inc., Current Report (Form 8-K) (Mar. 12, 2019).

In 2019, HPIL ceased voluntary public reporting. *See* HPIL Holding Inc., Suspension of Duty to File Reports Under Sections 13 and 15(d) of the Securities Exchange Act of 1934 (Form

15) (Aug. 12, 2019). HPIL filed its last public report in Nevada in February 2019, and was later dissolved by the Nevada Secretary of State. *HPIL II* at *4. In March 2019, for reasons unknown, HPIL filed Articles of Continuance in Wyoming. *See* ECF No. 1-2 at PageID.50–52.

Then came the state receivership proceedings. As explained in this Court's March 31, 2025 Opinion & Order:

> In late 2019 and early 2020, from a shareholder's perspective, HPIL was "dead as a doornail." William Shakespeare, Henry IV Part II, act 4, sc. 10, l. 42. It was dissolved in Nevada. Although it filed articles of continuance in Wyoming, it engaged in no apparent business and did not file any public reports there. It had accumulated millions of dollars in deficits and reported "losses at each reporting period" since its inception in 2004. Yet Defendant Haining Zhang—a Pennsylvania resident and minor HPIL shareholder—had hope. On April 13, 2020, Zhang filed a *pro se* complaint in Michigan's 42nd Circuit Court in Midland County, seeking to appoint Angela Collette—an attorney authorized to practice in New York, Michigan, and Kentucky—as HPIL's receiver under Mich. Comp. Laws § 450.1851. As aptly described by Midland Circuit Judge Stephen Carras, the receivership proceedings detailed below were "a bit of a mess."
>
> **1. Receivership Complaint**
> Generally, Zhang's receivership complaint alleged that HPIL was defunct and needed rehabilitation. Zhang alleged that he attempted to contact HPIL directors and officers but could not locate them and received no response. Zhang also alleged that HPIL's management had "abandoned the company," did not hold annual meetings, and was wasting resources at the expense of shareholders in breach of its fiduciary duties. Critically, Zhang's April 2020 receivership complaint focused on HPIL's dissolution in *Nevada* and did not discuss HPIL's continuance to *Wyoming*. Accordingly, Zhang attempted to serve the receivership complaint on HPIL's defunct Nevada address instead of the Wyoming address or registered agent HPIL had used for nearly a year. Zhang also alleged that Collette was "well suited" to serve as HPIL's receiver because she had "over 20 years of experience" in criminal and corporate matters, and had significant "capability and corporate exposure." On this point, Collette noted she and Zhang "ha[d] a mutual acquaintance who introduced [them] several years ago."
>
> Plaintiff sees things differently, and alleges Zhang and Collette were in cahoots. Plaintiff alleges they had no genuine intention to rehabilitate HPIL and, instead, are serial filers who seek to exploit corporations through fraudulent receivership proceedings. Regardless, the Wyoming Secretary of State administratively dissolved HPIL for delinquent tax filings one month after Zhang filed his April 2020 receivership complaint in the Midland Circuit Court. So, for the next few months, HPIL had no home, and did not exist as a corporate entity.

### 2. Default Judgment, Rehabilitation, & Reorganization

Likely because Zhang served HPIL in Nevada instead of Wyoming, HPIL did not respond to the receivership complaint or otherwise appear. So, on September 11, 2020, Judge Carras entered a default judgment in Zhang's favor and appointed Angela Collette as HPIL's receiver. Collette sought HPIL's reinstatement as a Wyoming corporation one week later. And the Wyoming Secretary of State officially reinstated HPIL's corporate charter on October 14, 2020.

After HPIL was reinstated, Plaintiff alleges that Collette and Zhang diluted HPIL's shares to present it as a reverse-merger target. "A reverse merger, generally, is a way for private companies to go public, and often involves a private company acquiring the majority shares of a public company—like HPIL—which then serves as the private company's shell." "Reverse mergers are often attractive for private companies that want to publicly trade without raising start-up capital and going through the initial public offering process."

Enter Defendant Stephen Brown—a Canadian citizen and the sole owner of Cybernetic Technologies, Ltd. ("Cybernetic"). Zhang and Collette entered an "Agreement and Plan of Reorganization" ("Reorganization Agreement") on HPIL's behalf with Cybernetic. Although Collette contends she does not know Brown and the Agreement did not personally involve Brown, both Collette and Brown signed the Agreement, and it appears that both initialed each page of the Agreement simultaneously. And although Zhang maintains he has never met Brown in person, the record suggests he met Brown over the phone *before* the Midland Receivership Proceedings because Zhang conceded he initiated those proceedings, in part, because Brown had "promising . . . plan[s]" for HPIL's future. Beyond these few facts, it remains unclear how Zhang, Collette, and Brown knew each other and came to an agreement regarding HPIL's reorganization.

Zhang, Collette, and Brown's April 2021 Reorganization Agreement transferred 92% of HPIL's shares to Cybernetic. Zhang retained 4% of HPIL's shares, Collette retained 2% of HPIL's shares, and the remaining 2% of HPIL shares were left for "non-affiliated shareholders." Critically, the Reorganization Agreement also provided that Brown would serve as HPIL's President and CEO, and that Collette and Zhang would each receive $25,000. At some point after being appointed CEO, Brown appointed David Postula to serve as HPIL's President.

On May 17, 2021, Collette filed a final report and account with the Midland Circuit Court. In this report, Collette confirmed Brown's appointment and requested to resign as receiver because "a suitable board ha[d] been appointed and HPIL ha[d] been fully rehabilitated." Throughout the next few months, Brown engaged in numerous transactions as HPIL's CEO, and his CEO title was reflected in HPIL's public financial filings. But a power-struggle was brewing on the horizon.

### 3. Intervention, Dismissal, & Derivative Counterclaims

Remember Christopher Philbrick, Frank Dougherty, and Ray Wong? Philbrick and Dougherty owned the "RodDoc" drilling parts company that HPIL purchased in October 2018 in exchange for HPIL shares. And Wong owned "MyFlyWiFi" before HPIL purchased it from him in August 2018, also in exchange for HPIL shares. On September 1, 2021, *nearly one year after* Judge Carras granted a default judgment and appointed Collette as HPIL's receiver, Philbrick, Dougherty, and Wong filed a motion to intervene in the receivership proceedings to argue that HPIL was never properly served, so the default receivership should be dismissed. It is entirely unclear what Philbrick, Wong, and Dougherty were doing before attempting to intervene and why they waited nearly two years to do so. Notably, these three intervenors were represented by "HPIL's" Counsel in this federal case, attorney Daniel Lehman.

On September 10, 2021, Judge Carras granted the motion to intervene, set aside the default judgment, and re-opened proceedings. *See Zhang v. HPIL Holding*, 2020-6979-CB (42nd Circuit Court, Midland County, MI, Sep. 10, 2021). Two months later, on November 9, 2021, Judge Carras dismissed Zhang's receivership complaint for lack of proper service.

Importantly, although Judge Carras dismissed Zhang's receivership complaint, the Midland Circuit Court did *not* vacate any of Collette's actions during the year she served as HPIL's appointed receiver—including her agreement appointing Stephen Brown as HPIL's President and CEO—because the intervenors did not seek this relief.

Judge Carras also granted Philbrick, Wong, and Dougherty leave to file derivative counterclaims on HPIL's behalf against Zhang, Collette, and Brown. Although no Party provided this Court with a copy of the counterclaims, the record suggests they generally alleged—like the instant federal Complaint—that Zhang, Collette, and Brown engaged in a scheme to fraudulently obtain control of HPIL and "increase the value of HPIL's shares [to] sell ... at an inflated price."

But, on April 28, 2023, Judge Carras *dismissed* the derivative counterclaims against Zhang and Collette with prejudice because (1) despite prior purchase agreements, Philbrick, Dougherty, and Wong were not continuous HPIL shareholders throughout the receivership proceedings, *see* Wyo. Stat. Ann. § 17-16-741 (2024); and (2) they did not file a written demand with CEO Brown or any other post-receivership HPIL director, *see* Wyo. Stat. Ann. § 17-16-742 (2024).

Philbrick and the other intervenors asserted two arguments to the contrary. Judge Carras rejected both. First, Philbrick and the other intervenors argued that, because the receivership complaint was dismissed for improper service, Collette's appointment and actions were void, so Stephen Brown "was not" HPIL's CEO. Relatedly, the intervenors seemed to suggest that Nitin Amersey, the undisputed CEO *before* HPIL was dissolved and *before* the receivership proceedings began,

- 5 -

appointed *Philbrick* as HPIL's CEO, such that the counterclaims weren't really "derivative," and no written demand was required.

Judge Carras rejected these arguments because (1) Attorney Lehman sent Brown a letter on Philbrick, Wong, and Dougherty's behalf in July 2021 recognizing Brown's authority as HPIL's CEO and demanding he issue Philbrick, Wong, and Dougherty the shares they were promised in prior purchase agreements; and (2) the intervenors never "ask[ed] for Mr. Brown or anyone else to be removed" from HPIL's board when the sought to dismiss the receivership complaint and, since then, "the business ha[d] been operating under Mr. Brown's apparent authority for . . . two years." Although not squarely raised by the intervenors, Judge Carras further found that the futility exception to the derivative demand requirement did not apply. And, two months later, for the same reasons, Judge Carras granted summary disposition in favor of Brown and dismissed the derivative counterclaim against him, too.

*See HPIL II* at *6–8 (emphasis in original) (internal record citations omitted) (footnotes omitted).

**B.**

Against this state court backdrop, this Court observed an "immediately apparent threshold issue" in the above-captioned federal case. *Id.* at *9. At an April 2024 status conference, Plaintiff's Counsel Daniel Lehman stated, on the record, that Christopher Philbrick is the individual who authorized this lawsuit in HPIL's name. ECF No. 27 at PageID.1627. But "the record evidence . . . suggest[ed] Philbrick d[id] not possess this authority" because the Midland Circuit Court concluded "that Philbrick was not a continuous HPIL shareholder" throughout the Receivership Proceedings and, accordingly, "could not pursue a derivative claim involving largely the same facts as [alleged] here." *HPIL Holding v. Zhang*, 734 F. Supp. 3d 664, 700 (E.D. Mich. 2024) [hereinafter *HPIL I*]. Indeed, this Court noted that "Judge Carras did not undo any of Collette's actions in the year she served as HPIL's receiver—including the appointment of Brown as HPIL's CEO and President. Importantly, on April 28, 2023, after the receivership complaint was dismissed—and after Plaintiff alleges Philbrick was appointed HPIL's sole director—Judge Carras denied Philbrick and the other intervenors' request for an injunction and specifically stated that

HPIL 'ha[d] been operating under Mr. Brown's apparent authority . . . two years.'" *Id.* at 701 (citing ECF No. 10-4 at PageID.1404–05) (emphasis in original).

So this Court directed Plaintiff to file supplemental briefing clarifying Philbrick's capacity to authorize HPIL's case. *Id.* But Plaintiff's supplemental brief "provided little clarity." *HPIL II* at *9. So Defendants Zhang and Collette filed a joint motion for judgment on the pleadings, arguing HPIL's lawsuit should be dismissed, in part because Philbrick cannot initiate a direct lawsuit in HPIL's name. ECF No. 44.

On March 31, 2025, this Court *sua sponte* dismissed Plaintiff's Complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. *See generally HPIL II*. After tracking this doctrine's evolution, this Court explained that *Rooker-Feldman* divests federal jurisdiction in cases (1) brought by "state-court losers," (2) complaining of injuries caused by state-court judgments, (3) rendered before the federal proceedings commenced, and (4) inviting federal review and rejection of those state judgments. *Id.* at *10–11 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)). This Court analyzed each prong in turn.

First, this Court concluded that Philbrick was what the Supreme Court calls a "state-court loser" as the Midland Circuit Court dismissed his fraud counterclaims against Zhang, Collette, and Brown because Philbrick was not a continuous HPIL shareholder and, even if he was, he did not file a written demand with Defendant Brown—who the state court maintained was HPIL's CEO. *Id.* at *12. Second, although the Midland Circuit Court did not dismiss Philbrick's counterclaims on the merits, the dismissal was still a "judgment" for *Rooker-Feldman* purposes. *Id.* (noting the dismissal was "[f]ar from ministerial" because, after "in-depth factual investigation," Judge Carras rejected Philbrick's contentions that "(1) he was a continuous HPIL shareholder, and (2) he was appointed as HPIL's CEO and sole director, so he need not comply with demand requirements

applicable to other shareholders"). Third, this Court explained that "HPIL" filed its federal complaint *after* Judge Carras dismissed the state counterclaims. *Id.* at *13. And, finally, this Court concluded that the instant federal case invited review and rejection of this state court judgment, for two reasons: (1) "HPIL" explicitly sought a declaration that voided Defendant Brown's appointment as CEO—which only occurred as a result of the Midland receivership proceedings, *id.* at *13; and (2) implicitly, "HPIL" complained of injuries *caused* by the state-court judgment. *Id.* at *14. On this latter point, this Court explained that, "Philbrick must be HPIL's sole director" for this federal case to proceed but the "Midland Circuit Court necessarily and expressly held otherwise when it dismissed [his] derivative claims [and concluded] he was not HPIL's CEO, was not a continuous HPIL shareholder, and did not file a demand with CEO Stephen Brown or any other actual HPIL director." *Id.* (emphasis omitted) ("Because 'HPIL' 'would only prevail on its . . . claims . . . if the state court were wrong,' the Midland Circuit Court's orders are the true source of Plaintiff's injuries" (quoiting *RLR Invs., LLC v. City of Pigeon Forge*, *Tennessee*, 4 F.4th 380, 388 (6th Cir. 2021))).

28 days after this Court issued its final order and judgment dismissing Plaintiff's Complaint for lack of jurisdiction under *Rooker-Feldman*, Plaintiff filed a Motion for Reconsideration. ECF No. 57.

## II.

Because this Court's *sua sponte* dismissal was a final order and judgment, Plaintiff's Motion for Reconsideration is properly construed as either a motion for relief from judgment under Civil Rule 60(b) or a motion to alter or amend the judgment under Civil Rule 59(c). *See* E.D. Mich. LR 7.1(h)(1). The applicable standards are similar.

A party seeking relief from judgment under Rule 60 must show "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence[;] (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) [that] the judgment is void; (5) [that] the judgment has been satisfied, released, or discharged[;] or (6) any other reason that justifies relief. FED. R. CIV. P. 60(b).

Relatedly, "[a] district court may grant a Rule 59(e) motion to alter or amend judgment only if there is: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir.2005)).

### III.

Plaintiff "HPIL" asserts two arguments in support of his Motion for Reconsideration. *See* ECF No. 57. Both lack merit.

### A.

First, Plaintiff argues this Court erred in *sua sponte* dismissing its case without first providing the Parties notice of its intention to do so. ECF No. 57 at PageID.2630. This Court did not err. Plaintiff cites a 40-year old Sixth Circuit case, *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir. 1983), for the proposition that "a district court must notify all parties of its intention to dismiss the action and give the plaintiff an opportunity to amend its complaint or respond to the reasons for dismissal." *Id.* But Plaintiff's reliance on *Tingler* is misplaced. In *Tingler*, the district court dismissed a complaint on the merits before it was ever served upon the defendant. *Tingler*, 716 F.2d at 1110. To Plaintiff's cherry-picked point, the Sixth Circuit held that such *sua sponte* dismissal was improper and held that, when "faced with a complaint which it believes may be

subject to dismissal," district courts must: "(1) allow service of the complaint upon the defendant; (2) notify all parties of its intent to dismiss the complaint; (3) give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended *sua sponte* dismissal; [and] (4) give the defendant a chance to respond or file an answer or motions[.]" *Id.* at 1111–12. But the Sixth Circuit's holding was "narrow" and applied only to "*sua sponte* dismissals on the merits, prior to service of the complaint[.]" *Id.* at 1111. Indeed, the Sixth Circuit expressly noted that it was *not* deciding the propriety of *sua sponte* dismissals "in cases where the district court clearly lacks jurisdiction." *Id.*

Unlike the dismissal in *Tingler*, all Defendants were served copies of Plaintiff's Complaint before this Court's *sua sponte* dismissal. *See* ECF Nos. 8; 49. Unlike in *Tingler*, this Court's dismissal was not "on the merits." Indeed, unlike in *Tingler*, this Court's *sua sponte* dismissal was predicated on this Court's lack of subject matter jurisdiction. As this Court explained in its March 31, 2025 Opinion & Order, district courts have a "duty" to consider subject matter jurisdiction in every case and "may raise the issue *sua sponte*." A*nswers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (emphasis in original); *see also Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (noting "subject matter jurisdiction may be raised sua sponte at any juncture because a federal court lacks the authority to hear a case without" it). And, since *Tingler*, the Sixth Circuit has repeatedly affirmed *sua sponte* dismissals for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See, e.g.*, *ADSA, Inc. v. Ohio*, 176 F. App'x 640, 642 (6th Cir. 2006) (rejecting as "meritless" plaintiff's argument that the district court erred in *sua sponte* dismissing its complaint before a hearing or providing the opportunity for the parties to brief the *Rooker-Feldman* issue); *Belock v. Burt*, 19 F. App'x 323, 324 (6th Cir. 2001) ("Sua sponte dismissal is proper in a case in which the district court clearly

lacks jurisdiction."); *Olivares v. Performance Contracting Grp.*, 76 F. App'x 603, 604 (6th Cir. 2003) (holding district court "properly" *sua sponte* dismissed complaint for lack of subject matter jurisdiction under *Rooker-Feldman*). Thus, this Court did not err when *sua sponte* dismissing Plaintiff's complaint for lack of subject-matter jurisdiction.

**B.**

Plaintiff also argues this Court erred in applying *Rooker-Feldman* because, in Plaintiff's view, such doctrine only applies when the state court judgment was "on the merits" and, here, the Midland Circuit Court did not decide the merits of Philbrick's counterclaims—repackaged as "HPIL's" claims in the above-captioned federal case. ECF No. 57. But this oversimplifies the inquiry. For *Rooker-Feldman* purposes, the relevant question is whether the state court issued a "judgment," not necessarily an on-the-merits decision. *See Exxon*, 544 U.S. at 284. And, as the Sixth Circuit has recognized and as this Court explained in *HPIL II*, "the Supreme Court has defined a 'judgment' . . . to be an 'investigat[ion], declar[ation], and enforce[ment of] liabilities as they [stood] on present or past facts and under laws supposed already to exist.'" *RLR*, 4 F.4th at 389 (quoting *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 479 (1983)) (cleaned up). "On-the-merits determinations plainly classify as 'judgments,' while 'ministerial actions' do not." *HPIL II* at *12 (quoting *RLR* 4. F.4th at 387).

To Plaintiff's point, this Court recognized that the Midland Circuit Court counterclaim dismissal "lie[d] somewhere on the spectrum between these ends" because that court did not reach the merits of Philbrick's legal claims against Zhang, Collette, and Brown. *Id.* But the dismissal was not ministerial, either. To the contrary, as this Court concluded, the counterclaim dismissal was based on the state court's "in-depth factual investigation" and, practically, resulted in a declaration that Philbrick was not a continuous HPIL shareholder or executive. *See id.* Plaintiff

- 12 -

does not dispute this Court's characterization, and instead merely argues that *Rooker-Feldman* does not apply because the state court never reached the merits of Philbrick's counterclaim. Although on-the-merits decisions are sufficient "judgments" to invoke *Rooker-Feldman*, they are not necessary.

At bottom, Plaintiff has not shown that this Court made a mistake or a "clear error of law." FED. R. CIV. P. 59(e). Nor has Plaintiff shown any other condition necessary to obtain relief from this Court's March 31, 2025 Judgment under Rule 60(b), or to alter or amend this Court's Judgment under Rule 59(e).

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Motion for Reconsideration, ECF No. 57, is **DENIED.**

Dated: May 30, 2025   s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge